UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 05-10382-MLW

IN RE:                )
                      )
   SABINE, INC,       )
      f/k/a ROWECOM, INC.  )
                      )
         Debtor.      )

ON APPEAL FROM A JUDGMENT OF THE
BANKRUPTCY COURT

BRIEF FOR THE APPELLANT, RITA SUD

Martha M. Wishart, BBO# 556694
McKenzie & Associates, P.C.
44 School Street
Boston, MA 02108
(617) 723-0400

Attorney for Appellant
Rita Sud

## TABLE OF CONTENTS

Table of Contents………………………………………………………… 1

Table of Authorities……………………………………………………. 2

Statement of the Issues Presented……………………………………….. 3

Statement of the Case…………………………………………………… 4

Argument………………………………………………………………... 6

    FACTS
    A.    The Underlying Claims and Disputed Issues
           Of Material Facts…………………………………………… 6
    B.    Events Subsequent to the Allowance of
           The Motion for Summary Judgment…………………….... 10
    ARGUMENT
    I.    Standard of Review……………………………………….. 12
    II.    Ms. Sud Made a Showing of
           Excusable Neglect……………………………………….... 12
           A.    The Appellant Acted in Good Faith…………… 13
           B.    The Reason for the Delay was
                Excusable Neglect……………………………... 13

Conclusion……………………………………………………………… 14

**TABLE OF AUTHORITIES**

**Cases:**

Belfance v. Black River Petroleum (In re Hess),
209 B.R. 79 (B.A.P. 6th Cir. 1997)……………………………………….    12

Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership,
507 U.S. 380 (1993)……………………………………………………    12

In re Lang, 305 B.R. 905 (2004)……………………………………….    14

In re Paramount Hotel Corp.,
319 B.R. 350(S.D.N.Y. 2005)……………………………………………    14

Pincay v. Andrews,
389 F.3d. 853 (9th Cir. 2004)…………………………………………..    13

Remington Tech Corp. v. Mlsna,
 2004 U.S. Dist. LEXIS 5935 (N. D. IL. 2004)……………………………..    14

Shepherd's Hill Development Co., LLC v. RAD Investments, LLC,
316 B.R. 406 (B.A.P. 1st Cir. 2004)……………………………………………    12

United States v. Brown,
133 F.3d 993, 996 (7th Cir 1998)……………………………………….    14

**Rules**:

Fed. R. Bankr. P. 8002(c)(2)……………………………………………..    passim

Fed. R. Bankr. P. 8001(e)……………………………………………..    5

## STATEMENT OF THE ISSUES PRESENTED

1.      Did the Court Err in denying Rita Sud's Motion to Extend Time for Filing an Appeal, Pursuant to Fed. R. Bankr. P. 8002(c)(2)?

**STATEMENT OF THE CASE**

Rita Sud ("Ms. Sud") was unsecured creditor in the above-captioned action. Ms. Sud had formerly been an employee of the debtor, Rowecom, Inc. ("Rowecom") Ms. Sud was discharged from her employment with the debtor on or about August 22, 2001. Ms. Sud filed a timely complaint with the Massachusetts Commission against Discrimination, alleging that the basis for her termination was unlawful discrimination on the basis of race/national origin (Indian) and gender, which she later voluntarily withdrew in order to file a Complaint with the Superior Court.

Ms. Sud did file a Complaint with the Superior Court on or about June 9, 2003. Appendix ("App."), p. 2. After filing of the Complaint, Ms. Sud was notified that Rowecom had filed for bankruptcy. Ms. Sud filed then a Motion for Relief from the Automatic Stay. However, before that Motion could be heard, counsel for Ms. Sud and the debtor's counsel entered into an agreement that Ms. Sud would withdraw her Motion for Relief from the Automatic Stay, and her Superior Court claim voluntarily if she was allowed to submit a proof of claim in the instant action. A proof of Claim was subsequently submitted. App. p. 1.

On or about November 23, 2004, the Bankruptcy Court heard the Debtor's Motion for Summary Judgment. Judge Feeney issued a ruling from the bench allowing the Motion for Summary Judgment. App. p. 108. The order was entered on November 24, 2004. No notice of the entry of said order was ever mailed to Ms. Sud. Ms. Sud filed a notice of Appeal on December 13, 2004, seven days after the date required by Bankruptcy Rule 8002(a).

Thereafter, Ms. Sud made a timely Motion to Extend the Time for Filing an Appeal, pursuant to Fed. R. Bankr. P. 8002(c)(2). App. p. 139. Judge Feeney denied the Motion on or about January 3, 2005. App. p. 156. The plaintiff filed a timely Notice of Appeal from that order, as well as an election, pursuant to Fed. R. Bankr. P. 8001(e) to have the appeal heard by this Court.

**ARGUMENT**

FACTS

A.   **The Underlying Claims and Disputed Issues of Material Facts.**

The following facts were alleged by Ms. Sud in her Complaint. App. pp. 2-7.

Ms. Sud was hired by RoweCom in approximately June, 2000, as a treasury analyst. At the time of her hire, Ms. Sud had an MBA, and 12 years of professional experience in legal/compliance, investments and treasury management.

Ms. Sud was hired by Joan Cousins, the Treasury Manager. Ms. Sud worked in the Corporate Finance Department, which was staffed by 16 people. Ms. Cousins and Ms. Sud were the only employees in the Treasury area. Ms. Sud was the only minority employee in the Corporate Finance Department. Ms. Cousins was laid off in approximately August, 2000. Ms. Sud then began covering all of the Treasury functions herself.

At this time, Ms. Sud began reporting directly to Rodney Smith ("Mr. Smith"). Despite the fact that Ms. Sud was performing the functions of Treasury Manager as well as her own functions, Mr. Smith initially refused to promote Ms. Sud or increase her salary. Ms. Sud continued to perform all of the Treasury functions until September, 2000, without promotion. In September, 2000, Ms. Sud was promoted to Treasury Manager.

Ms. Sud received excellent performance reviews during her tenure at RoweCom. During her tenure at RoweCom, Ms. Sud always received excellent feedback on her performance from the president of the company, Dr. Richard Rowe, and the former CFO, Paul Burmeister. From the outset of her employment, however, Ms. Sud noticed that her

6

peers, especially Gina Consylman ("Ms. Consylman") were very hostile towards Ms. Sud. Ms. Sud heard, through the company grapevine that Ms, Consylman had called Ms. Sud "stupid" and "incompetent." Ms. Sud also noticed that her immediate supervisor, Rodney M. Smith ("Mr. Smith") seemed threatened by her. Ms. Sud had more experience and was older than both Mr. Smith and Ms. Consylman. Despite her excellent reviews, Mr. Smith "counseled" Ms. Sud, on several occasions, by stating that she was "cocky" "too aggressive" and "unapproachable" after she complained about members of the Corporate Finance, including Ms. Counsylman team treating her in a disrespectful manner. Mr. Smith did not take any action against the employees regarding whom Ms. Sud had complained.

In approximately June of 2001, RoweCom announced that it would be merging with divine, Inc. Mr. Smith initially told Ms. Sud that the Corporate Finance Department of RoweCom, Inc. would be eliminated as a part of the merger. In June and July, 2001, Mr. Smith gave everyone, except Ms. Sud, work to do on the merger. During that same time frame, an integration team from divine, Inc. came to work with RoweCom's Corporate Finance department. Ms. Sud was the only manager within Corporate Finance who was excluded from participating in the integration and meetings with the integration team.

In approximately mid to late July, Ms. Sud was asked to meet with Jeff Deveaney, Corporate Controller for Sagemaker, Inc., one of divine, Inc.'s subsidiaries. Mr. Smith was also present at the meeting along with another manager, Marc Cirrone. At the meeting Mr. Deveaney told Ms. Sud that the treasury function would not be centralized and that divine, Inc. would "need someone like you, who knows the cash process, to

7

manage Rowecom's treasury function for them."  Mr. Deveaney then assigned Ms. Sud a project involving a treasury forecast to do for Tricia Graff, the head of divine, Inc.'s treasury.  Thereafter, Mr. Smith became increasingly critical of Ms. Sud.

In late July, Ms. Sud was asked to attend a meeting, which Tricia Graff, head of divine's treasury; Mr. Smith: and representatives of Fleet bank were attending. The day before the meeting Mr. Smith told Ms. Sud that he did not want the meeting to become too large and then told her she should not come.  Tricia Graff flew in from divine, Inc. headquarters for the meeting with the representatives of Fleet Bank. At that time, Ms. Graft insisted on meeting Ms. Sud.  Ms. Graff told Ms. Sud "you and I will be working together a lot".  She stated this to Ms. Sud in front of Mr. Smith at least twice.  Ms. Graff also told Ms. Sud that she was going to be increasing the treasury staff.  At approximately the same time, Mr. Smith directed Ms. Sud not to do the project that Mr. Deveaney had given to her. Two weeks later, however, Mr. Smith told Ms. Sud that she was to assemble the project and send the information to Ms. Consylman, and Ms. Consylman was to transmit the information to divine, Inc., creating the appearance that Ms. Consylman had done the work herself.

During approximately the third week in August, Mr. Smith told Ms. Sud that divine, Inc. was going to be taking over the treasury function in approximately two weeks.  Ms. Sud knew that divine, Inc. could not take over the treasury function, since the merger was not going to be completed until approximately October, 2001.  Ms. Sud was been told by another manager at RoweCom, William Carroll, that, based on his conversations with a CFO of divine, Jeff Dahill,  that Ms. Sud's position would not be eliminated, rather she would be reporting to divine Inc.'s treasury department because

8

divine Inc. was not able to handle Rowecom's complex treasury function. Mr. Smith terminated Ms. Sud on August 22, 2001, effective immediately. Mr. Smith told Ms. Sud that her position was being eliminated. Ms. Sud's position was not eliminated, rather, her responsibilities were divided up between Mr. Smith, William Carroll, the Controller, and Ms. Consylman, who are all Caucasian. Further, at the time that Ms. Sud was laid off, divine, Inc. was advertising for personnel for their treasury department. Ms. Sud was the only person who was laid off from RoweCom, Inc.'s corporate headquarters at that time. Ms. Sud alleged that the alleged lay off was not legitimate, because (1) her position was not eliminated; (2) other employees who had inferior performance were not laid off; (3) part-time employees were not laid off; and (4) employees who performed redundant functions were not laid off. Ms. Sud alleged that the true reason for her termination was because of her national origin/race and gender.

    Of the facts set forth above, the following material facts were disputed at the hearing on the Motion for Summary Judgment, and in Ms. Sud's Opposition thereto:

    (1) whether Ms. Sud was hired by Ms. Cousins or Mr. Smith, App. p.119;

    (2) whether Mr. Smith's promotion of Ms. Sud was prompted by her assertion that she would leave Rowecom if he did not promote her, App. p. 120;

    (3) whether the fact that Ms. Sud was given a raise as part of an employee retention program obviates any argument that Mr. Simth was biased against her, App. p.120;

    (4) whether Ms. Sud was laid off as part of a larger lay-off at Rowecom, App. p. 12-21;

9

(5) whether Ms. Sud experienced one-sided or mutual hostility from her co-workers, App. p. 121-22:

(6) whether Ms. Sud's job was going to be eliminated or not, App. p. 122;

(7) why Ms. Sud's projects were taken away, App. p. 122;

(8) whether there were co-workers similarly situated to her, App. p.122; and

(9) whether race and gender were treated neutrally in the lay off., App. 123.

Despite the plethora of disputed issues of material fact, as well as the legal issues regarding similarly situated individuals, raised by Ms. Sud, Judge Feeney granted the Debtor's Motion for Summary Judgment. App. p. 130-31.

**B.     Events Subsequent to the Allowance of the Motion for Summary Judgment**

As stated above, the Debtor's Motion for Summary Judgment was heard on November 23, 2004. The following day was the Wednesday prior to Thanksgiving. Debtor's counsel called the clerk's office on or about November 24, 2004, and left a message inquiring as to whether the court would issue a written copy of the findings dictated from the bench. App. p. 142. That call was never returned. App. p. 142. Nor did the clerk's office mail any notice of the entry of the Judge's order on the docket. App. p. 142. [1]

Counsel was unable to contact Ms. Sud before the Thanksgiving holiday, but informed her via e-mail of the decision, and asked her to call telephone counsel regarding same. App. p. 142. Then, four of the ten days allotted for the time to file a notice of appeal were consumed by the Thanksgiving holiday.

---

[1] Eventually, after several calls to the clerk's office subsequent to the filing of the December 13, 2004 notice of appeal, a copy of the entry of the order was mailed by the clerk's office.

10

Immediately upon counsel's return from the Thanksgiving holiday, she had to prepare for a trial scheduled to start on Thursday, December 2, 2004. The trial took two days. App. p. 142. After the trial was concluded, counsel again asked Ms. Sud to contact her regarding the ruling. App. p. 143. Counsel and Ms. Sud did not have an opportunity to speak with one another until Friday, December 10, 2004, at which time Ms. Sud directed counsel to file an appeal. App. p. 143. Counsel did so by mailing out the Notice of Appeal to the Court that afternoon. App. p. 143. It was only after filing the Notice of Appeal that counsel became aware that the deadline for filing such a notice was ten days. App. p. 143.

On the basis of the facts set forth above, a Motion to Extend the Deadline pursuant to Fed. R. Bankr. P. 8002(c)(2) was filed, arguing that the facts, set forth above constituted excusable neglect. That Motion was denied by a margin notation on January 3, 2005. Thereafter, Ms. Sud appealed the denial of her Motion to Extend the Deadline pursuant to Fed. R. Bankr. P. 8002(c)(2), and elected to have the appeal heard by this Court. App. p. 157.

## ARGUMENT

### I.   Standard of Review

Generally, a bankruptcy court's denial of a motion for extension of time to file a notice of appeal is reviewed for abuse of discretion. See Shepherd's Hill Development Co., LLC v. RAD Investments, LLC, 316 B.R. 406, 413 (B.A.P. 1st Cir. 2004) citing Belfance v. Black River Petroleum (In re Hess), 209 B.R. 79, 80 (B.A.P. 6th Cir. 1997). Whether a party has demonstrated "excusable neglect" for purposes of Bankruptcy Rule 8002(c)(2) is a question of law, however, which is subject to *de novo* review. Id.

### II.   Ms. Sud Made a Showing of Excusable Neglect.

The standard for determining excusable neglect was established by the United States Supreme Court in Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993*).*  The excusable neglect determination is an equitable one, "taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395.   The Court stated that "neglect" includes not just unavoidable omissions, but also negligent ones, and ruled that "courts, would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Id. at 388.

The Supreme Court directed that the following factors were to be considered in making a determination of excusable neglect:  the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Id. at 395.   Most courts addressing the issue in the context of Bankruptcy Rule 8002(c), however, have focused on the reason for the delay

12

and the defendants' good faith, or lack thereof.  <u>Shepherd's Hill Development Co., LLC v. RAD Investments, LLC</u>, 316 B.R. 406, 415 (B.A.P. 1st Cir. 2004).

  A. <u>**The Appellant acted in Good Faith**</u>

  There has been no showing that the Appellant acted in anything other than good faith.  The debtor argued below, that the fact that Ms. Sud filed a claim in Superior Court subsequent to the debtor's filing of a bankruptcy petition is somehow an indicia of bad faith.  However, the evidence is to the contrary.  Ms. Sud was not aware that Rowecom had filed a petition with the Bankruptcy Court at the time she filed her Complaint in Superior Court.  As soon as Ms. Sud was notified, she took appropriate action, first, filing a Motion for Relief from Automatic Stay, and subsequently voluntarily dismissing her Complaint in Norfolk Superior Court in exchange for an agreement that she would be allowed to file a proof of claim.  These actions, rather than bad faith, show Ms. Sud's good faith, in acting promptly, and in agreeing voluntarily to proceed within the purview of the bankruptcy court, when, arguably, the Norfolk Superior Court would have been a more favorable forum.

  B <u>**The Reason for the Delay was Excusable Neglect**</u>

  As shown by counsel's affidavit, the delay was caused by the aggregation of several factors.  All of the circumstances relating to the delay must be examined, rather than any single circumstance in isolation.  <u>See</u>  <u>Pincay v. Andrews</u>, 389 F.3d. 853, 856-857 (9th Cir. 2004).   First, Ms. Sud did not received notice of the entry of the Court's decision on the docket.  While mere failure to receive notice does not, standing alone, constitute excusable neglect, here, there was an effort by counsel to inquire as to whether the Court would issue written findings.  App. p. 142.  No response from the clerk's office

13

was forthcoming.  See Remington Tech Corp. v. Mlsna, 2004 U.S. Dist. LEXIS 5935 at page 2 (N. D. IL. 2004).

Further, nearly half of the appeal period was consumed by the Thanksgiving holiday.  See In re Paramount Hotel Corp., 319 B.R. 350, 359 (S.D.N.Y. 2005).  As stated in counsel's affidavit, Ms. Sud's counsel was engaged in preparing and trying a case immediately following the Thanksgiving holiday.  Again, this circumstance, standing alone, may not constitute excusable neglect.  See In re Lang, 305 B.R. 905, 910 (2004).  However, it is the totality of the circumstances which must be considered.

Adding to the excusable neglect were the fact that Ms. Sud did not immediately respond to counsel's efforts to reach her, as well as counsel's mistaken belief that the time for filing an appeal in bankruptcy court was the same as the cognate Federal Rule.  See United States v. Brown, 133 F.3d 993, 996 (7th Cir 1998).

All of the above circumstances, when contrasted against the brevity of the delay (seven days) as well as the minimal harm to the debtor militate in favor of a finding of excusable neglect.

Because the test enunciated in Pioneer, involves weighing of the equities, the fact that the Court clearly erred in granting Summary Judgment in the face of so many disputed material facts should weigh in favor of the Court's reversal of the order denying the Motion to Extend Time for Appeal.

## **CONCLUSION**

Based upon the factors set forth above, the Appellant respectfully requests that the Court reverse the order denying the Appellant's Motion to Extend Time for Appeal

        Respectfully Submitted,
        Rita Sud, by her attorney,


        __/S/_____
        Martha M. Wishart, BBO#556694
        McKenzie & Associates, P.C.
        44 School Street
        Boston, MA 02108
        (617) 723-0400

## CERTIFICATE OF SERVICE

      I, Martha M. Wishart, hereby certify that I served a copy of the Brief of Appellant, Rita Sud upon counsel of record, Brendan Recupero, for Christopher J. Panos, Trustee of the Sabine, Inc., Liquidating Trust, via electronic filing on March 25, 2005.

                                        /S/
                                 Martha M. Wishart, BBO#556694
                                 McKenzie & Associates, P.C.
                                 44 School Street
                                 Boston, MA 02108
                                 (617) 723-0400