# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### NO.  05-10382-MLW

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **SABINE, INC,** | ) |
| **f/k/a ROWECOM, INC.** | ) |
| | ) |
| Debtor. | ) |

---

## ON APPEAL FROM A JUDGMENT OF THE BANKRUPTCY COURT

---

### APPENDIX

---

Martha M. Wishart, BBO# 556694
McKenzie & Associates, P.C.
44 School Street
Boston, MA 02108
(617) 723-0400

Attorney for Appellant
Rita Sud

# APPENDIX
## TABLE OF CONTENTS

Proof of Claim……………………………………………………..   1

Findings of Fact, Conclusions of Law and
Order under 11 U.S.C. § 1129(c) and Fed.
R. Bank. P. 3020 Confirming the Third
Amended Plan of Liquidation Proposed
By the Debtor and the Creditor's Committee
Dated November 23, 2004 ………………………………………..   18

Transcript of Hearing on Debtors Motion for
Summary Judgment Regarding the Proof of Claim
Of Rita Sud…………………………………………………………..   108

Rita Sud's Notice of Appeal……………………………………….   133

Judgment of the United States Bankruptcy
Appellate Panel……………………………………………………..   136

Rita Sud's Motion to Extend Time for
Filing An Appeal  Pursuant to
Bank. R. 8003(c)(2) with accompanying Memorandum………………   139

Opposition to Rita Sud's Motion to
Extend Time for Filing an Appeal………………………………………..   147

Denial of Rita Sud's Motion to
Extend Time for Filing an Appeal…………………………………….   156

Rita Sud's Notice of Appeal……………………………………….   157

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT __Eastern____ | DISTRICT OF __Massachusetts__ | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Rowecom, Inc. | Case Number<br>03-10668-JNF | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Rita Sud

Name and address where notices should be sent:
Rita Sud
c/o Martha M. Wishart, Esq.
McKenzie & Associates, P.C.
44 School St., #1100, Boston, MA 02108
Telephone number: (617) 723-0400, ext. 123

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

COPY

SEP 12 '03 AM 10:53 USB

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other employment discrimination claim

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #:_____ _____ _____
  Unpaid compensation for services performed
  from _____ to_____
      (date)                (date)

**2. Date debt was incurred:** August 22, 2001

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 150,000.00

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other_____
Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>9/10/2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim, attach copy of power of attorney, if any): |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

1

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT
NO.

| | |
|---|---|
| RITA SUD | ) |
|         Plaintiff, | ) |
| | ) |
|         v. | ) |
| | ) |
| ROWECOM, INC. and EBSCO | ) |
| INDUSTRIES, INC. | ) |
|         Defendants | ) |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

### PARTIES

1.  Rita Sud ("Ms. Sud") is a female of Indian national origin, residing in New Hampshire.

2.  RoweCom, Inc. ("RoweCom") is upon information and belief a Delaware corporation, with a principal place of business in Westwood, Massachusetts.

3.  EBSCO Industries, Inc., is upon information and belief a duly organized corporation, with a principal place of business in Alabama, and does business in Westwood, Massachusetts. EBSCO Industries is the successor in interest to RoweCom, Inc.

### FACTS

4.  Ms. Sud was hired by RoweCom in approximately June, 2000, as a treasury analyst. At the time of her hire, Ms. Sud had an MBA, and 12 years of professional experience in legal/compliance, investments and treasury management

5.  Ms. Sud was hired by Joan Cousins, the Treasury Manager.  Ms. Sud worked in the Corporate Finance Department, which was staffed by 16 people.  Ms. Cousins and Ms. Sud were the only employees in the Treasury area.

5.  Ms. Sud was the only minority employee in the Corporate Finance Department.

2

6.    Ms. Cousins was laid off in approximately August, 2000. Ms. Sud then began covering all of the Treasury functions herself. At this time, Ms. Sud began reporting directly to Rodney Smith ("Mr. Smith").

7.    Despite the fact that Ms. Sud was performing the functions of Treasury Manager as well as her own functions, Mr. Smith initially refused to promote Ms. Sud or increase her salary.

8.    Ms. Sud continued to perform all of the Treasury functions until September, 2000, without promotion. In September, 2000, Ms. Sud was promoted to Treasury Manager.

9.    Ms. Sud received excellent performance reviews during her tenure at RoweCom. During her tenure at RoweCom, Ms. Sud always received excellent feedback on her performance from the president of the company, Dr. Richard Rowe, and the former CFO, Paul Burmeister

10.   From the outset of her employment, Ms. Sud noticed that her peers, especially Gina Consylman ("Ms. Consylman") were very hostile towards Ms. Sud. Ms. Sud heard, through the company grapevine that Ms, Consytman had called Ms. Sud "stupid" and "incompetent."

11.   Ms. Sud also noticed that her immediate supervisor, Rodney M. Smith ("Mr. Smith") seemed threatened by her. Ms. Sud had more experience and was older than both Mr. Smith and Ms. Consylman.

12.   Despite her excellent reviews, Mr. Smith "counseled" Ms. Sud, on several occasions, by stating that she was "cocky" "too aggressive" and "unapproachable" after she complained about members of the Corporate Finance, including Ms. Counsylman team treating her in a disrespectful manner.

13.   Mr. Smith did not take any action against the employees regarding whom Ms. Sud had complained.

14.   In approximately June of 2001, RoweCom announced that it would be merging with divine, Inc. Mr. Smith initially told Ms. Sud that the Corporate Finance Department of RoweCom, Inc. would be eliminated as a part of the merger.

15.   In June and July, 2001, Mr. Smith gave everyone, except Ms. Sud, work to do on the merger.

16.   During that same time frame, an integration team from divine, Inc. came to work with RoweCom's Corporate Finance department. Ms. Sud was the only

manager within Corporate Finance who was excluded from participating in the integration and meetings with the integration team.

17.    In approximately mid to late July, Ms. Sud was asked to meet with Jeff Deveaney, Corporate Controller for Sagemaker, Inc., one of divine, Inc.'s subsidiaries. Mr. Smith was also present at the meeting along with another manager, Marc Cirrone.

18.    At the meeting Mr. Deveaney told Ms. Sud that the treasury function would not be centralized and that divine, Inc. would "need someone like you, who knows the cash process, to manage Rowecom' s treasury function for them." Mr. Deveaney then assigned Ms. Sud a project involving a treasury forecast to do for Tricia Graft, the head of divine, Inc.'s treasury.

19.    Thereafter, Mr. Smith became increasingly critical of Ms. Sud.

20.    In late July, Ms. Sud was asked to attend a meeting, which Tricia Graft; Mr. Smith: and representatives of Fleet bank were attending. The day before the meeting Mr. Smith told Ms. Sud that he did not want the meeting to become too large and then told her she should not come.

21.    Tricia Graff flew in from divine, Inc. headquarters for the meeting with the representatives of Fleet Bank. At that time, Ms. Graft insisted on meeting Ms. Sud Ms. Graff told Ms. Sud "you and I will be working together a lot". She stated this to Ms. Sud in front of Mr. Smith at least twice. Ms. Graff also told Ms. Sud that she was going to be increasing the treasury staff.

22.    At approximately the same time, Mr. Smith directed Ms. Sud not to do the project that Mr. Deveaney had given to her. Two weeks later, he told her she was to assemble the project and send the information to Ms. Consylman, and Ms. Consylman was to transmit the information to divine, Inc., creating the appearance that Ms. Consylman had done the work herself.

23.    During approximately the third week in August, Mr. Smith told Ms. Sud that divine, Inc. was going to be taking over the treasury function in approximately two weeks. Ms. Sud knew that divine, Inc. could not take over the treasury function, since the merger was not going to be completed until approximately October, 2001.

24.    Ms. Sud was been told by another manager at RoweCom, William Carroll, that, based on his conversations with a CFO of divine, Jeff Dahill, Ms. Sud's position would not be eliminated, rather she would be reporting to divine~ Inc's treasury department because divine Inc was not able to handle Rowecom's complex treasury function.

25.    Mr. Smith terminated Ms. Sud on August 22, 2001, effective immediately.

**4**

Mr. Smith told Ms. Sud that her position was being eliminated.

26.    Upon information and belief, Ms. Sud states that her position was not eliminated, rather, her responsibilities were divided up between Mr. Smith, William Carroll, the Controller, and Ms. Consylman, who are all Caucasian.

27.    Further, at the time that Ms. Sud was laid off, divine, Inc. was advertising for personnel for their treasury department.

28.    Ms. Sud was the only person who was laid off from RoweCom, Inc.'s corporate headquarters. Ms. Sud states that the alleged lay offwas not legitimate, because (1) her position was not eliminated; (2) other employees who had inferior performance were not laid off; (3) part-time employees were not laid off; and (4) employees who performed redundant functions were not laid off.

29.    Ms. Sud asserts that the true reason for her termination was because of her national origin/race and gender.

## COUNT I
### (Violation of M.G.L. c. 151B-Race)

30.    The plaintiff repeats and realleges paragraphs 1-29 as though fully set forth herein.

31.    The actions of the defendant as alleged constitute discrimination on the basis of race.

**WHEREFORE**,  the plaintiff requests that the Court find in her favor, and award her back pay, front pay, compensatory damages, emotional distress damages, attorneys fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT II
### (Violation of M.G.L. c. 151B-Sex)

32.    The plaintiff repeats and realleges paragraphs 1-31 as though fully set forth herein.

33.    The actions of the defendant as alleged constitute discrimination on the basis of sex.

**WHEREFORE**,  the plaintiff requests that the Court find in her favor, and award her back pay, front pay, compensatory damages, emotional distress damages, attorneys fees, interest and costs, and such other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,
Rita Sud
By her attorneys,

Dated:  June 9, 2003

Martha M. Wishart (BBO No. 556694)
McKenzie & Associates, P.C.
One Bulfinch Place
Boston, MA 02114
(617) 723-0400

6

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Chapter 11** |
| **ROWECOM, INC,** | ) | **Case No. 03-10668JNF** |
| **Debtor.** | ) | |

## CERTIFICATE OF SERVICE

I, Martha M. Wishart, hereby certify that on the 11th day of September, I caused true and correct copies of the following document to be served via first class mail, postage prepaid on those parties listed on Service List attached hereto.

a)    Proof of Claim.

Respectfully submitted,
Rita Sud,
By her attorney,

Dated: September 11, 2003

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

7

## SERVICE LIST

Jeffrey D. Sternklar, Esq.
Jennifer L. Hertz, Esq.
Duanne Morris, LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210

Stephen E. Garcia, Esq.
Kaye Scholer LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL  60602

Office of the United States Trustee
Attn:  Paula Bachtell
1184 O'Neill Federal Building
10 Causeway Street
Boston, MA  02222

James F. Wallack, Esq.
Christine Lynch, Esq.
Christian T. Haugsby, Esq.
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA  02110

Kevin J. Walsh, Esq.
Richard E. Mikels, Esq.
Timothy J. Langella, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111

Adrienne K. Walker, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111

Christopher J. Panos, Esq.
Craig & Macauley P.C.
600 Atlantic Avenue
Boston, MA  02210

**8**

D. Ethan Jeffery, Esq.
Hanify & King P.C.
One Beacon Street
Boston, MA 02108

Michelle Breitman
Deloitte & Touche LLP
200 Berkeley Street
Boston, MA 02116

Internal Revenue Service
Special Procedures Function STOP 20800
P.O. Box 9112
JFK Building
Boston, MA 02203

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9484
Boston, MA 02205

divine, inc.
Attn: Jude Sullivan
1303 N. Elston AveNUE
Chicago, IL 60622

Development Specialists, Inc.
Attn: Patrick J. O'Malley
Three First National Plaza
70 West Madison Street, Suite 2300
Chicago, IL 60602

Kurtzman Carson Consultants LLC
Attn: Jonathan Carson
5301 Beethoven Street, Suite 102
Los Angeles, CA 90066

RoweCom, Inc.
Attn: George Landgrebe
15 Southwest Park
Westwood, MA 02090

J. Douglas Bacon, Esq.
Nancy Scheurwater Hunter, Esq.
Latham & Watkins LLC
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL  60606

Steven J. Cottingham
Marquette University
Office of General Counsel
P.O. Box 1881
Milwaukee, WI  53201

Seth Brandon Shapiro, Esq.
U.S. Department of Justice-Civil Division
Commercial Litigation Branch
1100 L Street, N.W.--Room 10002, 10th Floor
Washington, D.C.  20005

David W. Dykhouse
Anne E. Reilly
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036

Sidney K. Swinson
Gable & Gotwals
100 W. 5th Street, Suite 1100
Tulsa, OK  74103

Michael F. McGrath, Esq.
Ravich, Meyer, Kirkman, McGrath & Mauman, P.A.
4545 IDS Center
80 South Eighth Street
Minneapolis, MN  55402

John K. Molen, Esq.
Virginia C. Patterson, Esq.
Bradley, Arant, Rose & White LLP
One Federal Place
1819 Fifth Avenue
North Birmingham, AL  35203

**10**

Mark E. Schantz, Esquire
General Counsel
Room 120, Jessup Hall
The University of Iowa
Iowa City, IA  52242

Joseph Zagraniczny, Esq.
BOND, SCHOENECK & KING, PLLC
One Lincoln Center # 1800
Syracuse, NY  13202

Peter Nils Baylor, Esq.
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210

John J. Voorhees, Jr., Esq.
Mayer, Brown, Rowe & Maw
190 South LaSalle Street
Chicago, IL  60603

James E. Holst #34654
John F. Lundberg #42956
Eric K. Behrens #79440
The Regents of the University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607

Christopher R. Belmonte, Esq.
Pamela A. Bosswick, Esq.
Satterlee, Stephens, Burke & Burke, LLP
230 Park Avenue
New York, NY  10169

Dennis H. Long
ICE MILLER
One American Square
Box 82001
Indianapolis, IN  46282

Sankaf Suryanarayan, Esq.
University Counsel
Princeton University
120 Alexander Street
Princeton, NJ  08544

John V. Fiorella
Archer & Greiner, P.C.
One Centennial Square
East Euclid Avenue
P.O. Box 3000
Haddonfield, NJ  08033

Patricia M. Connolly
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA  02210

Mark A. Posnansky
Office of Legal Services
Fifth Floor, Capital Plaza Tower
Frankfort, KY  40601

Steven A. Ginther
Special Assistant Attorney General
Missouri Department of Revenue
General Counsel's Office
301 W. High Street, Room 670
P.O. Box 475
Jefferson City, MO  65105

Victor A. Zambardi
Susan M. Frishman
Oakland University
203 Wilson Hall
Rochester, MI  48309

Mark D. Cress
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115

Mark Browning, Esq.
Assistant Attorney General
Bankruptcy & Collective Division
P.O. Box 12548
Austin, TX  78711

Richard E. Braun, AAG
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI  53707

Theodore N. Stapleton
2727 Paces Ferry Road, Suite 2-1740
Atlanta, GA  30339

Eric T. Sieke, Esq.
Bank of America, N.A.
Mail Code: CA9-706-08-02
555 South Flower Street, Suite 800
Los Angeles, CA  90071

James F. Barrett, III
Nogi, Appleton, Weinberger & Wren, P.C.
415 Wyoming Avenue
Scranton, PA 18503

Stephen J. Dzuranin, Esq.
Wix, Wenger & Weidner
508 North Second Street
P.O. Box 845
Harrisburg, PA 17108-0845

Charles A. Dale, III, Esq.
Leslie 'Anne Hawes, Esq.
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110

Glenn M. Reisman
Two Corporate Drive, Suite 636
P.O. Box 861
Shelton, CT 06484-0861

**13**

Michael C. Fee, Esq.
Sabrina K. Lanz, Esq.
Fee, Craig & Feeney P.C.
321 Boston Post Road
Sudbury, MA 01776

Susan T. Egnor
Assistant Attorney General
Oregon Department of Justice
1515 SW Fifth #410
Portland, OR 97201

Sabina T. Carty, Esq.
Law Offices of Sabina T. Carty
731 East Street
Walpole, MA 02081

Brian R. Haak, Esq.
Tobin and Dempf, LLP
33 Elk Street, Suite 100
Albany, NY 12207

Nancy H. Pagliaro
Comell University
Office of University Counsel
300 CCC Building, Garden Avenue
Ithaca, NY 14853

Michael Reed
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 26990
Austin, TX 78755

Mark Seeley
Reed Elsevier
275 Washington Street
Newton, MA 02458

Eric A. Swanson
John Wiley & Sons, Inc.
111 River Street
Hoboken, NJ 07030

**14**

Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Ste 2200
Los Angeles, CA 90067

Robert B. Smith
Trustee of Boston University
125 Bay State Road
Boston, MA 02215

Meg Williams
Office of the General Counsel
The Library of Congress
101 Independence Avenue S.E.
Washington, D.C. 20540

Richard Rosenstein, Esq.
Pepe & Hazard LLP
150 Federal Street
Boston, MA 02110

Dr. Elaine K. Didier, Dean
Kresge Library
Oakland University
2200 N. Squirrel Road
Rochester, MI 48309

Thomas Jefferson University
Alan B. Kelly, University Counsel
1020 Walnut Street
Philadelphia, PA 19107

Susan Davis
Head, Periodicals Acquisitions Department
University of Buffalo (SUNY)
Lockwood Library Building
Buffalo, NY 14260

Linda Garr-Markwell
Woodruff Health Sciences Library
Emory University
1462 Clifton Road, N.E.
Atlanta, GA 30322

**15**

Robert W. Rodriguez
Emory University
114 Administrative Building
Atlanta, GA  30322

John J. Monaghan, Esq.
Edward J. Naughton, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116

M. Ellen Carpenter, Esq.
Roach & Carpenter, P.C.
24 School Street
Boston, MA  02111

Michael M. Eidelman
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL  60601

Michael D. Warner, Esq.
Simon, Warner & Doby, LLP
1700 City Center – Tower II
301 Commerce Street
Fort Worth, TX  76102

Jacob A. Esher, Esq.
Riley & Esher, LLP
69 Thorndike Street
Cambridge, MA  02141

Daniel M. Glosband
Karl H. Widell
Goodwin Procter LLP
Exchange Place
Boston, MA  02109

Lawrence G. Green
Perkins, Smith & Cohen, LLP
One Beacon Street
Boston, MA  02108

**16**

Mark N. Berman, Esq.
Lee Harrington, Esq.
Nixon Peabody LLP
101 Federal Street
Boston, MA  02110

Rayni C. Lay
Staff Attorney
The Texas A&M University System
301 Tarrow
John B. Connally Building, 6th Floor
College Station, TX  77840

Timothy D. Hudok, Esq.
Vorys, Sater, Seymour and Pease LLP
P.O. Box 1008
52 East Gay Street
Columbus, OH  43216

Sally Carney Bussell, Esq.
Emmanuel, Sheppard & Condon, P.A.
30 South Spring Street
Pensacola, FL  32501

Peggy A. Housner
Assistant Attorney
General Department of Attorney General
    Revenue and Collections Division
Treasury Building, First Floor
Lansing, MI  48922

Bruce G. Hearey, Esq.
Spieth, Bell, McCurdy & Newell Co., L.P.A.
925 Euclid Avenue
2000 Huntington Building
Cleveland, OH  44115

Vincent J. Canzoneri, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

**17**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SABINE, INC. f/k/a | ) | Case No. 03-10668-JNF |
| ROWECOM, INC. | ) | (Substantively Consolidated) |
| | ) | |
| Debtor. | ) | Honorable Joan N. Feeney, C.J. |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER
11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING
THE THIRD AMENDED PLAN OF LIQUIDATION PROPOSED BY THE
<u>DEBTOR AND THE CREDITORS' COMMITTEE DATED NOVEMBER 23, 2004</u>**

<u>RECITALS</u>

WHEREAS, on or about October 5, 2004, Sabine, Inc. f/k/a RoweCom, Inc. (the "Debtor") and the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case[1] (the "Committee," together with the Debtor, the "Proponents"), filed the Second Amended Plan of Liquidation Proposed by the Debtor and the Creditors' Committee dated October 5, 2004 (such plan, together with all of the Exhibits thereto, as transmitted to parties in interest being the "Original Plan", and as modified by the Modifications dated November 22, 2004 and filed with the Bankruptcy Court on or about November 22, 2004 and pursuant to the outcome of the Confirmation Hearing (as defined herein), a copy of which is annexed hereto as <u>Exhibit A</u>, the "Plan"); and

WHEREAS, on or about October 5, 2004, the Debtor filed the Second Amended Disclosure Statement With Respect to the Second Amended Plan of Liquidation Proposed by the

---

[1]    All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

Debtor and the Creditors' Committee dated October 5, 2004 (the "Disclosure Statement") with the Bankruptcy Court; and

WHEREAS, subject to certain conditions including approval by the Bankruptcy Court in both the Debtor's and Enivid, Inc.'s f/k/a Divine, Inc. ("Divine") chapter 11 cases (together, "Both Cases"), the Proponents, the RoweCom Lead Plaintiff (as defined in the Disclosure Statement) and the Divine Official Committee of Unsecured Creditors (the "Divine Committee") entered into that certain Stipulation Regarding Settlement of All Claims by and Among Sabine, Inc. (f/k/a RoweCom, Inc.), the Official Committee of Unsecured Creditors of Sabine, Inc. and Similarly Situated Sabine, Inc. Creditors and the Official Committee of Unsecured Creditors of Enivid, Inc. (the "D-R Settlement Agreement" or the "D-R Settlement"), which agreement is incorporated into the Plan by reference as if fully set forth therein and is appended to the Plan as Exhibit B; and

WHEREAS, a hearing having been held before the Bankruptcy Court on October 5, 2004 on notice to all holders of Claims and Interests, the Office of the United States Trustee and the parties that have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002(m) to consider approval of the Disclosure Statement; and

WHEREAS, on October 5, 2004, the Bankruptcy Court entered an order (the "DS Approval Order") that, *inter alia*, (i) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) fixed November 23, 2004 as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and (iv) established procedures for soliciting and tabulating votes with respect to the Plan; and

WHEREAS, the Confirmation Hearing Notice, the Disclosure Statement, the Plan, the Proponents' solicitation statements with respect to the Plan, the Notice of Proposed Creditor Class Certification and Settlement (the "Settlement Notice") and, as to holders of Class 3 Claims, an appropriate ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), were transmitted in accordance with the DS Approval Order and Bankruptcy Rule 3017(d) as evidenced by the affidavits of service of Matthew J. Mendia of Kurtzman Carson Consultants LLC ("KCC"), one of which is dated October 14, 2004 and the other dated October 20, 2004 (collectively, the "Mendia Declarations") that are on file with the Bankruptcy Court; and

WHEREAS, the Confirmation Hearing Notice, the Disclosure Statement, and the Plan were transmitted to all interested parties, including, without limitation: (i) all known holders of Claims and Interests, (ii) the U.S. Trustee; (iii) the Examiner, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission; (vi) the insurance providers with respect to the D&O Policies, and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002(m); and

WHEREAS, the Ballots indicating the acceptance or rejection of the Plan by holders of Claims who voted within the time fixed by the Bankruptcy Court in the DS Approval Order having been received by KCC, the Debtor's authorized noticing and balloting agent; and

WHEREAS, the Proponents having filed with the Bankruptcy Court on or about November 19, 2004, the voting report dated as of November 17, 2004 prepared by Jonathan Carson of KCC attesting to the results of voting on the Plan by holders of Class 3 Claims (the "Voting Report"); and

WHEREAS, the Confirmation Hearing having been held on November 23, 2004; and

WHEREAS, the Debtor having filed on November 18, 2004 the Declaration of Mr. Kevin Flannery (the "Flannery Declaration"), Chairman of the Debtor's Board of Directors, in support of confirmation of the Plan, and the testimony of Mr. Flannery having been proffered at the Confirmation Hearing.

NOW, THEREFORE, based upon (i) the Bankruptcy Court's review of the Mendia Declarations, the Flannery Declaration, and the Voting Report, (ii) all of the evidence proffered or adduced at, and arguments of counsel made at, the Confirmation Hearing, and (iii) the entire record of the Chapter 11 Case; and after due deliberation thereon and good cause appearing therefor,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     <u>Core Proceeding (28 U.S.C. § 157(b)(2))</u>.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

B.     <u>Exclusive Jurisdiction (28 U.S.C. §§ 157 and 1334(a))</u>.  The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.     <u>Venue (28 U.S.C. §§ 1408 and 1409)</u>.  Venue of the Chapter 11 Case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of all pleadings and other documents filed with the Bankruptcy Court, all orders entered by the

**21**

Bankruptcy Court, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

E.    <u>Notice of Confirmation Hearing</u>. As evidenced by the Mendia Declarations filed with the Bankruptcy Court, all due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims and Interests in accordance with the notice procedures set forth in the DS Approval Order, the Bankruptcy Code and the Bankruptcy Rules. The Disclosure Statement, Plan, Ballots, Confirmation Hearing Notice, the Settlement Notice and the Proponents' solicitation statements were transmitted and served in substantial compliance with the DS Approval Order, and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the DS Approval Order and other orders of the Bankruptcy Court was given in compliance with the Bankruptcy Rules, the DS Approval Order and further orders of the Bankruptcy Court, and no other or further notice is or shall be required.

F.    <u>Notice of the D-R Settlement</u>. The Plan incorporates the D-R Settlement Agreement as if fully set forth therein. As evidenced by the Mendia Declarations filed with the Bankruptcy Court, and based on the representations of counsel at the Confirmation Hearing, (i) proper, timely, adequate and sufficient notice of the D-R Settlement Agreement has been provided in accordance with Bankruptcy Rules 2002, 7023 and 9019, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the D-R Settlement Agreement is or shall be required.

G.    <u>Opportunity to Object</u>.  A reasonable opportunity to object or be heard with respect to the Plan and the relief requested therein has been afforded to all interested parties, including, without limitation:  (i) all known holders of Claims and Interests, (ii) the U.S. Trustee; (iii) the Examiner, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission; (vi) the insurance providers with respect to the D&O Policies, and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002(m).

H.    <u>Solicitation</u>.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with the provisions of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

I.    <u>Distribution</u>.  All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

J.    <u>Burden of Proof</u>.  The Proponents have met their burden of proving, by a preponderance of the evidence, the elements of section 1129(a) and (b).

K.    <u>Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  Specifically:

1.    <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. The Plan designates four (4) Classes of Claims against the Debtor.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between the holders of Claims or Interests.

2.    <u>Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Section 4.01 of the Plan specifies that Class 1 and Class 2 are unimpaired.

3.   Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Class 3 and Class 4 are designated as impaired under the Plan. Article VI of the Plan specifies the treatment of Claims and Interests in Class 3 and Class 4.

4.   No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest.

5.   Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including (i) dissolution of the RoweCom Companies, (ii) the transfer of Trust Assets to the Liquidating Trust, (iii) the transfer of the Debtor's and the Examiner's right to pursue, compromise and settle claims the Debtor or the Examiner may have against other persons and defend, compromise and settle claims others may have against the Debtor, including, without limitation, the D&O Claims, to the Liquidating Trust, and (iv) the settlement and compromise of the Settled RoweCom Claims on the terms set forth in the D-R Settlement Agreement.

6.   Selection of the Liquidating Trustee and Estate Representative (11 U.S.C. § 1123(a)(7)). Prior to the Confirmation Hearing, the Proponents properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of the individuals proposed to serve on or after the Effective Date as Liquidating Trustee and Estate Representative. The appointment or employment of such individuals is consistent with the interests of Creditors and with public policy and, accordingly, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

7.   Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including (a) the settlement of Settled RoweCom Claims on the terms set forth in the D-R Settlement Agreement, (b) the Debtor's and the Examiner's transfer of rights to pursue Causes of Action, including all D&O Claims, to the Liquidating Trust, and (c) the Liquidating Trust's retention of all the Debtor's right title and interest in the Causes of Action and D&O Claims.

8.   Bankruptcy Rule 3016(a). The Plan is dated and identifies the entities submitting it.

L.    Proponents' Compliance With the Bankruptcy Code (11 U.S.C.

§ 1129(a)(2)). The Proponents have complied with the applicable provisions of the Bankruptcy

Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

> 1.    The Debtor is a proper debtor under § 109 of the Bankruptcy Code and a proper proponent of the Plan under § 1121(a) of the Bankruptcy Code.

> 2.    The Committee is a proper committee of unsecured creditors appointed by the United States trustee under § 1102 of the Bankruptcy Code and is a proper proponent of the Plan under § 1121(c) of the Bankruptcy Code.

> 3.    The Proponents have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

> 4.    The Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the DS Approval Order in transmitting the Plan, the Disclosure Statement, the Settlement Notice, the Ballots and related documents and notices, and in soliciting and tabulating votes on the Plan.

M.    The Plan is Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The

Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been

proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Case and the formulation of the Plan. The Chapter 11

Case was filed, and the Plan was proposed, with the legitimate and honest purpose of

maximizing the value of the Debtor's assets and the recovery to holders of Claims under the

circumstances of the Chapter 11 Case.

N.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

Any payment made or to be made by the Debtor for services or for costs or expenses incurred in

connection with the Chapter 11 Case or in connection with the Plan has been approved by, or is

subject to approval by, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.    <u>Trustees and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Proponents have complied with Section 1129(a)(5) of the Bankruptcy Code.  Specifically, the Plan provides that the Committee shall designate the Liquidating Trustee and the Debtor shall designate the Estate Representative at least ten (10) calendar days prior to the Confirmation Hearing.  On November 10, 2004, the Committee designated Christopher J. Panos as Liquidating Trustee.  On November 12, 2004, the Debtor designated as Kevin Flannery Estate Representative.  The appointments of the Liquidating Trustee and the Estate Representative are consistent with the interests of creditors and with public policy.

P.    <u>No Rate Charges (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

Q.    <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis in Exhibit C to the Disclosure Statement and the proffers adduced at the Confirmation Hearing (1) either have not been controverted by other persuasive evidence or have not been challenged, (2) are based on reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values upon conversion of the Chapter 11 Case to a case under chapter 7, and (4) establish that each holder of a Claim in an impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

R.    Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(8)).  The Claims in Class 3 are impaired under the Plan.  As set forth in the Voting Report, the Claims in Class 3 have accepted the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.  The holders of Interests in Class 4 are not entitled to receive or retain any property under the Plan on account of their Interests, and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 4, the Plan is confirmable under section 1129(b) of the Bankruptcy Code.  *See* paragraph X. below.

S.    Treatment of Administrative Expense and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense and Priority Tax Claims under Sections 2.01 and 2.02 of the Plan, respectively, satisfies the requirements of section 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code, respectively.

T.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 3 is an impaired Class of Claims that, as set forth in the Voting Report, has voted to accept the Plan and, to the Proponents' knowledge, does not contain "insiders" whose votes have been counted.

U.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code because the Plan proposes liquidation of the Debtor's estate.  Accordingly, the Plan is found and determined to be feasible.

V.    Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under 28 U.S.C. § 1930 have been or will be paid on or before the Effective Date thereby satisfying section 1129(a)(12) of the Bankruptcy Code.  Any fees payable after the Effective Date will be paid by the Liquidating Trustee.

W.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor is not obligated to, and does not, pay any "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code. Thus, section 1129(a)(13) of the Bankruptcy Code is not applicable in the Chapter 11 Case.

X.    <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Class 4 is an impaired Class of Interests which is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because the holders of such Interests will not receive or retain any property under the Plan on account of their respective Interests. Class 4 is the only Class which has not accepted, or been deemed not to have accepted, the Plan. Pursuant to section 1129(b) of the Bankruptcy Code, the Bankruptcy Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Class 4. Specifically, with respect to Class 4, the holder of any Interest that is junior to the Interests of Class 4 will not receive or retain any property under the Plan on account of such junior Interest.

Y.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental unit has requested that the Bankruptcy Court not confirm the Plan.

Z.    <u>Modification to Plan</u>. The Modification to the Original Plan does not materially and adversely affect or change the treatment of any holder of a Claim or Interest. Accordingly, pursuant to Bankruptcy Rule 3019, the Modification does not require disclosure under Section 1125 of the Bankruptcy Code or resolicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor does it require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Original Plan. Disclosure

28

of the Modification on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Case.

AA.  Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Proponents and their agents, representatives, attorneys and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 17.10 of the Plan.

BB.  The D-R Settlement is Reasonable.  The reasonableness of the D-R Settlement Agreement is evidenced by, among other things, the following facts:

1.  The Debtor, the individual members of the Committee as proposed lead class plaintiffs and certain individual creditors have asserted claims against the Divine estates based, in part, on the allegations that certain customer payments made to RoweCom aggregating in excess of $73 million were controlled and transferred by Divine to itself.

2.  Divine has asserted that the funds transferred from RoweCom to Divine were applied in repayment of certain "inter-company loans" made by Divine to RoweCom.

3.  Divine filed proofs of claim against the Debtor asserting Claims in excess of $5,581,185.00.  The Debtor denies such liability.

4.  The D-R Settlement Agreement, the terms of which are incorporated into the Plan, conclusively resolves all claims between the RoweCom and Divine estates.

5.  The D-R Settlement Agreement provides, *inter alia*, that on the Effective Date, the RoweCom Liquidating Trust shall have an allowed class 3 claim in Divine's chapter 11 case in the amount of $50,808,071 which will be subject to adjustment under certain circumstances.

CC.  Business Judgment.  Given the circumstances of the Chapter 11 Case, including, without limitation, the substantial benefit to be conferred to the Debtor's creditors as a

result of such settlement, the D-R Settlement Agreement constitutes a reasonable and sound exercise of the Debtor's business judgment and is hereby approved in all respects.

DD.    The D-R Settlement is Fair and Equitable. The Plan's provision for the D-R Settlement Agreement is authorized by 11 U.S.C. § 1123(b)(3). As demonstrated by (i) the evidence proffered or adduced at the Confirmation Hearing and (ii) the representations of counsel made at the Confirmation Hearing, the compromise and settlement set forth in the D-R Settlement Agreement is based upon an analyses of the issues undertaken by the Proponents' professionals and is fair and reasonable under the circumstances.

EE.    The D-R Settlement is in the Best Interests of the Debtor's Estate. As demonstrated by (i) the evidence proffered or adduced at the Confirmation Hearing and (ii) the representations of counsel made at the Confirmation Hearing, the compromise and settlement set forth in the D-R Settlement Agreement is in the best interests of the Debtor's estate and the Debtor's creditors. In the absence of such consensual resolution of the Settled RoweCom Claims, it is likely that the parties to the D-R Settlement Agreement would engage in protracted costly litigation with respect to such claims, and it is likely that such litigation would delay and reduce the amount of cash available for distribution to creditors. The Proponents, with the assistance of their respective counsel and financial advisors, have carefully evaluated all aspects of the D-R Settlement Agreement and have determined that it is fair and reasonable and in the best interests of the Debtor and the Debtor's creditors. Moreover, creditors have voted overwhelmingly to accept the Plan and the D-R Settlement.

FF.    Corporate Authority. The Debtor has full corporate power and authority to execute the D-R Settlement Agreement and all other documents contemplated thereby, and

30

the settlement has been duly and validly authorized by all necessary corporate action of the Debtor.

GG.   Rejection of Executory Contracts and Unexpired Leases. The Debtor has demonstrated that (i) it is an exercise of its sound business judgment to reject the executory contracts and unexpired leases as provided in Section 12.01 of the Plan and (ii) the rejection of such executory contracts and unexpired leases is in the best interests of the Debtor, its estate, and creditors.

HH.   Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II.   Satisfaction of Conditions to Confirmation. The conditions to confirmation set forth in Section 15.01 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

JJ.   Conditions to Effective Date. It appears that each and every condition precedent to the Effective Date of the Plan as set forth in Section 15.02 of the Plan will be satisfied.

KK.   Objections. All objections to confirmation of the Plan filed with the Bankruptcy Court and/or made at the Confirmation Hearing have been withdrawn, settled or overruled.

LL.   Exemption from Securities Laws. The issuance of any security or other interest in the Liquidating Trust under the Plan is exempt from section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in a security pursuant to section 1145(a) of the Bankruptcy Code.

MM.  <u>Transfer of Trust Assets to the Liquidating Trust</u>.  The transfer of Trust
Assets by the Debtor to the Liquidating Trust in accordance with Section 9.02 of the Plan (1) is
or shall be legal, valid and effective transfers of property, (2) vest or shall vest the Liquidating
Trust with good title to such property free and clear of all Liens, charges, Claims, encumbrances
or Interests, except as expressly provided in the Plan or this Confirmation Order, and (3) does not
and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable
nonbankruptcy law.  It is the Proponents' intent that the Liquidating Trust be classified as a
"liquidating trust" under § 301.7701-4 of the Procedure and Administration Regulations and as a
grantor trust subject to the provisions of subchapter J, subpart E of the Internal Revenue Code, as
amended, that is owned by the Liquidating Trust's beneficiaries as grantors.  Furthermore, it is
the Proponents' intent that the beneficiaries of the Liquidating Trust be treated as if they had
received a distribution of the Trust Assets and had then contributed such assets to the Liquidating
Trust.

NN.  <u>Transfer of D&O Claims to the Liquidating Trust</u>.  The transfer of D&O
Claims by the Examiner to the Liquidating Trust pursuant to Section 9.02 of the Plan and this
Order (a) is or shall be a legal, valid, and effective transfer of the D&O Claims and all rights,
powers, and duties of the Examiner and (b) vest or shall vest the Liquidating Trust with good
title to the D&O Claims free and clear of all Liens, charges, Claims, encumbrances, or Interests,
except as expressly provided in the Plan or this Confirmation Order.  Further, based upon the
consideration of certain provisions of the D&O Policies regarding exclusions from coverage and
the fact that the known insurers that issued the D&O Policies did not object to confirmation of
the Plan after notice, the assignment, transfer and vesting of the D&O Claims in Section 9.02 of
the Plan shall constitute an assignment by an "examiner" in conformity with the D&O Policies

such that the Liquidating Trust shall constitute an assignee of an "examiner" in conformance with the provisions of the D&O Policies.

OO.    Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XIV of the Plan.

## DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT,

1.    Modifications to Plan.  At the request of the Proponents, the Original Plan is hereby modified pursuant to 11 U.S.C. §1127(a) as set forth in this Order and the attached Exhibit A and the Debtor is not required to resolicit acceptances or rejections to the Plan.  The modifications to the Original Plan are highlighted in a redlined version reflecting changes from the Original Plan which was introduced into evidence at the Confirmation Hearing, which changes are hereby specifically approved.  The Original Plan and the modifications set forth above together constitute the Plan.

2.    Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan and the exhibits thereto, including the D-R Settlement Agreement, are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.  The Proponents and all parties in interest are authorized and directed to carry out, and comply with, the provisions of the Plan, and to take all actions reasonably necessary to effectuate the Plan.

3.    Objections.  All objections to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, if any, are overruled on the merits.

33

4.  <u>Provisions of the Plan and the Confirmation Order are Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

5.  <u>Binding Nature of Plan</u>  Pursuant to section 1141(a) of the Bankruptcy Code, effective as of the Confirmation Date, but subject to consummation of the Plan, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Confirmation Order shall be binding upon:  (a) Proponents, (b) the Post-Confirmation Committee, (c) all holders of Claims against and Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan, (e) each Person acquiring property under the Plan, (f) any other party in interest, (g) any Person making an appearance in the Chapter 11 Case, and (h) each of the foregoing's respective heirs, successor, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

6.  <u>Approval of Agreements</u>. In accordance with Section 8.07 and Article IX of the Plan, the following agreements and documents which were (a) attached as Exhibits to the Plan, (b) filed with the Bankruptcy Court subsequent to November 10, 2004, or (c) introduced into evidence at the Confirmation Hearing (collectively, the "Plan Documents") are hereby approved:

(i)  the D-R Settlement Agreement; and

(ii)  the Liquidating Trust Agreement.

7.  <u>Execution of Plan Documents</u>.  The Proponents are hereby authorized to execute, enter into, deliver and/or implement the Plan Documents and all other documents and instruments substantially consistent therewith or incidental thereto and any amendments,

supplements or modifications to such Plan Documents as therein provided, and to take such other actions and perform such other acts as may be necessary and appropriate to implement and effectuate the Plan and/or the Plan Documents approved herein.

8.    Approval of Liquidating Trustee.  Christopher J. Panos shall be, and hereby is, approved as Liquidating Trustee under the Liquidating Trust Agreement.

9.    Approval of Estate Representative.  Kevin Flannery shall be, and hereby is, approved as Estate Representative pursuant to Section 9.10 of the Plan.

10.    Post-Effective Date Committee.  On the Effective Date, the Committee will become the Post-Effective Date Committee which shall consist of such members of the Committee who desire to serve on the Post-Effective Date Committee; provided, however, that the Liquidating Trustee and the members of the Post-Effective Date Committee shall use reasonable efforts to ensure that the Post-Effective Date Committee does not consist of less than three (3) members.  The Post-Effective Date Committee shall oversee, but not control, the liquidation of the Trust Assets and the prosecution of claims and Causes of Action pursuant to the Plan and the terms of the Liquidating Trust Agreement (other than claims against members of the Post-Effective Date Committee), and shall oversee, but not control, the activities of the Liquidating Trustee; provided, however, that the Post-Effective Date Committee shall have all the powers provided in the Liquidating Trust Agreement, including, without limitation, the power to remove and replace the Liquidating Trustee.

11.    Transfer of Trust Assets to the Liquidating Trust.  The transfer of Trust Assets by the Debtor to the Liquidating Trust pursuant to Section 9.02 of the Plan and this Confirmation Order (a) is or shall be a legal, valid, and effective transfer of the Trust Assets, (b) vest or shall vest the Liquidating Trust with good title to such property free and clear of all Liens, charges,

Claims, encumbrances, or Interests, except as expressly provided in the Plan or this Confirmation Order, and (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law. It is the Proponents' intent that the Liquidating Trust be classified as a "liquidating trust" under § 301.7701-4 of the Procedure and Administration Regulations and as a grantor trust subject to the provisions of subchapter J, subpart E of the Internal Revenue Code, as amended, that is owned by the Liquidating Trust's beneficiaries as grantors. Furthermore, it is the Proponents' intent that the beneficiaries of the Liquidating Trust be treated as if they had received a distribution of the Trust Assets and had then contributed such assets to the Liquidating Trust.

12. <u>Transfer of D&O Claims to the Liquidating Trust</u>. The transfer of D&O Claims by the Examiner to the Liquidating Trust pursuant to Section 9.02 of the Plan and this Order (a) is or shall be a legal, valid, and effective transfer of the D&O Claims and (b) vest or shall vest the Liquidating Trust with good title to the D&O Claims free and clear of all Liens, charges, Claims, encumbrances, or Interests, except as expressly provided in the Plan or this Confirmation Order. The assignment, transfer and vesting of the D&O Claims in Section 9.02 of the Plan shall constitute an assignment by an "examiner" in conformity with the D&O Policies such that the Liquidating Trust shall constitute an assignee of an "examiner" in conformance with the provisions of the D&O Policies. No "insured versus insured" exclusion contained in any D&O Policy shall apply to any D&O Claim brought or prosecuted by or on behalf of either or both of the Examiner or the Liquidating Trust.

13. <u>Succession of the Liquidating Trust to Rights and Privileges with respect to the Trust Assets</u>. On the Effective Date, the Liquidating Trust shall succeed to all of the rights, privileges and immunities of the Debtor with respect to the Trust Assets including, without

limitation, all Causes of Action and D&O Claims and the proceeds thereof; <u>except</u> that the Liquidating Trust shall not be permitted to waive the Estate's Post 12-16 Privileges without the prior express written consent of the Estate Representative as provided in Section 9.10 of the Plan. The Liquidating Trustee shall have standing to prosecute any Cause of Action on behalf of the Liquidating Trust, including without limitation any D&O Claims.

14.    <u>Actions of the Liquidating Trust and the Liquidating Trustee</u>. The Liquidating Trust and the Liquidating Trustee shall act in good faith and use reasonable diligence to pursue the D&O Claims.

15.    <u>Compromises of any and all D&O Claims</u>. Notwithstanding any other provision in the Plan, the Liquidation Trust Agreement or this Order, the Liquidating Trust and the Liquidating Trustee shall seek Court approval, pursuant to a motion filed pursuant to Fed. R. Bankr. P. 9019, of any and all compromises of any and all D&O Claims.

16.    <u>Standard for Approval of the D-R Settlement Agreement</u>. This Court has made an independent determination that the D-R Settlement Agreement is fair, equitable and in the best interests of the Debtor and the Debtor's creditors. In approving the D-R Settlement Agreement the Court has made no findings of fact as to the merits of the underlying claims or the positions of the parties other than as expressly provided for herein to determine that the proposed settlement falls above the lowest point in the range of reasonableness. In approving the D-R Settlement Agreement, the Bankruptcy Court has considered, among other things:

> (a)    the probability of success in litigating the Settled RoweCom Claims and Divine's claims against the Debtor;
>
> (b)    the difficulties, if any, to be encountered in the matter of collection;
>
> (c)    the complexity of the litigation involved, and the expense, inconvenience and delay attending to it; and

(d)    the paramount interests of the creditors and a proper deference to their reasonable views.

17.    <u>The Probability of Success</u>.  Approval of the D-R Settlement Agreement would avoid the inherent risk and uncertainty of litigating the Settled RoweCom Claims.

18.    <u>Difficulties in Collection</u>.  Given that Divine filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, its resources and assets from which the Debtor or Liquidating Trustee could recover are limited.

19.    <u>Complexity and Scope of the Settled RoweCom Claims</u>.  The RoweCom Settled Claims include, but are not limited to allegations that: (i) Divine fraudulently transferred funds from RoweCom to Divine in contravention of § 548 of the Bankruptcy Code and Massachusetts fraudulent transfer law, (ii) Divine received preferential payments pursuant to § 547 of the Bankruptcy Code, (iii) Divine fraudulently induced RoweCom to solicit and accept prepayments from its customers and further fraudulently induced RoweCom to allow the transfers to Divine to occur by misrepresenting the material fact that Divine would satisfy RoweCom's obligations to customers in December 2002, (iv) Divine was unjustly enriched by the transfers, (v) Divine's actions constituted conversion and deepened RoweCom's insolvency, and (vi) because Divine controlled RoweCom, Divine's corporate veil should be disregarded and/or pierced rendering Divine jointly and severally obligated for the repayment of all RoweCom's debts and obligations.  If the D-R Settlement Agreement is not approved, the Proponents anticipate that the Settled RoweCom Claims will be litigated, that such litigation will be extremely expensive and could substantially delay distributions to creditors in each of the Divine and RoweCom Cases.

20.    <u>Paramount Interests of Creditors</u>.  The Committee has represented to the Bankruptcy Court that based upon an extensive evaluation of the Settled RoweCom Claims, the

**38**

Committee's professionals believe approval of the D-R Settlement will result in a recovery for the Debtor's unsecured creditors that is within the likely range of litigation recoveries.

21.    <u>D-R Settlement Agreement is Approved</u>.  In light of the circumstances of this Chapter 11 Case and for the reasons set forth above, the D-R Settlement Agreement is fair, equitable and in the best interests of creditors.  Therefore, the D-R Settlement Agreement, and all of its terms including the provisions barring the assertion of any Settled RoweCom Claims or settled Divine Claims (as defined in the D-R Settlement Agreement) by any entity, is approved as an Order of the Court as if fully set forth herein.  The proposed class set forth in the Settlement Notice is hereby certified for the purpose of approval of the D-R Settlement Agreement.

22.    <u>Approvals and Consents</u>.  Except as provided in the Plan, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other documents, instruments or agreements, and any amendments or modifications thereto and any other acts referred to in or contemplated by the Plan, the Plan Documents, and any other documents, instruments or agreements, any amendments or modifications thereto and any other acts that may be necessary or appropriate for the implementation and consummation of the Plan.

23.    <u>Cancellation of Interests</u>.  Effective as of the Effective Date, Interests in the Debtor shall be canceled and be deemed null and void and of no force or effect.

24.    <u>Plan Classification Controlling</u>.  The classification of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan

25. <u>Permanent Injunction</u> From and after the Confirmation Date, there shall be in place with regard to the Trust Assets and any Claims, a permanent injunction to the same extent and with the same effect as the stay imposed by section 362 of the Bankruptcy Code and such permanent injunction shall remain in effect until the Chapter 11 Case is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided in this Order or the Plan or as may be agreed in writing by the Liquidating Trustee. All distributions and transfers of property pursuant to the Plan shall be made free and clear of all liens, claims and encumbrances.

26. <u>Automatic Stay.</u> All injunctions or stays provided for in the Chapter 11 Case under section 105 or section 362 of the Bankruptcy Code (the "Automatic Stay"), or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Subject to the provisions of paragraph 22 of this Confirmation Order, on the Effective Date, the Automatic Stay shall be dissolved and of no further force or effect.

27. <u>Rejection of Executory Contracts and Unexpired Leases.</u> Except as otherwise provided in the Plan or this Confirmation Order, all of the executory contracts and unexpired leases to which any of the RoweCom Companies is a party are hereby deemed rejected, except those executory contracts or unexpired leases which (a) are the subject of a motion filed on or before entry of this Confirmation Order, (b) have been assumed and assigned by the Debtor prior to the Confirmation Hearing, or (c) previously have been rejected by the Debtor pursuant to an order of the Bankruptcy Court. The rights and remedies of parties to rejected executory contracts and unexpired leases are governed by Article XII of the Plan.

28. <u>Administrative Claims Bar Date.</u> All requests for payment of an Administrative Claim other than (i) Professional Fee Claims or (ii) liabilities incurred and paid in the ordinary course of business by the Debtor must be filed with the Bankruptcy Court and served on the

**40**

Debtor and the Liquidating Trustee and their attorneys no later than thirty (30) days after the Effective Date. Unless an objection is filed within thirty (30) days after filing of an Administrative Claim, such Administrative Claim shall be allowed in the amount requested. The Bankruptcy Court shall retain jurisdiction to determine all such Administrative Claims.

29.    <u>Professional Fees and Substantial Contribution Compensation and Expense Bar Date</u>. Unless another date is set by Final Order entered on or before the bar date set forth in Section 13.02 of the Plan, all Fee Applications required to be filed under the Plan shall be filed and served, including on the parties entitled to notice as provided in Section 13.02 of the Plan, within forty five (45) days after the Confirmation Date. All such Fee Claims and Substantial Contribution Claims for which required applications are not timely filed and served shall be forever barred. Objections to such Fee Applications may be filed on or before sixty (60) days after the Confirmation Date. The Bankruptcy Court shall retain jurisdiction to determine all such Fee Claims and Substantial Contribution Claims.

30.    <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on or before the Effective Date, shall be paid by the Debtor on or before the Effective Date. After the Effective Date, the Liquidating Trustee shall pay all such required fees without further order.

31.    <u>Failure to Consummate the Plan</u>  In the event the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan, and any document or agreement, including, but not limited to, the Plan Documents and the D-R Settlement Agreement, executed pursuant to the Plan, shall be null and void and of no force or effect. In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan shall (a) constitute a waiver or release of any Claims

**41**

by or against the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor

or any other Person, (c) constitute an admission of any sort by the Debtor or any other Person, or

(d) be construed as a finding of fact or conclusion of law with respect thereto.

32.    Retention of Jurisdiction  Pursuant to sections 105(a) and 1142 of the Bankruptcy

Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective

Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and

related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but

not limited to, jurisdiction over those items and matters set forth in Article XIV of the Plan.

33.    Notice of Entry of Confirmation Order.  In accordance with Bankruptcy Rules

2002 and 3020(c), no later than fifteen (15) days after entry of this Confirmation Order, the

Debtor shall give notice of entry of this Confirmation Order to the parties listed in Bankruptcy

Rule 3020(c).  If the Effective Date occurs prior to the service of such notice, the notice shall be

served by the Liquidating Trustee.

34.    Notice of Occurrence of Effective Date.  In accordance with Bankruptcy Rules

2002 and 3020(c), no later than fifteen (15) days following the occurrence of the Effective Date,

the Liquidating Trustee shall give notice of the Effective Date to the parties listed in Bankruptcy

Rule 3020(c).

35.    Effective Date.  Upon the occurrence of the Effective Date, the Plan shall be

deemed substantially consummated.

36.    References to Plan Provisions.  The failure specifically to include or reference any

particular provision of the Plan in this Confirmation Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be

confirmed in its entirety.

37.    Confirmation Order Controlling.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

38.    Modification, Vacatur or Reversal of Confirmation Order.  If any or all of the provisions of this Confirmation Order are hereafter modified, vacated, or reversed by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Proponents' receipt of written notice of any such order; nor shall such reversal, modification or vacatur of this Confirmation Order affect the validity or enforceability of such obligations.  Notwithstanding any reversal, modification, or vacatur of this Confirmation Order, any such obligation incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all documents, instruments and agreements related thereto or any amendments or modifications thereto.

Dated: Boston, Massachusetts
      December 7, 2004

_Joan N. Feeney_
Honorable Joan N. Feeney
Chief United States Bankruptcy Judge

43

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SABINE, INC. f/k/a, | ) | Case No. 03-10668-JNF |
|     ROWECOM, INC. | ) | (Substantively Consolidated) |
| | ) | |
|     Debtor. | ) | Honorable Joan N. Feeney, C.J. |

## THIRD AMENDED JOINT PLAN OF LIQUIDATION
## PROPOSED BY THE DEBTORS AND CREDITORS' COMMITTEE
## DATED NOVEMBER 23, 2004

Attorneys for Official Committee
of Unsecured Creditors:

CRAIG AND MACAULEY
  PROFESSIONAL CORPORATION
Christopher J. Panos (BBO#555273)
Brendan C. Recupero (BBO#645032)
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 367-9500
Facsimile: (617) 742-1788

November 23, 2004
Boston, Massachusetts

Attorneys for Debtor:

KAYE SCHOLER LLC
Stephen E. Garcia (#6196573 Illinois Bar)
Mindy D. Cohn (#6272078 Illinois Bar)
Three First National Plaza
70 W. Madison Street
Suite 4100
Chicago, Illinois 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

DUANE MORRIS LLP
Jeffrey D. Sternklar (BBO#549561)
Jennifer L. Hertz (BBO#645081)
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210
Telephone: (617) 289-9200
Facsimile: (617) 289-9201

TABLE OF CONTENTS

ARTICLE I.    DEFINITIONS AND RULES OF INTERPRETATION .................................. 1
    Section 1.01    Scope of Definitions; Rules of Construction. ........................... 1
    Section 1.02    Defined Terms. ....................................................................... 1
    Section 1.03    Rules of Interpretation. ......................................................... 9
    Section 1.04    Computation of Time. ............................................................ 9
    Section 1.05    References to Monetary Figures. ........................................... 9

ARTICLE II.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ................. 9
    Section 2.01    Administrative Claims. ........................................................... 9
    Section 2.02    Priority Tax Claims. ............................................................. 10

ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS ................................ 10
    Section 3.01    Claims and Interests Classified. .......................................... 10
    Section 3.02    Claims Against and Interests in RoweCom. ......................... 10
        (a)    Class 1   10
        (b)    Class 2   11
        (c)    Class 3   11
        (d)    Class 4   11
    Section 3.03    Deletion of Classes and Subclasses. .................................... 11
    Section 3.04    Addition of Classes and Subclasses. ................................... 11

ARTICLE IV.    IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLASSES ........ 11
    Section 4.01    Identification of Unimpaired Classes; Voting. .................... 11
    Section 4.02    Identification of Impaired Voting Class ............................... 11
    Section 4.03    Identification of Impaired Nonvoting Class ......................... 11

ARTICLE V.    TREATMENT OF CLASSES ..................................................................... 12
    Section 5.01    Unimpaired Claims Against the Debtor ............................... 12
        (a)    Class 1 Secured Claims. ............................................... 12
        (b)    Class 2 Other Priority Claims . .................................... 12

ARTICLE VI.    TREATMENT OF IMPAIRED CLASSES ................................................. 12
    Section 6.01    Impaired Claims Against the Debtor. ................................... 12
        (a)    Class 3 (General Unsecured Claims). ........................... 12
        (b)    Class 4 (Interests). ....................................................... 13

ARTICLE VII.    ACCEPTANCE OR REJECTION OF PLAN ........................................... 13
    Section 7.01    Confirmability and Severability of Plan. ............................. 13
    Section 7.02    Impaired Classes of Claims and Interests Entitled to Vote. ................... 13
    Section 7.03    Acceptance by Impaired Classes. ......................................... 14
    Section 7.04    Classes Deemed to have Accepted the Plan. ........................ 14
    Section 7.05    Classes Deemed to have Rejected the Plan. ......................... 14
    Section 7.06    Confirmation Pursuant to 11 U.S.C. § 1129(b); Cramdown. ................. 14

ARTICLE VIII.  MEANS FOR IMPLEMENTATION OF PLAN ......................................... 14
    Section 8.01     Implementation of the Plan. ....................................................... 14
    Section 8.02     Dissolution of the RoweCom Companies. ............................................. 14
    Section 8.03     No Discharge. ....................................................... 15
    Section 8.04     Terms of Injunctions or Stays. ....................................................... 15
    Section 8.05     Corporate Action. ....................................................... 15
    Section 8.06     Compromise and Settlement. ....................................................... 15
    Section 8.07     Settlement of Claims against Divine. ................................................. 16
    Section 8.08     Setoffs.        ....................................................... 16
    Section 8.09     Exemption from Certain Taxes. ....................................................... 16
    Section 8.10     Preservation of Equitable, Legal and Contractual
                     Subordination Rights. ....................................................... 16
    Section 8.11     Effect of Appeals. ....................................................... 17
    Section 8.12     Claims Filed After the Confirmation Date. ............................................. 17

ARTICLE IX.     LIQUIDATING TRUST ....................................................... 17
    Section 9.01     Creation of Liquidating Trust. ....................................................... 17
    Section 9.02     Transfer of Property and Vesting of Assets to be
                     Administered and to be Distributed under the Plan. ............................... 17
    Section 9.03     Payment of Certain Liabilities. ....................................................... 18
    Section 9.04     Purpose and Powers of Liquidating Trust. ............................................. 18
    Section 9.05     Management of Liquidating Trust. ....................................................... 18
    Section 9.06     Costs of Administration. ....................................................... 19
    Section 9.07     Tax Returns. ....................................................... 19
    Section 9.08     Hiring of Employees and Retention of Professionals. ........................... 19
    Section 9.09     Prosecution of Causes of Action. ....................................................... 20
    Section 9.10     The Estate's Privileges. ....................................................... 20
    Section 9.11     Tax Aspects of the Liquidating Trust. ............................................. 21
    Section 9.12     Liability.       ....................................................... 21
    Section 9.13     Compensation. ....................................................... 21
    Section 9.14     Post-Effective Date Committee. ....................................................... 22
    Section 9.15     Dissolution of Liquidating Trust. ....................................................... 23

ARTICLE X.      PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 23
    Section 10.01    Distribution. ....................................................... 23
    Section 10.02    Disbursing Agent. ....................................................... 23
    Section 10.03    Sources of Cash. ....................................................... 23
    Section 10.04    Distribution Date. ....................................................... 23
    Section 10.05    Subsequent Distribution Dates. ....................................................... 23
    Section 10.06    Delivery of Distributions. ....................................................... 24
    Section 10.07    Disputed Claims Reserve. ....................................................... 24
    Section 10.08    No Distributions Pending Allowance. ................................................. 24
    Section 10.09    Distributions after Allowance. ....................................................... 24
    Section 10.10    Withholding and Reporting Requirements. ............................................. 25
    Section 10.11    Means of Cash Payments Made Pursuant to Plan. ................................. 25
    Section 10.12    De Minimis Distributions. ....................................................... 25

Section 10.13    Final Distribution and Final Decree.......................................................... 25

ARTICLE XI.    ALLOWANCE AND DISALLOWANCE OF CLAIMS ............................... 25
Section 11.01    Claims Administration Responsibility. ..................................... 25
Section 11.02    Claims Objection Deadline. .................................................... 25
Section 11.03    Prosecution of Objections. ..................................................... 26
Section 11.04    Interest on Claims. .................................................................. 26
Section 11.05    Voting and Objections to Claims or Interests. ........................ 26

ARTICLE XII.    EXECUTORY CONTRACTS, UNEXPIRED LEASES AND
INDEMNIFICATION OBLIGATIONS ...................................... 26
Section 12.01    Rejected if Not Assumed. ...................................................... 26
Section 12.02    Bar Date for Rejection Claims. .............................................. 26
Section 12.03    Indemnification Obligations. ................................................. 27

ARTICLE XIII.    ALLOWANCE OF ADMINISTRATIVE CLAIMS ...................................... 27
Section 13.01    Administrative Claims Bar Date. ............................................ 27
Section 13.02    Filing of Professional Fee Claims. ......................................... 27

ARTICLE XIV.    RETENTION OF JURISDICTION ................................................................ 28
Section 14.01    Exclusive Jurisdiction of the Bankruptcy Court. .................... 28
Section 14.02    Courts of Competent Jurisdiction. ......................................... 29

ARTICLE XV.    CONDITIONS TO CONFIRMATION,
CONSUMMATION OF THE PLAN ......................................... 29
Section 15.01    Conditions to Confirmation. ................................................. 29
Section 15.02    Conditions to Effective Date. ................................................ 30
(a)    Entry of Confirmation Order. .............................. 30
(b)    No Stay. ............................................................... 30
(c)    Required Documents. ........................................... 30
(d)    Effectiveness of Divine Plan. ............................... 30
Section 15.03    Waiver of Conditions. ........................................................... 30
Section 15.04    Notice of Effective Date. ....................................................... 30

ARTICLE XVI.    NOTICES ...................................................................................................... 31

ARTICLE XVII.    MISCELLANEOUS ...................................................................................... 32
Section 17.01    Modifications of Plan. ............................................................ 32
Section 17.02    Revocation and Withdrawal of Plan. ..................................... 32
Section 17.03    Committee. ............................................................................. 32
Section 17.04    Headings.    ............................................................................. 32
Section 17.05    Severability of Plan Provisions. ............................................ 32
Section 17.06    Binding Effect, Successors and Assigns. ............................... 33
Section 17.07    U.S. Trustee's Fees. ............................................................... 33
Section 17.08    Plan Documents, Exhibits. ..................................................... 33
Section 17.09    Governing Law. ...................................................................... 33
Section 17.10    Exculpations. ......................................................................... 33

47

# PREAMBLE

Sabine, Inc. (f/k/a RoweCom, Inc.), as debtor and debtor in possession and as successor in interest by means of substantive consolidation to the Chapter 11 estates of Dawson, Inc., The Faxon Company, Inc., Turner Subscription Agency, Inc., McGregor Subscription Agency, Inc., Dawson Information Quest, Inc. and Corporate Subscription Services, Inc., in the above-captioned case (the "Debtor") and the Official Committee of Unsecured Creditors in the Debtor's case (the "Committee"), as the "proponents of the plan" within the meaning of section 1129 of the Bankruptcy Code (as hereinafter defined), propose the following Third Amended Plan of Liquidation (this "Plan"), which contemplates the liquidation of all of the Debtor's assets and the resolution of the outstanding claims against and interests in the Debtor pursuant to section 1121(a) of the Bankruptcy Code.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from the holder of a claim or interest until such time as the Disclosure Statement (as hereinafter defined) has been approved by the Bankruptcy Court and distributed to the holders of such claims and interests. In this case, the Disclosure Statement was approved by the Bankruptcy Court by order dated October 5, 2004 and has been distributed with this Plan to all parties whose votes are being solicited. Reference is made to the Disclosure Statement for a discussion of Debtor's history, business, properties, operations, risk factors, a summary and analysis of this Plan, and certain other related matters. ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions and requirements in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and this Plan, the Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I.    DEFINITIONS AND RULES OF INTERPRETATION

### Section 1.01    Scope of Definitions; Rules of Construction.

For purposes of this Plan, capitalized terms shall have the meanings set forth below. Any term used but not defined herein that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning specified in the Bankruptcy Code or Bankruptcy Rules, which meanings are hereby incorporated by reference. Where the context requires, such terms shall include the plural as well as the singular and the masculine gender as well as the feminine gender.

### Section 1.02    Defined Terms.

"Administrative Claim" shall mean a Claim for payment of an administrative expense of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (including without limitation wages, salaries,

48

commissions for services and payments for inventories, leased equipment and premises); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under section 1930, chapter 123 of title 28 of the U.S. Code; and (d) Claims for reclamation to the extent allowed under section 546(c)(2) of the Bankruptcy Code.

"Affiliates" shall have the meaning specified in section 101(2) of the Bankruptcy Code.

Allowed Claim" shall mean any Claim (i) proof of which has been timely filed or which is listed on the Schedules as liquidated in amount and not disputed or contingent, in either case as to which either no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or, if an objection has been interposed, to the extent that any such Claim has been allowed by a Final Order of the Bankruptcy Court or (ii) to the extent represented by a Professional Fee Claim, in the amount as shall be approved by a Final Order of the Bankruptcy Court; provided that, notwithstanding clauses (i) and (ii) hereof, any Claim specifically allowed or disallowed in this Plan shall be or not be, as the case may be, an Allowed Claim to the extent so provided in this Plan. Unless otherwise specified, an Allowed Claim shall not include (w) interest on the principal amount of such Claim maturing or accruing from and after the Petition Date, (x) attorneys' fees, (y) punitive or exemplary damages or (z) any fine, penalty or forfeiture.

"Allowed Interest" shall mean an Interest allowed in this Plan.

"Ballot" shall mean each of the ballot forms distributed with the Disclosure Statement to holders of Claims in Classes that are Impaired under this Plan and are entitled to vote under Article VI hereof in connection with the solicitation of acceptances of this Plan.

"Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, as codified in title 11 of the U.S. Code, 11 U.S.C. §§ 101-1330, as in effect on the Petition Date, together with all later amendments to the extent applicable to the Chapter 11 Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, or such other court as may have jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075, title 28, U.S. Code, as in effect on the Petition Date, together with all later amendments to the extent applicable to the Chapter 11 Case.

"Bar Date" shall mean, with respect to all Claims other than Administrative Claims, 4:00 p.m. (Pacific) on May 15, 2003, or such other date(s), if any, as may be designated by the Bankruptcy Court as the last date(s) for filing proofs of Claim or Interest against the Debtor.

"Beneficial Interest" shall mean a beneficial interest in the Liquidating Trust created pursuant to the terms and provisions of the Liquidating Trust Agreement.

"Business Day" shall mean any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)) on which commercial banks are open for business in Boston, Massachusetts.

"Cash" shall mean legal tender of the United States or equivalents thereof.

"Causes of Action" shall mean all claims and causes of action of the Debtor and all of the Estate's Pre 12-16 Privileges and the Estate's Post 12-16 Privileges, including without limitation, the D&O Claims and all other claims and causes of action against (i) divine, (ii) officers and directors of divine, (iii) the Debtor, (iv) former officers and directors of the Debtor, (v) current officers and the Current Directors of the Debtor arising from their willful misconduct or gross negligence, and (vi) and all claims and causes of action arising under sections 506, 510, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

"Chapter 11 Case" shall mean the above-captioned Chapter 11 Case.

"Claim" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" shall mean the first Business Day that is the latest of (i) 120 days after the Effective Date; (ii) as to a particular Claim, sixty (60) days after the filing of a proof of claim for, or request for payment of, such Claim; or (iii) such later date as may be established by the Bankruptcy Court for cause shown by the Liquidating Trust. The filing of a motion by the Liquidating Trust for an extension of the Claims Objection Deadline shall automatically extend such deadline until 30 days after the Bankruptcy Court determines such motion by entry of an order on the docket of such court.

"Class" shall mean a category of Claims or Interests under this Plan.

"Committee" shall mean the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code.

"Confirmation" shall mean entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Date" shall mean the date of entry of the Confirmation Order.

"Confirmation Hearing" shall mean the hearing before the Bankruptcy Court to consider Confirmation of this Plan and certain related matters, including any adjournments thereof.

"Confirmation Order" shall mean an order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Corporate Subscription" shall mean Corporate Subscription Services, Inc., a New Jersey corporation.

"Creditor" shall mean any Person who is the holder of any Claim against the Debtor that arose (or is based on an obligation incurred) on or before the Petition Date or any Claim against an Estate of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

"Current Directors" shall mean Kevin S. Flannery and Charles E. Sweet.

"D&O Claims" shall mean any and all claims against any director or officer of the Debtor or of Divine, or any of their affiliates or subsidiaries, including without limitation all claims that are the subject of the Order appointing the Examiner.

"D&O Policies" shall mean Illinois National Insurance Company Executive and Organization Liability Insurance Policy No. 873-71-20; St. Paul Insurance Fire and Marine Insurance Company Policy No. 512CM0289; Lloyd's of London Excess Directors and Officers and Company Reimbursement Liability Policy No. FD0100559; Federal Insurance Company Policy No. 70232449; Illinois National Insurance Company Executive and Organization Liability Insurance Policy No. 561-50-64; and Indian Harbor Insurance Company Excess Policy No. ELU83471-02; and any other policy of insurance providing coverage for claims against directors or officers of the Debtor or Divine.

"D-R Settlement Agreement" shall mean the Stipulation Regarding Settlement of All Claims By and Between Sabine, Inc. (f/k/a RoweCom, Inc.) and Similarly Situated RoweCom, Inc. Creditors and the Enivid, Inc. (f/k/a Divine, Inc.) Estates attached hereto as Exhibit B.

"Dawson" shall mean Dawson, Inc., a Delaware corporation.

"Dawson Information" shall mean Dawson Information Quest, Inc., a California corporation.

"Disallowed Claim" shall mean a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b)(i) is not listed on the Schedules or is listed at zero or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

"Disclosure Statement" shall mean the second amended disclosure statement filed by the Proponents that relates to this Plan, as approved by the Bankruptcy Court by order dated October 5, 2004, as such written disclosure statement may be amended, supplemented, or modified from time-to-time.

"Disputed Claim" shall mean any Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including without limitation any Claim that (a) is not listed on the Schedules or is listed at zero or as contingent, unliquidated, or disputed, or (b) is the subject of an application, motion, objection, complaint or any other proceeding which seeks to disallow, subordinate or estimate such Claim and which such application, motion, objection, complaint or other proceeding has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

"Disputed Claims Reserve" shall mean the property for distribution to holders of Allowed Claims to be reserved pending allowance of Disputed Claims pursuant to Section 10.07 hereof.

"Distribution Costs Reserve" shall mean Cash in an amount to be established by the Liquidating Trustee from time to time that shall be reserved from the Trust Assets for payment of the costs of administering the Liquidating Trust, which costs shall include without limitation fees for the Liquidating Trustee and other necessary or appropriate costs, including the fees and costs of counsel and advisors, if any.

"Distribution Date" shall mean the date determined by the Liquidating Trustee upon which initial distributions are to be made in respect of Allowed Claims.

"Distribution Reserve" shall mean Cash reserved for the payment of (i) Administrative Claims and (ii) Priority Tax Claims.

"Divine" shall mean divine, inc., a Delaware corporation and the 100% shareholder of RoweCom.

"EBSCO" shall mean the EBSCO Industries, Inc., a Delaware corporation.

"Effective Date" shall mean the first Business Day on which all conditions to consummation of this Plan as set forth in Section 15.02 have been satisfied or waived.

"Equity Security" shall have the meaning specified in section 101(16) of the Bankruptcy Code.

"Estate" shall mean the estate of the Debtor in its Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code.

"Estate Representative" shall mean the representative of the Debtor's estate which shall be named by the Debtor and whose identity shall be disclosed at least ten (10) days prior to the Confirmation Hearing.

"Estate's Pre 12-16 Privileges" shall mean all attorney-client privileges, work product privileges and similar privileges of the Debtor, exclusive only of the Estate's Post 12-16 Privileges.

"Estate's Post 12-16 Privileges" shall mean any attorney-client privilege, work product privilege or similar privileges affecting or relating to information or communications provided by any employees or former employees of the Debtor to any attorney retained by the Debtor after December 16, 2002 in connection with, related to, or in preparation for discussions or interviews with, or testimony given to, without limitation, the United States Attorney, the Federal Bureau of Investigations, the US Postal Inspector or the Securities and Exchange Commission relating to their respective investigations of divine and divine's actions with respect to the Debtor.

"Examiner" shall mean Mark DeGiacamo appointed by order dated February 9, 2004 granting the Committee's motion for the appointment of an Examiner to investigate and pursue D&O claims.

"Exculpated Party" shall have the meaning specified in Section 17.10.

"Face Amount" shall mean (a) when used in reference to a Disputed Claim or Disallowed Claim, the stated amount claimed by the holder thereof in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

"Faxon" shall mean The Faxon Company, Inc., a Massachusetts corporation.

"Final Order" shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, is pending.

"General Unsecured Claim" shall mean any Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim or a Secured Claim, including without limitation Claims arising in the ordinary course of the Debtor's business for (i) goods and services, whether supplied to the Debtor on account or otherwise, (ii) employee wages, salary, bonus or commissions (to the extent they are not Administrative Claims or Other Priority Claims), (iii) contributions to any employee benefit plan (to the extent they are not Administrative Claims or Other Priority Claims), if any, and (iv) Rejection Claims.

"Impaired" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired under this Plan within the meaning of section 1124 of the Bankruptcy Code.

"Indemnification Obligation" shall mean the obligation of the Debtor to indemnify, reimburse or provide contribution to any present or former officer or director, or any present or former professionals or advisors, pursuant to by-laws, certificates or articles of incorporation, contract, statute or otherwise as may be in existence immediately prior to the Petition Date, including without limitation accountants, auditors and consultants, regardless of whether owed in connection with a pre-petition or post-petition occurrence.

"Interest" shall mean any right, interest or benefit related to or represented by any Equity Security of any Debtor, and shall also include any Claims represented by, related to, arising under or in connection with the ownership of an Interest, such as derivative claims and claims that would be subordinated by operation of section 510(b) of the Bankruptcy Code.

"Liquidating Trust" shall mean the trust created pursuant to the terms and provisions of the Liquidating Trust Agreement, as set forth in Article IX of this Plan.

"Liquidating Trust Agreement" shall mean the "RoweCom Liquidating Creditor Trust Agreement" substantially in the form appended hereto as Exhibit A.

"Liquidating Trustee" shall mean the trustee of the Liquidating Trust which shall be named by the Committee and whose identity shall be disclosed at least ten (10) days prior to the Confirmation Hearing.

"McGregor" shall mean McGregor Subscription Agency, Inc., an Illinois corporation.

"Other Priority Claims" shall mean a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Claim or Priority Tax Claim.

"Person" shall have the meaning ascribed in section 101(41) of the Bankruptcy Code; unless otherwise specified herein, any reference to a Person as the holder of a Claim against or Interest in the Debtor shall further include such Person's successors, assigns and Affiliates.

"Petition Date" shall mean January 27, 2003, the date on which the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.

"Plan" shall mean this chapter 11 plan of liquidation and all exhibits annexed hereto or referenced herein, as amended, modified or supplemented from time-to-time.

"Priority Tax Claim" shall mean a Claim to the extent it is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" shall mean, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class, unless this Plan provides otherwise.

"Professional" shall mean any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and any professional seeking compensation or reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" shall mean a request by a Professional for compensation or reimbursement of costs and expenses incurred through the Effective Date pursuant to section 327, 328, 330, 331, 503(b), 506 or 1103 of the Bankruptcy Code relating to services provided by such Professional after the Petition Date and prior to and including the Effective Date.

"Proponents" shall mean, collectively, the Debtor and the Committee in their capacity as the proponents of this Plan.

"Reinstated" or "Reinstatement" shall mean (i) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim so as to leave such Claim unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such

maturity existed before such default; (c) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Claim" shall mean any Claim arising from the rejection of any executory contract or unexpired lease pursuant to the Bankruptcy Code.

"RoweCom Companies" shall mean, collectively, RoweCom, Dawson, Faxon, Turner, McGregor, Dawson Information, and Corporate Subscription.

"Sabine" or "RoweCom" shall mean Sabine, Inc., f/k/a RoweCom, Inc., a Delaware corporation and the debtor and debtor in possession in Case No. 03-10668-JNF.

"Schedules" shall mean the consolidated schedules of assets and liabilities and consolidated statements of financial affairs filed by Debtor, as such schedules or statements may be amended or supplemented from time-to-time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

"Secured Claim" shall mean a Claim secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of (x) the value of the holder's interest in the Estate's interest in such property or (y) the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"Settled RoweCom Claims" shall have the meaning given to such term in the D-R Settlement Agreement.

"Substantial Contribution Claims" shall mean the Claims, if any, for compensation or reimbursement of costs and expenses incurred in making a substantial contribution to the Chapter 11 Case pursuant to section 503(b)(3),(4), or (5) of the Bankruptcy Code.

"Trust Assets" shall mean, collectively, all assets and property of every kind and nature, owned by the Debtor as of the Confirmation Date or subsequently acquired by the Debtor, and all of the right, title and interest of the Debtor in and to such assets and property or in which the Debtor has an interest, including without limitation all property of the Debtor's Estate, all Causes of Action (including, as of the Effective Date, all D&O Claims), all proceeds from any sale or other disposition of any Asset and any interest of the Debtor in any insurance policies or proceeds; provided, that the Liquidating Trust's interest in the Distribution Costs Reserve shall be subordinate in order of priority of payment to the costs of administering the Liquidating Trust,

which costs shall include without limitation the fees for the Liquidating Trustees and other necessary or appropriate costs, including fees and expenses of counsel, if any.

"Trust Beneficiaries" shall mean the holders of Allowed Claims in Class 3.

"Turner" shall mean Turner Subscription Agency, Inc.

"Unimpaired" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

### Section 1.03    Rules of Interpretation.

For purposes of this Plan, (a) any reference to a contract, instrument, release, other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references herein to Articles, Sections, Schedules, and Exhibits are references to Articles, Sections, Schedules, and Exhibits of or to this Plan, (d) all Exhibits to this Plan are hereby incorporated into this Plan, and shall be deemed to be included in this Plan regardless of when filed with the Bankruptcy Court, (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (f) captions and headings to Articles and Sections are inserted for convenience only and are not intended to be a part of or to affect interpretation of this Plan, and (g) the rules of construction in section 102 of the Bankruptcy Code and the Bankruptcy Rules are hereby incorporated by reference. Further, any reference of this Plan or any exhibit to this Plan to the Liquidating Trustee shall mean, where the context requires, the Liquidating Trustee in his or her capacity as trustee of the Liquidating Trust.

### Section 1.04    Computation of Time.

Bankruptcy Rule 9006 shall be used to compute any period of time set forth in this Plan.

### Section 1.05    References to Monetary Figures.

All references in this Plan to monetary figures shall refer to U.S. currency.

## ARTICLE II.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### Section 2.01    Administrative Claims.

(i)    Allowance.

Administrative Claims shall be allowed or disallowed in accordance with the procedures set forth in Article XI hereof.

(ii)    Treatment.

113867_2.DOC                            9

In complete settlement, satisfaction and discharge of its Claim(s), each Person holding an Allowed Administrative Claim shall be paid (a) in full in Cash on the later of (i) the Distribution Date and (ii) five (5) Business Days after the date on which an order of the Bankruptcy Court allowing such Administrative Claim becomes a Final Order, or (b) on such other terms as to which the Liquidating Trust and the holder may agree in writing; provided that any Administrative Claim representing liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in accordance with the transactions and agreements and orders of the Bankruptcy Court, if any, relating thereto.

### Section 2.02    Priority Tax Claims.

(i)    **Allowance.**

Priority Tax Claims shall be allowed or disallowed in accordance with the procedures set forth in Article XI hereof.

(ii)    **Treatment.**

In complete settlement, satisfaction and discharge of its Claim(s), each Person holding a Priority Tax Claim that is or becomes an Allowed Claim shall be paid (a) in full in Cash on the later of (i) the Distribution Date and (ii) five (5) Business Days after the order of the Bankruptcy Court allowing such Claim becomes a Final Order or (ii) on such other terms as to which the Liquidating Trust and the holder may agree in writing.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS

### Section 3.01    Claims and Interests Classified.

Pursuant to section 1122 of the Bankruptcy Code, all Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified as set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and shall be treated separately as set forth in Article II above.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class only for the purpose of voting on, and receiving distributions pursuant to, this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

### Section 3.02    Claims Against and Interests in RoweCom.

(a)    **Class 1**        Secured Claims.  Each Secured Claim shall be a different sub-class of Class 1 Secured Claims.

  (b) **Class 2** <u>Other Priority Claims</u>. Class 2 consists of all Other Priority Claims.

  (c) **Class 3** <u>General Unsecured Claims</u>. Class 3 consists of all General Unsecured Claims.

  (d) **Class 4** <u>Interests</u>. Class 4 consists of all Interests in RoweCom.

**Section 3.03 <u>Deletion of Classes and Subclasses</u>.**

  Any class or subclass of Claims that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of the commencement of the confirmation hearing shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such class or subclass under section 1129(a)(8) of the Bankruptcy Code.

**Section 3.04 <u>Addition of Classes and Subclasses</u>.**

  In the event that any subclass of Class 1 (Secured Claims) would contain as elements thereof two or more Secured Claims collateralized by different properties or interests in property or collateralized by liens against the same property or interest in property having different priority, such Claims shall be divided into separate subclasses of Class 1 (Secured Claims).

**ARTICLE IV. IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLASSES**

**Section 4.01 <u>Identification of Unimpaired Classes; Voting</u>.**

  The Claims and Interests in Class 1 Secured Claims and Class 2 Other Priority Claims are Unimpaired under this Plan; hence, the holders of such Claims are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted this Plan.

**Section 4.02 <u>Identification of Impaired Voting Class</u>**

  The Claims in Class 3 General Unsecured Claims are Impaired under this Plan and are entitled to vote to accept or reject the Plan.

**Section 4.03 <u>Identification of Impaired Nonvoting Class</u>**

  The Interests in Class 4 Interests are Impaired under this Plan but shall not be entitled to vote to accept or reject the Plan.

## ARTICLE V.    TREATMENT OF CLASSES

Section 5.01    <u>Unimpaired Claims Against the Debtor</u>

    (a)  <u>Class 1 Secured Claims</u>.

        (i)    <u>Allowance</u>.

            Secured Claims shall be allowed or disallowed in accordance with the procedures set forth in <u>Article XI</u>.  No entity shall have a Secured Claim unless, prior to the Effective Date, such entity files a motion for determination of its alleged Secured Claim or has filed a proof of secured claim before any applicable bar date.

        (ii)    <u>Treatment</u>.

            In complete settlement, satisfaction and discharge of its Claim(s), on the later of (a) the Distribution Date and (b) the date five (5) Business Days after the date on which an order of the Bankruptcy Court allowing such Claim becomes a Final Order, each holder of an Allowed Secured Claim(s) shall, at the option of the Liquidating Trust, receive either (w) all legal, equitable, and contractual rights to which such Allowed Secured Claim entitles the holder thereof, (x) Cash in an amount equal to the unpaid portion of such Allowed Secured Claim, (y) abandonment of the Asset against which the holder of the Allowed Secured Claim holds a lien, or (z) such other treatment as to which the Liquidating Trust and the holder may agree in writing.

    (b)  <u>Class 2 Other Priority Claims</u>.

        (i)    <u>Allowance</u>.

            Other Priority Claims shall be allowed or disallowed in accordance with the procedures set forth in <u>Article XI</u>.

        (ii)    <u>Treatment</u>.

            In complete settlement, satisfaction and discharge of its Claim(s), each holder of an Allowed Other Priority Claim shall be paid (a) in full in Cash on the later of (i) the Distribution Date and (ii) five (5) Business Days after the order of the Bankruptcy Court allowing such Claim becomes a Final Order or (ii) on such other terms as to which the Liquidating Trust and the holder may agree in writing.

## ARTICLE VI.    TREATMENT OF IMPAIRED CLASSES

Section 6.01    <u>Impaired Claims Against the Debtor</u>.

    (a)  <u>Class 3 (General Unsecured Claims)</u>.

(i)     **Allowance**.

General Unsecured Claims shall be allowed or disallowed in accordance with the procedures set forth in Article XI hereof.

(ii)     **Treatment**.

In complete settlement, satisfaction and discharge of its Claim(s), each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Claim at such times as the Liquidating Trustee may determine in its sole discretion or as may be determined by Final Order of the Bankruptcy Court, Cash in an amount equal to the holder's Pro Rata share of any distributions from the Liquidating Trust, provided that the costs of administering the Liquidating Trust, including without limitation fees and benefits for the Liquidating Trustee and its staff, and other similar necessary or appropriate costs, including fees and expenses of counsel, shall be paid as a priority from the Trust Assets, as set forth in the Liquidating Trust Agreement and in any event shall be paid in full prior to final distribution of the Trust Assets.

**(b) Class 4 (Interests)**

(i)     **Allowance**.

Interests in the Debtor are hereby deemed Allowed Interests.

(ii)     **Treatment**.

Holders of Allowed Interests shall have their Interests be cancelled or subordinated, as the case may be. No property or assets of any kind shall be distributed or retained in respect of Interests.

## ARTICLE VII.  ACCEPTANCE OR REJECTION OF PLAN

### Section 7.01   Confirmability and Severability of Plan.

The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to the Debtor. A determination by the Bankruptcy Court that this Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify this Plan in an effort to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

### Section 7.02   Impaired Classes of Claims and Interests Entitled to Vote.

The holders of Claims entitled vote to accept or reject this Plan are identified in Section 4.02 hereof.

**Section 7.03    Acceptance by Impaired Classes.**

Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (b) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that voted.

**Section 7.04    Classes Deemed to have Accepted the Plan.**

The Classes identified in Section 4.01 hereof are Unimpaired by this Plan. Hence, under section 1126(f) of the Bankruptcy Code, the holders of Claims in those Classes are conclusively presumed to have accepted this Plan, and the votes of such holders will not be solicited.

**Section 7.05    Classes Deemed to have Rejected the Plan.**

The Classes identified in Section 4.03 hereof are Impaired under this Plan and shall receive nothing on account of such Interests. Hence, under Section 1126(g) of the Bankruptcy Code, the holders of Interests in those Classes are conclusively presumed to have rejected this Plan, without the need or opportunity to vote.

**Section 7.06    Confirmation Pursuant to 11 U.S.C. § 1129(b); Cramdown.**

If all of the applicable requirements for Confirmation are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may, at its discretion, request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of subsection (8) thereof, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class or Classes, and, if necessary, the Debtor may, at the Confirmation Hearing, alter the proposed treatment of any Class that has voted to reject this Plan so as to provide treatment to such Class of a type consistent with the minimal treatment required to satisfy the requirements of section 1129(b) of the Bankruptcy Code with respect to such Class.

## ARTICLE VIII.    MEANS FOR IMPLEMENTATION OF PLAN

**Section 8.01    Implementation of the Plan.**

The Debtor and the Liquidating Trust shall implement the Plan through the means contemplated by sections 1123(a)(5), (b)(3) and (b)(4) of the Bankruptcy Code.

**Section 8.02    Dissolution of the RoweCom Companies.**

Pursuant to this Plan, the Confirmation Order and applicable non-bankruptcy law, all of the RoweCom Companies shall cease to exist and shall be deemed as a matter of law dissolved, as of the completion of the distribution of Debtor's assets and assignment of Debtor's remaining assets, if any, to the Liquidating Trust, without the necessity of any other or further actions to be taken by or on behalf of the RoweCom Companies or payment of any fees or other amounts to be made in connection therewith. From and after the Effective Date, the RoweCom Companies

113867_2.DOC

shall not be required to file any document, or take any other action, to withdraw their business operations from any states in which they have conducted business operations.

**Section 8.03    No Discharge.**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtor. No non-debtor is released or discharged from any Causes of Action other than the Current Directors of the Debtor who shall be released and discharged from all Causes of Action other than Causes of Action arising from their willful misconduct or gross negligence.

**Section 8.04    Terms of Injunctions or Stays.**

From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regards to the Trust Assets and any Claims, a permanent injunction to the same extent and with the same effect as the stay imposed by section 362 of the Bankruptcy Code and such permanent injunction and stay will remain in effect until the Chapter 11 Case is closed pursuant to section 350 of the Bankruptcy Code except as otherwise expressly provided herein or as may be agreed to in writing by the Liquidating Trustee. All distributions and transfers of property pursuant to the terms and provisions of this Plan shall be made free and clear of all liens, claims and encumbrances.

**Section 8.05    Corporate Action.**

Any of the Current Directors of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The secretary or assistant secretary of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

Without limiting the generality of the foregoing, on the Effective Date, the cancellation of the Interests in the Debtor, the execution and delivery of all documents contemplated by this Plan or any Exhibit to be executed and delivered in connection with this Plan, the dissolution of the RoweCom Companies pursuant to Section 8.02 of this Plan and all other matters provided for by this Plan involving corporate action by the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable non-bankruptcy law, without any requirement of further action by the stockholders or directors of the Debtor. The Debtor shall execute such documents and take such action as is necessary and as may be reasonably requested by the Liquidating Trust to effectuate the transactions provided for in this Plan.

**Section 8.06    Compromise and Settlement.**

Pursuant to Bankruptcy Rule 9019(a), the Debtor or its designees may compromise and settle Claims against it and claims it may have against other Persons. The Debtor reserves the right, with the approval of the Bankruptcy Court, to compromise and settle Claims against it as well as claims it may have against other Persons up to and including the Effective Date. After the Effective Date, such rights will pass to the Liquidating Trust, and Claims against the Estate may be compromised and settled by the Liquidating Trustee, subject to the terms and provisions

of the Liquidating Trust Agreement, at its sole discretion without approval of the Bankruptcy Court.

### Section 8.07    Settlement of Claims against Divine.

On the Effective Date, all Settled RoweCom Claims shall be settled and compromised on the terms set forth in the D-R Settlement Agreement, which terms are incorporated fully herein by reference.

### Section 8.08    Setoffs.

The Liquidating Trust may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim that the Debtor or the Liquidating Trust may have against such holder.

### Section 8.09    Exemption from Certain Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to any other Person or entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 8.10    Preservation of Equitable, Legal and Contractual Subordination Rights.

The classification and manner of satisfying all Claims and Interests under this Plan takes into consideration all contractual, legal and equitable subordination and subrogation rights, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, that the holder of any Claim or Interest may have against any other holder of a Claim or Interest with respect to any distribution made pursuant to this Plan. Upon Confirmation, all contractual, legal or equitable subordination or subrogation rights that the holder of a Claim or Interest may have with respect to any distribution to be made pursuant to this Plan shall be expressly preserved, and all actions related to the enforcement of such subordination or subrogation rights shall be unaffected by Confirmation of the Plan. Accordingly, holders of Allowed Claims may be subject to payment to a beneficiary of such subordination or subrogation rights, or to levy, garnishment, attachment or other legal process by any such beneficiary, on account of such subordination or subrogation rights.

### Section 8.11    Effect of Appeals.

Unless the Confirmation Order is stayed pending a timely and properly commenced appeal, at the option of the Proponents, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service or filing of any motion, including without limitation under Bankruptcy Rule 7052, 8002, 8003, 8015, 9023 or 9024.

### Section 8.12    Claims Filed After the Confirmation Date.

No Claim, or amendment to any Claim, other than as provided in Section 12.02 hereof, shall be filed after the Confirmation Date absent leave granted by the Bankruptcy Court or with the express written assent of the Liquidating Trustee. Any such Claim or amendment to Claim filed after the Confirmation Date without leave of the Bankruptcy Court shall be void, of no effect, and deemed disallowed. Neither the Liquidating Trustee, the Estate Representative, the Post-Effective Date Committee (as defined below), nor any other party shall have any obligation to respond in any way to any such Claim.

### ARTICLE IX.    LIQUIDATING TRUST

### Section 9.01    Creation of Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement, the terms of which shall be deemed incorporated in this Plan. The Liquidating Trustee shall be named by the Committee and disclosed at least ten (10) days prior to the Confirmation Hearing.

### Section 9.02    Transfer of Property and Vesting of Assets to be Administered and to be Distributed under the Plan

On the Effective Date, without the necessity of any other or further action, the Debtor shall, and shall be deemed to, irrevocably assign, transfer and convey to the Liquidating Trust all right, title and interest in the Trust Assets, and the Trust Assets shall be deemed vested in the Liquidating Trust. Except as otherwise provided in this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, on the Effective Date, all liens, claims and encumbrances against the Trust Assets shall be fully and completely released and discharged, the Trust Assets shall be free and clear of any such liens, claims and encumbrances, and the Debtor shall have no further rights or obligations with respect to the Trust Assets. Further, on the Effective Date without the necessity of any other or further action, the Examiner shall (and shall be deemed to) irrevocably assign, transfer and convey to the Liquidating Trust all D&O Claims, which D&O Claims shall be deemed vested in the Liquidating Trust. The assignment, deemed assignment, transfer and vesting of the D&O Claims as provided in this Section 9.02 shall constitute an assignment by an "examiner" in conformity with the D&O Policies such that the Liquidating Trust shall constitute an "assignee" of an "examiner" in conformance with the provisions of the D&O Policies.

### Section 9.03    Payment of Certain Liabilities.

Subject to the terms of the Liquidating Trust Agreement, all liabilities of the Debtor or its Estate, including the payment of all post-Effective Date professional fees of any Professional retained by the Debtor and the Committee relating to consummation of this Plan and of any Professional relating to the preparation, filing and presentment of such Professional's final fee application, shall be paid by the Liquidating Trust, and Debtor shall have no further financial or other responsibility or liability therefor. The Liquidating Trust shall further assume the responsibility for the timely filing of any tax returns for the RoweCom Companies for all applicable periods after December 31, 2003 and prior to the Effective Date

### Section 9.04    Purpose and Powers of Liquidating Trust.

The Liquidating Trust will be organized for the purposes of (i) making the distributions required under this Plan and (ii) liquidating the Trust Assets, by sale, collection or other disposition, with no objective or authority to continue or engage in the conduct of a trade or business, which, subject to the Liquidating Trust Agreement, shall include (x) collecting and reducing the Trust Assets to Cash; (y) making distributions to the Trust Beneficiaries; and (z) taking such steps as necessary or appropriate to accomplish such purposes. The Liquidating Trust shall be authorized to investigate, prosecute, litigate and compromise any Cause of Action and shall have standing as an Estate representative to pursue any Cause of Action and objections to Claims, whether initially filed by the Debtor or Examiner or as may be filed by the Liquidating Trust, and may assert any claims or defenses that may otherwise have been asserted by a trustee under the Bankruptcy Code. The Liquidating Trust shall be vested with all the rights, powers and benefits afforded to a trustee under the Bankruptcy Code, including without limitation Sections 108 and 505 of the Bankruptcy Code. Except as may be expressly provided in this Plan, no asset of the Estate shall be deemed abandoned and no Cause of Action of the Debtor or Examiner shall be deemed released or compromised by or as a result of this Plan, its confirmation, its consummation or its treatment of any Claim or creditor. No "insured versus insured" exclusion contained in any D&O Policy shall apply to any D&O Claims brought or prosecuted by either or both of the Examiner or the Liquidating Trust. Further, no defense, right of setoff, counterclaim or right of recoupment of the Debtor or Examiner shall be deemed waived or compromised.

### Section 9.05    Management of Liquidating Trust.

After the Effective Date, the affairs of the Liquidating Trust and of the Trust Assets shall be managed under the discretion of the Liquidating Trustee in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall be the representative of each Estate pursuant to section 1123 of the Bankruptcy Code and shall have all of the rights, powers and standing of the Debtor in possession under section 1107 of the Bankruptcy Code, and such other rights, powers and duties incident to causing performance of the Debtor's obligations under this Plan as may be necessary. The powers of the Liquidating Trust shall include without limitation: (a) the ability and authority to object to Claims, and the ability to prosecute or settle such objections and defend claims asserted in connection therewith (including by way of asserting the Debtor's rights of recoupment, setoff or otherwise); (b) the prosecution in every capacity, including as

representative of the Estate under section 1123(b)(3)(B) of the Bankruptcy Code, of all Causes of Action; (c) the compromise and settlement, under the terms and provisions of the Liquidating Trust Agreement, of all Causes of Action; (d) the sale, lease, license, abandonment or other disposition of any or all of the property of the Liquidating Trust; (e) effecting distributions under this Plan to the holders of Allowed Claims in accordance with this Plan, the Confirmation Order, any other Final Order and the Liquidating Trust Agreement; (f) participation in any post-Confirmation motions to amend or modify this Plan, or appeals from the Confirmation Order; and (g) participation in actions to enforce or interpret this Plan.  Notwithstanding the foregoing, any settlement of a Cause of Action involving claims against divine or any of its affiliates, any officers or directors of the Debtor, divine or any of their affiliates, or any member of the Post-Effective Date Committee, shall be subject to Federal Rule of Bankruptcy Procedure 9019 and approval of the Bankruptcy Court.  The Liquidating Trustee may, but shall not be required to, seek an order from the Bankruptcy Court approving any settlement of an objection to claim or disposition of a Trust Asset, including without limitation any sale or abandonment of a Trust Asset or settlement of a Cause of Action.  Further, notice of any motion seeking approval of any settlement of a Cause of Action or objection to claim or any other disposition of any Trust Asset or hearing thereon shall be limited to the United States Trustee, members of the Committee, and any party in interest that has filed a request for notice.

## Section 9.06    Costs of Administration.

All costs and expenses associated with the administration of the Liquidating Trust, including those rights, obligations and duties described in Section 9.04 hereof, shall be the sole responsibility of and paid by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and shall be paid, first, from the Distribution Costs Reserve, and second, if any such costs remain after the Distribution Costs Reserve has been exhausted, from the Trust Assets.

## Section 9.07    Tax Returns.

The Liquidating Trustee shall prepare or cause to be prepared, and shall file on behalf of the RoweCom Companies, all state and federal tax returns required to be filed by each of them under applicable law, and shall pay from the Trust Assets and in accordance with the terms of this Plan all taxes due in connection with such returns.  Certain of such taxes may be classified as Administrative Claims or Priority Tax Claims as called for under applicable law.  The Liquidating Trustee shall have all of the rights and benefits of a trustee under Section 505 of the Bankruptcy Code for all periods until a Final Decree is entered closing the Chapter 11 Case.  No entity shall be entitled to assert any claim for any excise or property tax accruing after the Confirmation Date.

## Section 9.08    Hiring of Employees and Retention of Professionals.

The Liquidating Trust and the Estate Representative are authorized, without further order of the Bankruptcy Court, to hire such employees and retain and engage such professionals as they may deem necessary to perform their functions thereunder, and the costs of such employment and other expenditures shall be paid from the Liquidating Trust.  Such persons shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a monthly basis from the Liquidating Trust without further notice, hearing or

approval of the Bankruptcy Court. Persons who served as Professionals to the Committee or to the Debtor or Examiner may serve as Professionals to the Liquidating Trustee and/or the Estate Representative, or both.

### Section 9.09    Prosecution of Causes of Action.

The Liquidating Trust shall have the full power and authority to prosecute, compromise or otherwise resolve any and all Causes of Action and distribute the proceeds thereof in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall have standing to prosecute any Cause of Action on behalf of the Liquidating Trust, including without limitation, any D&O Claims. Any and all fees, costs and expenses incurred in respect of the prosecution of such Causes of Action shall be payable and paid solely by the Liquidating Trust. In the sole discretion of the Liquidating Trust, the Liquidating Trust shall also be authorized to prosecute such Causes of Action in the name of the Debtor for the benefit of the Liquidating Trust (and shall have the exclusive right, power and ability, in its sole discretion, to enforce or waive the Estate's Pre 12-16 Privileges), but at the expense of and for the benefit of the Liquidating Trust. The distribution of any proceeds of D&O Claims shall be subject to the provisions of the D-R Settlement Agreement. Neither the Liquidating Trust, nor the Liquidating Trustee, shall have any obligation to pursue any Cause of Action that would not benefit the holders of Allowed General Unsecured Claims. The Liquidating Trust and the Liquidating Trustee shall have no obligation to any party other than holders of Allowed Claims in prosecuting and settling any Cause of Action.

### Section 9.10    The Estate's Privileges.

The Estate's Pre 12-16 Privileges and the Estate's Post 12-16 Privileges shall be assigned to the Liquidating Trust and the Liquidating Trust shall have the exclusive right, power and ability, in its sole discretion, to enforce or waive the Estate's Pre 12-16 Privileges. The Liquidating Trust shall not be permitted to waive the Estate's Post 12-16 Privileges without the prior, express written consent of the Estate Representative. The Estate Representative shall have no other duties, rights or obligations to administer the Liquidating Trust other than as set forth in this Section 9.10. Without the need for application to or approval of the Bankruptcy Court, the Estate Representative may select, determine compensation for and employ attorneys to assist the Estate Representative in performing his or her duties under the Plan. The Liquidating Trustee shall pay the fees and expenses of such counsel selected by the Estate Representative out of the Trust Assets.

Neither the provisions of this Plan nor any subsequent assignment, transfer, retention, waiver, enforcement or exercise of the Estate's Post 12-16 Privileges or the Estate's Pre 12-16 Privileges, as the case may be, shall under any circumstances (i) constitute or be deemed a failure by any person, including without limitation, the Debtor, the Liquidating Trust, the Liquidating Trustee, the Estate Representative or any officer or director of the Debtor, to cooperate with respect to any policy of insurance or (ii) give rise to any exclusion, defense or other limitation on coverage with respect to any Cause of Action or other claims or matters that may be covered by any policy of insurance.

## Section 9.11   Tax Aspects of the Liquidating Trust.

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Internal Revenue Service Procedure and Administration Regulations, that the Trust Beneficiaries be treated as the grantors of the Liquidating Trust and that such trust is owned by the Trust Beneficiaries. Accordingly, it is intended that the Trust Beneficiaries be treated as if they had received a distribution of an undivided interest in the Trust Assets and then contributed such interests to the Liquidating Trust.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 1.671-4(a) of the Income Tax Regulations promulgated pursuant to the United States Internal Revenue Code. The Liquidating Trustee may require any Trust Beneficiary to furnish to the Liquidating Trustee its, his or her employer or taxpayer identification number ("TIN") as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any distribution to any such beneficiary upon receipt of such identification number. If a Trust Beneficiary shall fail to provide the Liquidating Trustee with any requested TIN within 180 days after the request, such failure shall be deemed a waiver of all of such beneficiary's interests in the Liquidating Trust and rights to distributions under this Plan. Distributions that would have been made to such beneficiary shall be distributed to the other Trust Beneficiaries based on their Pro Rata interests in the Liquidating Trust.

## Section 9.12   Liability.

The Liquidating Trustee and the Estate Representative shall not be liable or answerable for anything in connection with this Plan except for willful misconduct or gross negligence. The Liquidating Trustee and the Estate Representative shall be entitled to rely upon any opinion of counsel and other professionals, and shall not be liable for any action taken or omitted in good faith on such reliance. In order to secure the faithful performance of his duties under the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall obtain at the expense of the Liquidating Trust and file with the Bankruptcy Court a surety bond, naming the United States as the obligee thereunder, in an amount equal to one hundred percent (100%) of the Cash in the Liquidating Trust. The surety on such bond shall be among those listed as acceptable sureties on federal bonds in Circular 570 of the United States Department of the Treasury. The Liquidating Trustee may increase the amount of the bond or reduce the amount of the bond from time to time as he deems necessary or proper provided that such amount equals or exceeds the amount of Cash in the Liquidating Trust. No bond shall be required if and when the value of the Trust Assets shall be less than $100,000.00

## Section 9.13   Compensation.

In accordance with the procedures set forth in the Liquidating Trust Agreement, the Liquidating Trustee and the Estate Representative shall receive reasonable compensation for their services based on his normal hourly time charges in effect at the time such services are rendered. If the Liquidating Trustee or Estate Representative is an attorney, he or she may retain as his or her counsel such law firm as he may be a member of. The Liquidating Trustee and

Estate Representative shall also be reimbursed for any expenses reasonably incurred in the performance of his or her duties.

**Section 9.14    Post-Effective Date Committee.**

   a.    On the Effective Date, the Committee will become the Post-Effective Date Committee.

   b.    The Post-Effective Date Committee shall consist of such members of the Committee who desire to serve on the Post-Effective Date Committee as of the Effective Date; provided, however, that the Liquidating Trustee and the members of the Post-Effective Date Committee shall use reasonable efforts to insure that the Post-Effective Date Committee does not consist of less than three (3) members.

   c.    The Post-Effective Date Committee shall oversee, but not control, the liquidation of the Trust Assets and the prosecution of claims and Causes of Action pursuant to this Plan and the terms of the Liquidating Trust Agreement (other than claims against members of the Post-Effective Date Committee), and shall oversee, but not control, the activities of the Liquidating Trustee; provided, however, that the Post-Effective Date Committee shall have all of the powers provided in the Liquidating Trust Agreement, including, without limitation, the power to remove and replace the Liquidating Trustee.

   d.    Members of the Committee and Post-Effective Date Committee shall be reimbursed by the Liquidating Trust for their reasonable and necessary out-of-pocket expenses incurred in performing their duties including, without limitation, professional fees incurred on behalf of the Post-Effective Date Committee. Such reimbursement shall be effected pursuant to such procedures as the Post-Effective Date Committee shall establish for presentation and review of invoices and supporting documentation.

   e.    In the event of the resignation of a member of the Post-Effective Date Committee, the remaining members may, but need not, designate a successor from among the holders of Class 3 Claims. Unless and until such vacancy is filled, the Post-Effective Date Committee shall function with such reduced membership.

   f.    In the event a creditor whose representative serves on the Post-Effective Date Committee should assign its Claim or release the Debtor from further distribution on such Claim, such assignment or release shall constitute the resignation of such creditor from the Post-Effective Date Committee.

   g.    Neither the Post-Effective Date Committee, nor any of its members, shall in any way be liable for any acts or for the acts of the Liquidating Trustee, except for acts undertaken in bad faith, gross negligence or willful misconduct in the performance of their duties as members of the Post-Effective Date Committee. The Liquidating Trust shall indemnify and hold harmless the Post-Effective Date

Committee and its members from and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them in good faith in their capacities as members of or agents for the Post-Effective Date Committee or in overseeing the acts of the Liquidating Trustee.

h.  The Post-Effective Date Committee shall be dissolved when the Bankruptcy Court enters the Final Decree.

## Section 9.15  Dissolution of Liquidating Trust.

Subject to the Liquidating Trust Agreement, the Liquidating Trust shall be dissolved after all Trust Assets have been liquidated and all proceeds therefrom have been distributed, unless otherwise agreed by the Liquidating Trustee and the Trust Beneficiaries.

## ARTICLE X.     PROVISIONS GOVERNING DISTRIBUTIONS

### Section 10.01  Distribution.

The distribution of proceeds shall be made in accordance with this Plan, the Confirmation Order, the Liquidating Trust Agreement and any Final Orders of the Bankruptcy Court.

### Section 10.02  Disbursing Agent.

The Liquidating Trust or its designee shall make all distributions required under this Plan.

### Section 10.03  Sources of Cash.

Distributions in respect of Administrative Claims, Priority Tax Claims, Secured Claims, Other Priority Claims and General Unsecured Claims that are or become Allowed Claims shall be made from the Trust Assets.  The Disputed Claims Reserve shall, depending on the Class of Disputed Claim, be funded from the Distribution Costs Reserve or the Trust Assets.

### Section 10.04  Distribution Date.

On the Distribution Date, the Liquidating Trust shall make distributions from the Distribution Costs Reserve to the holders of certain Allowed Claims pursuant to the terms of this Plan.

### Section 10.05  Subsequent Distribution Dates.

After the Distribution Date, unless otherwise directed by Final Order of the Bankruptcy Court, the Liquidating Trust shall make additional distributions periodically to the holders of Allowed Claims as and when the Liquidating Trust, in its sole discretion, deems appropriate.

**Section 10.06  Delivery of Distributions.**

Distributions to holders of Allowed Claims shall be made (a) at the addresses set forth on the proofs of Claim filed by such holders, (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trust after the date of any related proof of Claim or (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and no written notice of a change of address has been received. If a distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidating Trust is notified of such holder's current address, at which time all missed distributions shall be made without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidating Trust until claimed. All claims for undeliverable distributions must be made on or before 180 days after the relevant Distribution Date, after which date all unclaimed property shall revert to the Liquidating Trust free of any restrictions thereon and the claim of any holder or successor to such holder shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing in the Plan shall require the Liquidating Trustees to attempt to locate any holder of an Allowed Claim.

**Section 10.07  Disputed Claims Reserve.**

Prior to making any distributions, the Liquidating Trust shall establish reserves for Disputed Claims (the "Disputed Claims Reserve") in an amount equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims in the Face Amount of the Disputed Claim. The Liquidating Trust may request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated, and, with respect to each such Claim, need withhold only such estimated amount as determined by the Bankruptcy Court or agreed to by the holder thereof.

**Section 10.08  No Distributions Pending Allowance.**

No payments or distributions shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or overruled by the Bankruptcy Court and such Claim becomes an Allowed Claim.

**Section 10.09  Distributions after Allowance.**

Distributions from the Disputed Claims Reserve shall be made as appropriate to the holder of any Disputed Claim that has become an Allowed Claim on the date such Disputed Claim becomes an Allowed Claim or as soon thereafter as practicable. Such distributions will be based upon the cumulative distributions that would have been made to the holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim as of the Effective Date and shall not be limited by the amounts reserved with respect to such Disputed Claim to the extent that additional amounts are available therefor, but only to the extent that such additional amounts have not yet been distributed to holders of Allowed Claims. Upon such distribution, the Disputed Claims Reserve shall be reduced by an amount equal to the amount reserved with respect to such Disputed Claim. No interest shall be payable to the holders of Disputed Claims on account of funds reserved, if any, in respect of such Disputed Claims.

**Section 10.10** <u>Withholding and Reporting Requirements</u>.

In connection with this Plan and all distributions to be made hereunder, the Liquidating Trust shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trust is hereby authorized to take any and all actions that may be necessary or appropriate to comply with any such requirements.

**Section 10.11** <u>Means of Cash Payments Made Pursuant to Plan</u>.

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the Liquidating Trustee shall determine.

**Section 10.12** <u>De Minimis Distributions</u>.

No Cash distribution of less than twenty-five dollars ($25.00) shall be made to any holder of an Allowed Claim. Such undistributed amounts, if any, shall be retained by the Liquidating Trust and distributed Pro Rata to other Trust Beneficiaries.

**Section 10.13** <u>Final Distribution and Final Decree</u>.

Upon resolution of all objections to Disputed Claims, and all actions or other proceedings relating to any Causes of Action, the Liquidating Trust shall make all remaining distributions required under this Plan, shall file a final report and account of all receipts and disbursements with the Bankruptcy Court, and shall thereafter be discharged from any further liabilities or obligations under this Plan. Notwithstanding the provisions of Massachusetts Local Bankruptcy Rule ("MLBR") 3022-1(b), it shall be the sole and exclusive duty of the Liquidating Trustee to prepare and file a motion requesting that the Bankruptcy Court enter a Final Decree in this case. The Liquidating Trustee shall not file a motion for entry of a Final Decree until all Claims are resolved and all Trust Assets have been distributed as contemplated by this Plan Allowed Claims or provision has been made to make such distribution after entry of the Final Decree.

**ARTICLE XI.    ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**Section 11.01** <u>Claims Administration Responsibility</u>.

On or after the Effective Date, the Liquidating Trustee shall be responsible for administering, disputing, objecting to, compromising or otherwise resolving and making distributions on account of Disputed Claims.

**Section 11.02** <u>Claims Objection Deadline</u>.

On or before the Claims Objection Deadline, objections to Claims shall be filed with the Bankruptcy Court and served upon the holder of each Claim as to which an objection is made.

**Section 11.03** **Prosecution of Objections.**

After the Confirmation Date, the Liquidating Trust shall have the sole and exclusive authority to file objections, litigate, settle or withdraw objections to Disputed Claims.

**Section 11.04** **Interest on Claims.**

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon.

**Section 11.05** **Voting and Objections to Claims or Interests.**

The failure by the Debtor or any other entity to object to or examine any Claim or Interest for purposes of voting shall not be deemed a waiver of Debtor's, the Liquidating Trust's, or any other entity's rights to object to, or re-examine, such Claim or Interest, in whole or in part, for purposes of allowance or distribution.

**ARTICLE XII.**    **EXECUTORY CONTRACTS, UNEXPIRED LEASES AND INDEMNIFICATION OBLIGATIONS**

**Section 12.01** **Rejected if Not Assumed.**

The Plan constitutes and incorporates a motion by the Proponents to reject all pre-petition executory contracts and unexpired leases to which the Debtor is a party, including without limitation all written employment agreements, collective bargaining agreements, severance contracts and employee benefit or retirement or supplemental retirement benefit plans and agreements, but excluding for purposes hereof any contract or lease that (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (b) is specifically designated by the Debtor pursuant to a motion filed prior to the Confirmation Hearing as a contract to be assumed or assumed and assigned under the Plan, or (c) is the subject of a motion to reject that is pending before the Bankruptcy Court on the Effective Date. Any monetary amounts by which any contracts and leases to be assumed under this Plan are in default shall be satisfied, at the Proponents' option, (x) a payment of Cash on the Distribution Date in the amount of such default or (y) as may agreed by the parties or directed by Final Order of the Bankruptcy Court.

**Section 12.02** **Bar Date for Rejection Claims.**

If the rejection of any executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or their properties **unless** a proof of claim is filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Confirmation Date. Objections thereto shall be filed by the Claims Objection Deadline. This

Section 12.02 shall not extend any deadline for filing rejection claims previously established by entry of an order of the Bankruptcy Court.

### Section 12.03 Indemnification Obligations.

Entry of the Confirmation Order shall be deemed to be a rejection of all Indemnification Obligations of the Debtor. Any Claim or Administrative Claim arising from or related to any Indemnification Obligation of the Debtor must be filed by the respective Bar Date or Administrative Claims bar date, as the case may be, or shall be deemed forever barred.

## ARTICLE XIII. ALLOWANCE OF ADMINISTRATIVE CLAIMS

### Section 13.01 Administrative Claims Bar Date.

All requests for payment of an Administrative Claim other than (i) Professional Fee Claims or (ii) liabilities incurred and paid in the ordinary course of business by the Debtor (as described in this Section), must be filed with the Bankruptcy Court and served on the Debtor and the Liquidating Trustee and their attorneys no later than thirty (30) days after the Effective Date. Unless an objection is filed within thirty (30) days after filing of an Administrative Claim, such Administrative Claim shall be deemed allowed in the amount requested. In the event such an objection is filed, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Debtor in the ordinary course of business; provided, however, that any Administrative Claim payable in the ordinary course of business which, according to its terms, is or becomes overdue by more than thirty (30) days, shall no longer be considered payable in the ordinary course and shall be forever barred unless a request for payment thereof is filed with the Bankruptcy Court by no later than the earlier to occur of (i) ninety (90) days after which the obligation became overdue or (ii) one hundred and eighty (180) days after the Effective Date.

### Section 13.02 Filing of Professional Fee Claims.

All final requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to Debtor or the Committee prior to the Effective Date and Substantial Contribution Claims must be filed and served on counsel for the Debtor, the Committee, the Liquidating Trust and the Office of the United States Trustee no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to the applications of Professionals or other Persons for compensation or reimbursement of expenses must be filed and served on counsel for the Debtor, the Committee, the Liquidating Trustee, the Office of the United States Trustee and the requesting Professional or other Person no later than thirty (30) days (or such longer period as may be allowed by the Bankruptcy Court) after the date on which the respective application for compensation or reimbursement was filed. The Liquidating Trust shall pay all fees and expenses associated with final requests for Professional Fee Claims. To the extent necessary, the Confirmation Order shall amend and supercede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Professional Fee Claims. Professionals retained by the Liquidating Trust after the Effective Date shall be paid in the

ordinary course of business, without the need for Bankruptcy Court approval or the submission of Professional Fee Claims.

## ARTICLE XIV.  RETENTION OF JURISDICTION

### Section 14.01 Exclusive Jurisdiction of the Bankruptcy Court.

Except as provided herein, under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under this Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b) Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c) Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required cure payment or the liquidation or allowance of any Claims arising therefrom;

(d) Effectuate performance of and payments under the provisions of this Plan;

(e) Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f) Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(g) Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

75

(h) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(i) Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(j) Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(k) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(l) Except as otherwise limited herein, the recovery of all assets of the Debtor and property of the Estate, wherever located;

(m) Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(o) Enter a final decree closing the Chapter 11 Case.

The Court shall retain non-exclusive jurisdiction to hear and determine (1) any D&O Claims and other Causes of Action to the fullest extent permitted by law and to the same extent the Court would have had jurisdiction prior to the Effective Date and (2) any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case.

### Section 14.02  Courts of Competent Jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XV.    CONDITIONS TO CONFIRMATION, CONSUMMATION OF THE PLAN

### Section 15.01  Conditions to Confirmation.

Except as expressly waived by the Proponents, the following are conditions precedent to the occurrence of the Confirmation Date: (a) the entry of an order finding that the Disclosure

Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code; and (b) the proposed Confirmation Order shall be in form and substance acceptable to the Proponents.

**Section 15.02  Conditions to Effective Date.**

Except as expressly waived by the Proponents, the following conditions must occur and be satisfied before the Effective Date may take place:

**(a)  Entry of Confirmation Order.**

The Confirmation Order shall have been signed by the Bankruptcy Court, duly entered on the docket for the Chapter 11 Case and shall become a Final Order in form and substance reasonably acceptable to Debtor.

**(b)  No Stay.**

There shall be no stay in effect with respect to the Confirmation Order.

**(c)  Required Documents.**

All actions, documents and agreements necessary to implement the Plan shall have been effected or executed, including the Liquidating Trust Agreement.

**(d)  Effectiveness of Divine Plan.**

The Effective Date under the plan of reorganization filed by Divine shall have occurred or shall occur upon the occurrence of the Effective Date of this Plan.

**Section 15.03  Waiver of Conditions.**

Each of the conditions set forth in Section 15.01 and 15.02 of this Plan may be waived, in whole or in part, by the Proponents, without any other notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Proponents at their discretion regardless of the circumstances giving rise to the failure to satisfy such condition (including any action or inaction by the Proponents). The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**Section 15.04  Notice of Effective Date.**

Promptly following the occurrence of the Effective Date, the Liquidating Trust shall file a written notice regarding the occurrence of same with the Bankruptcy Court.

77

## ARTICLE XVI. **NOTICES**

Any notice, request, or demand required or permitted to be made or provided to or upon the Proponents under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

> Kevin Flannery
> 1191 Tillman Road
> Charlottesville, VA  22901-6335
> Telephone: (434) 984-4660
> Facsimile:  (434) 984-6335

with copies to:

> Kaye Scholer LLC
> Three First National Plaza, Suite 4100
> Chicago, IL 60602
> Attn:  Stephen E. Garcia
> Telephone: 312/583-2300
> Facsimile:  312/583-2360

> Duane Morris LLP
> 470 Atlantic Avenue, Suite 500
> Boston, Massachusetts 02210
> Attn:  Jeffrey D. Sternklar
> Telephone:  (617) 289-9200
> Facsimile:  (617) 289-9201

If to the Committee, the Liquidating Trustee, or the Post-Effective Date Committee:

> Craig and Macauley Professional Corporation
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, Massachusetts 02210
> Attn.:  Christopher J. Panos
> Telephone:  (617) 367-9500, X 357
> Facsimile:  (617) 742-1788

## ARTICLE XVII. MISCELLANEOUS

### Section 17.01 <u>Modifications of Plan</u>.

This Plan may be modified in accordance with section 1127 of the Bankruptcy Code.

### Section 17.02 <u>Revocation and Withdrawal of Plan</u>.

The Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Proponents revoke or withdraw the Plan, or if Confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Proponents or any other Person, (y) prejudice in any manner the rights of the Proponents or any Person in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Proponents.

### Section 17.03 <u>Committee</u>.

On the Effective Date, the Committee shall become the Post-Effective Date Committee.

### Section 17.04 <u>Headings</u>.

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

### Section 17.05 <u>Severability of Plan Provisions</u>.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 17.06** <u>Binding Effect, Successors and Assigns</u>.

The rights and obligations of any Person named or referred to in this Plan shall be binding upon such Person and shall be binding upon and inure to the benefit of any heir, executor, administrator, successor or assign of such Person.

**Section 17.07** <u>U.S. Trustee's Fees</u>.

All fees payable by the Debtor pursuant to section 1930 of title 28 of the U.S. Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Liquidating Trust shall pay all required fees pursuant to section 1930 of title 28 of the U.S. Code without further order.

**Section 17.08** <u>Plan Documents, Exhibits</u>.

Not less than five (5) days prior to commencement of the Confirmation Hearing, the Proponents shall file with the Bankruptcy Court such exhibits, agreements and other documents, if any, as may be necessary or appropriate to effectuate the terms and conditions of this Plan and the Disclosure Statement. Upon such filing, such documents may be inspected in the office of the clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to Kurtzman Carson Consultants LLC, Attn: Jonathan A. Carson, 5301 Beethoven Street, Suite 102, Los Angeles, California 90066-7066. The Proponents explicitly reserve the right to modify any exhibit prior to the Confirmation Hearing.

**Section 17.09** <u>Governing Law</u>

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable or a rule of law or procedure is supplied by other federal or Massachusetts law, and subject to the provisions of any contract, instrument, release or other agreement or document entered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts without giving effect to the principles of conflicts of law thereof.

**Section 17.10** <u>Exculpations</u>.

None of the Debtor, the Estate Representative, the Committee, the Examiner, the Liquidating Trustee or the Post-Effective Date Committee, and none of their respective officers, directors, employees, agents, distribution agents, attorneys, accountants and other professionals (the "Exculpated Parties") shall have or incur any liability to the Debtor or any holder of a Claim or Interest for any postpetition act or omission in connection with, or arising out of, the Chapter 11 Case or this Plan, including without limitation, the negotiation, formulation, preparation, confirmation, consummation or the administration of the Chapter 11 Case, this Plan, the Disclosure Statement, the Liquidating Trust or any contract, instrument, release or other agreement, document, or election made, created or entered into or any other postpetition action taken in connection with Chapter 11 Case, this Plan or the property to be distributed under this Plan; <u>provided</u> that under no circumstances shall an Exculpated Party be entitled to the

protections of this Section if such liability arises from willful misconduct or gross negligence on the part of such Exculpated Party.

*[Remainder of page intentionally left blank]*

81

Dated:        November 23, 2004
              Boston, Massachusetts

Respectfully Submitted,

Sabine, Inc.                                    Official Committee of Unsecured Creditors


By:_____/s/ Kevin S. Flannery_____          By: ___/s/ Christoper J. Panos_____
     Name:    Kevin S. Flannery
     Title:   Chairman of the Board
                                                Christopher J. Panos (BBO#555273)
Of Counsel:                                     Brendan C. Recupero (BBO#645032)
                                                Craig and Macauley Professional
Jeffrey D. Sternklar (BBO#549561)               Corporation
Jennifer L. Hertz (BBO#645081)                  Federal Reserve Plaza
Duane Morris, LLP                               600 Atlantic Avenue
470 Atlantic Avenue, Suite 500                  Boston, MA 02210
Boston, Massachusetts 02210                     Telephone:  (617) 367-9500
Telephone: (617) 289-9200                       Facsimile:   (617) 742-1788
Facsimile: (617) 289-9201
                                                Attorneys for
Stephen E. Garcia (#6196573 Illinois Bar)
Mindy D. Cohn (#6272078 Illinois Bar)           *Official Committee of Unsecured Creditors*
Kaye Scholer LLC
Three First National Plaza, #4100
Chicago, Illinois 60602
(312) 583-2300 Telephone
(312) 583-2360 Facsimile


Attorneys for

*Sabine, Inc.*

82

**Exhibit A**

## LIQUIDATING TRUST AGREEMENT

This *Liquidating Trust Agreement* ("Agreement") is entered into as of the \_\_\_\_\_ day of _____, 2004, by and between the Official Committee of Unsecured Creditors of _____(the "Committee"), _____ of _____ (the "Estate Representative") and _____of _____(the "Liquidating Trustee").

### WITNESSETH:

WHEREAS, on _____, 2004, the *Third Amended Plan of Liquidation* (the "Plan") proposed under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") by RoweCom, Inc., as debtor and debtor in possession and as successor in interest by means of substantive consolidation to the Chapter 11 estates of Dawson, Inc., The Faxon Company, Inc., Turner Subscription Agency, Inc., McGregor Subscription Agency, Inc., Dawson Information Quest, Inc., and Corporate Subscription Services, Inc. (the "Debtor"), as filed in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division (the "Bankruptcy Court"), in Case No. 03-10668-JNF, was confirmed by the Bankruptcy Court pursuant to Bankruptcy Code § 1129; and

WHEREAS, together with the certain other provisions, the Plan provides for the Committee, on behalf of the Debtor and its Estate, the Estate Representative and the Liquidating Trustee to enter into this Agreement relative to the administration of the Trust Assets subsequent to confirmation of the Plan; and

WHEREAS, the Liquidating Trustee is willing to accept the duties of Liquidating Trustee upon such terms and conditions as are hereinafter set forth; and

WHEREAS, the Estate Representative is willing to accept the duties of the Estate Representative upon such terms and conditions as are hereinafter set forth.

NOW, THEREFORE, for and in consideration of the premises and mutual covenants herein contained, pursuant to the Plan, the Committee, the Estate Representative and the Liquidating Trustee do hereby covenant and agree as follows:

### ARTICLE 1

*Definitions; Interpretive Rules.*

1.1    *Terms.*    For purposes of this Agreement, all capitalized terms shall have the meanings ascribed to them herein, and the following terms shall have the following meanings:

(a)    *Permitted Investments.*    Any of the following: (i) marketable direct obligations issued or unconditionally guaranteed by the United States of America or any agency thereof maturing or redeemable within 180 days from the date of acquisition thereof; (ii) certificates of deposit, maturing no more than 180 days from the date of creation thereof, issued by commercial banks incorporated under the laws of the United

States of America or any state thereof or the District of Columbia having membership in the Federal Deposit Insurance Corporation and in amounts not exceeding the maximum amounts insured thereunder; (iii) time deposits, maturing no more than 30 days from the date of creation thereof with commercial banks or savings banks each having membership in the Federal Deposit Insurance Corporation and in amounts not exceeding the maximum amounts insured thereunder; (iv) money market funds managed by nationally recognized firms and making only investments qualified under (i), (ii), (iii) or (v) herein; (v) variable rate demand notes with a rating from Standard & Poor's of "A-1" or better or from Moody's of "P-1" or better; or (vi) demand deposits at any bank or savings institution organized under the laws of the United States of America or any state thereof or the District of Columbia having membership in the Federal Deposit Insurance Corporation; *provided, however*, such demand deposits shall be in amounts not to exceed the maximum amounts insured by the Federal Deposit Insurance Corporation.

(b)     *Capitalized Terms in Plan.*  Any capitalized term not defined herein shall have the meaning assigned to it in the Plan.

1.2     *Interpretive Rules.*  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires:  (i) references to "Articles," "Sections" and other subdivisions, without reference to a document, are to designated Articles, Sections and other subdivisions of this Agreement; (ii) the use of the term "including" means "including but not limited to"; and (iii) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision.  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting the same.  The singular shall include the plural, and the plural the singular, wherever the context so requires, and the masculine, the feminine and the neuter genders shall be mutually inclusive.

## ARTICLE II

### *Purpose; Administration.*

2.1     *Purpose of Agreement.*  The Committee, the Estate Representative and the Liquidating Trustee hereby enter into this Agreement for the purposes of (a) liquidating the Trust Assets in the manner prescribed by the Plan and this Agreement as rapidly as market conditions allow, consistent with the objective of maximizing value; (b) distributing the net proceeds therefrom in accordance with the terms of the Plan; and (c) engaging in any and all other activities which shall be incidental thereto.  All activities of the Liquidating Trustee and the Estate Representative shall be reasonably necessary to, and consistent with the accomplishment of, these purposes.

2.2     *Administration of the Trust Assets.*  From and after the Effective Date, the Liquidating Trustee shall manage, administer, invest and reinvest all of the Trust Assets, collect the income therefrom, and distribute the proceeds, all pursuant to the terms and conditions of the Plan and this Agreement and subject to the oversight, but not at the direction of, the Post-Effective Date Committee.  The Liquidating Trust shall be authorized to prosecute such Causes of Action in the name of the Debtor.

## ARTICLE III

*Post-Effective Date Management.*

3.1    *Post-Effective Date Management.*  As provided for in the Plan and herein, the Liquidating Trustee, subject to the oversight, but not the direction of, the Post-Effective Date Committee, shall have the exclusive right and duty, subject to the Plan, to manage the Trust Assets, subject to certain limitations of liability as set forth herein.

## ARTICLE IV

*Duties, Rights and Powers of Liquidating Trustee and Estate Representative.*

4.1    *Liquidating Trustee's Duties.*  The Liquidating Trustee shall, subject to the oversight, but not the direction of, the Post-Effective Date Committee, manage the Trust Assets, collect the income and make distributions, including final distributions, as provided under the Plan and shall thereupon take such steps as provided herein and as otherwise necessary and proper to close the Debtor's Case.

4.2    *Estate Representative's Duties.*  The Estate Representative's sole duty and responsibility shall be to determine, after a written request by the Liquidating Trustee, if, and when, the Estate's Post 12-16 Privileges should be waived or enforced with respect to any Cause of Action, investigation or other activity of the Liquidating Trust.  Without the need for application to or approval of the Bankruptcy Court, the Estate Representative may select, determine compensation for and employ attorneys to assist the Estate Representative in performing his or her duties hereunder. The Liquidating Trustee shall pay the fees and expenses of such counsel selected by the Estate Representative out of the Trust Assets.  The Estate Representative shall have no ability to oversee or direct the management, liquidation or distribution of any other Trust Assets, other than the right to the payment of his or her own compensation and the payment of the fees and expenses of his or her attorneys, if any.

4.3    *Liquidating Trustee's Rights and Powers.*  The Liquidating Trustee shall have the powers and authority as set forth herein and in the Plan necessary to manage the Trust Assets and effect the disposition, orderly liquidation and distribution of all Trust Assets.  The Liquidating Trustee is not authorized in his capacity as such to engage in any trade or business.  The rights and powers shall include, subject to the limitations set forth in the Plan and this Agreement, the right and power to:

> (a)    Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions, and at such time or times as the Liquidating Trustee shall determine, any or all of the Trust Assets (whether tangible or intangible); to that end, grant options, make contracts, retain brokers, and sign, seal, acknowledge, and deliver any and all proper deeds, or other instruments of conveyance or transfer thereof; and delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, transfer, or exchange of any such property;

> (b)    Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Trustee's duties hereunder and under the Plan;

113867_2.DOC                                    3

(c)   Subject to any limitations contained in the Plan and herein, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims, including claims described in the Plan and herein, other matters, or taxes;

(d)   Pay all expenses and obligations of the Liquidating Trust out of the Trust Assets;

(e)   Subject to the requirements of the Plan and herein, determine whether to investigate, pursue, object to, or defend a Cause of Action in connection with the liquidation of Assets;

(f)   Investigate, prosecute and, if necessary, litigate, any Cause of Action, including, but not limited to, D&O Claims, avoidance or recovery actions under Bankruptcy Code §§ 542, 544, 545, 547, 548, 549, 550, 551 and 553, or any other Causes of Action, rights to payment or claims, that may belong to the Debtor or to the Estate, which causes of action, rights to payment and claims as of the Effective Date shall vest in the Liquidating Trustee, for the benefit of the Liquidating Trust, pursuant to the terms of the Plan; *provided, however*, that the Liquidating Trustee shall not consult with the Post-Effective Date Committee with respect to claims against any members of the Post-Effective Date Committee and shall have the sole authority to investigate, prosecute and, with Bankruptcy Court approval, settle such claims.

(g)   Consult with counsel or special counsel retained by the Liquidating Trustee with the approval of the Post-Effective Date Committee, and employ other individuals in connection with the administration of the liquidation, and pay all reasonable and necessary costs of any litigation directly or indirectly involving the liquidation;

(h)   File a suit in interpleader or in the nature of interpleader in the Bankruptcy Court and obtain an order requiring all persons and parties involved to litigate in such court their respective claims arising out of or in connection with this Agreement;

(i)   File any other appropriate action for relief in an appropriate court of competent jurisdiction; and

(j)   Employ individuals to assist in the orderly liquidation of Trust Assets.

4.4   *Limitations as to Losses.* The Liquidating Trustee and the Estate Representative shall not be responsible, and shall have no liability whatsoever, to any person for any loss to the Liquidating Trust or the amount of interest thereon resulting from the investment thereof in any Permitted Investments. The Liquidating Trustee shall not invest or reinvest any Trust Assets in a security or instrument that does not constitute a Permitted Investment. The Liquidating Trustee and the Estate Representative shall not have any liability to any retirement, employee benefit or pension plan of the Debtor in excess of the amounts available to be distributed from such Plans.

4.5   *Selection of Agents.* Without the need for application to or approval of the Bankruptcy Court, the Liquidating Trustee may select, determine compensation for and employ attorneys, brokers, consultants, custodians, investment advisors, asset services, auditors, accountants, and other agents (including, without limitation, attorneys, accountants and

consultants retained by any third party (including former employees of the Debtor) that are cooperating with the Liquidating Trust in the administration of Trust Assets) as may be approved by the Post-Effective Date Committee. The Liquidating Trustee shall avail himself of the services of counsel or special counsel subject to the oversight, but not the direction of, the Post-Effective Date Committee. Subject to the Plan and the oversight, but not the consent of, the Post-Effective Date Committee, the Liquidating Trustee may pay the salaries, fees and expenses of such agents or consultants out of the Trust Assets in accordance with the provisions of Section 4.14. The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any person interested therein by reason of any mistake or default of any such agent or consultant.

4.6     *Signature*. As of the Effective Date of the Plan, the Liquidating Trustee shall have the sole signature power and authority with respect to the Liquidating Trust to (a) open and close accounts with any banking, financial or investment institution; (b) make deposits and withdrawals of cash and other property into or from any such account; (c) make or endorse checks with respect to any such account; (d) effectuate purchases and sales of securities and give security purchase and sale orders to brokers or any other third parties and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Liquidating Trustee then entitled to make such decision.

4.7     *Maintenance of Register*. The Liquidating Trustee shall at all times maintain a register of the names, addresses and amount of the Claims as in effect on the Effective Date and as revised from time to time thereafter.

4.8     *Liability of Liquidating Trustee and the Estate Representative.*

(a)     *Standard of Care*. The Liquidating Trustee shall have a fiduciary duty to the holders of Allowed Claims to perform the duties expressly expressly provided for by this Agreement. The Liquidating Trustee and the Estate Representative shall not be liable for any action taken or omitted to be taken by him or her in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by this Agreement, or be responsible for the consequences of any act or failure to act, except for gross negligence or willful misconduct. The Liquidating Trustee and the Estate Representative shall not have any fiduciary relationship with any party by virtue of this Agreement except as specifically set forth in this Agreement.

(1)     The Liquidating Trustee and the Estate Representative shall not be liable or in any way responsible for the acts or omissions of the Debtor, its board of directors, officers, employees or agents.

(2)     Unless indemnified to his satisfaction against liability and expense, neither the Liquidating Trustee and the Estate Representative shall be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or this Agreement or to prosecute or defend any suit in respect hereof. If the Liquidating Trustee or the Estate Representative requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan or this Agreement, the Liquidating Trustee and the Estate Representative shall be entitled (but shall not be required) to refrain (without incurring any liability to any person by so refraining) from such act or

action unless and until he has received such instructions of approval. In no event, however, shall the Liquidating Trustee or the Estate Representative or any of their representatives be required to take any action which he or she reasonably determines could lead to criminal or civil liability.

(3)    The Liquidating Trustee and the Estate Representative shall not be responsible in any manner to the Debtor, the Estate, any Claim holder, or any party in interest for:

(i)    the creditworthiness of any party and the risks involved to the Debtor or such Claim holder or party in interest;

(ii)    the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan or this Agreement as to any person other than the Liquidating Trustee and the Estate Representative ;

(iii)    any representation, warranty, document, certificate, report or statement made herein or furnished hereunder or in connection with the Plan or this Agreement not constituting a breach of the standard of care set forth in this Section 4.8(a) on the part of the Liquidating Trustee or the Estate Representative ;

(iv)    the existence, priority or perfection of any existing Lien; or

(v)    the observation or compliance with any of the terms, covenants or conditions of the Plan or this Agreement on the part of any party other than the Liquidating Trustee and the Estate Representative.

(4)    The Liquidating Trustee shall be entitled to rely on negative notice to any member of the Post-Effective Date Committee or any Claim holder. Any member of the Post-Effective Date Committee or Claim holder that fails to object in writing so as to be received by the Liquidating Trustee on or before ten (10) business days after service by the Liquidating Trustee of a proposed action (or determination not to take action) shall be deemed to have consented to such action or determination not to take action.

(5)    The Debtor and the Claims holders, and parties in interest, by voting for the Plan and/or accepting the benefits thereof, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Trustee and the Estate Representative pursuant to the Plan or this Agreement, except for actions or omissions which violate the standard of care set forth in this Section 4.8(a).

(b)    *Surety Bond.*    In order to secure the faithful performance of his duties under the Plan and this Agreement, the Liquidating Trustee shall obtain at the expense of the Liquidating Trust and file with the Bankruptcy Court a surety bond, naming the United States as the obligee thereunder, in an amount equal to one hundred percent (100%) of the Cash in the Liquidating Trust. The surety on such bond shall be among those listed as acceptable sureties on federal bonds in Circular 570 of the United States Department of the Treasury or a similar listing if no longer published. The Liquidating

Trustee may increase the amount of the bond or reduce the amount of the bond from time to time as he deems necessary or proper provided that such amount equals or exceeds the amount of Cash in the Liquidating Trust. No bond shall be required if and when the value of the Trust Assets shall be less than $100,000.00.

(c)    *No Liability for Acts of Predecessor.*  No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office prior to the date on which such person becomes a Liquidating Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Trustee by such predecessor Liquidating Trustee and shall further be responsible only for those Assets included in such statement.

(d)    *No Implied Obligations.*  The Liquidating Trustee and the Estate Representative shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and in the Plan, and no other or further covenants or obligations shall be implied into this Agreement. The Liquidating Trustee and the Estate Representative shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Assets. The Liquidating Trustee and the Estate Representative make no representations as to the value of the Assets or any part thereof, nor as to the validity, execution, enforceability, legality or sufficiency of this Agreement, and the Liquidating Trustee and the Estate Representative shall incur no liability or responsibility with respect to any such matters.

(e)    *Reliance on Documents or Advice of Counsel or Other Persons.*  Except as otherwise provided herein, the Liquidating Trustee and the Estate Representative may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report notice, request, consent, order and other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties, and shall have no liability or responsibility with respect to the form, execution or validity thereof; nor shall the Liquidating Trustee or the Estate Representative be liable for any act which he may do or omit to do hereunder, all subject only to the limitation that the Liquidating Trustee acts in accordance with the standard of care set forth in Section 4.8(a). None of the provisions hereof shall require the Liquidating Trustee and the Estate Representative to expend or risk his own funds or otherwise incur financial liability or expense in the performance of any duties hereunder. The Liquidating Trustee and the Estate Representative may consult with legal counsel retained by them, subject to the oversight, but not the approval, of the Post-Effective Date Committee, and shall not be liable for any action taken or suffered in reliance upon the advice of such counsel.

(f)    *No Personal Obligation for Liabilities of the Debtor.*  Claims holders and other persons dealing with the Liquidating Trustee and the Estate Representative in their respective capacity as Liquidating Trustee and the Estate Representative within the scope of this Agreement shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trustee and the Estate Representative to such person in carrying out the

113867_2.DOC                                            7

89

terms of this Agreement, and the Liquidating Trustee and the Estate Representative shall have no personal or individual obligation to satisfy any such liability.

4.9   *Reports and Fees.* The Liquidating Trustee shall provide monthly statements of receipts and disbursements to the Office of the United States Trustee and the Post-Effective Date Committee. The Liquidating Trustee will be responsible for timely payment from the Trust Assets of United States Trustee fees incurred pursuant to 28 U.S.C. § 1930(a)(b) subsequent to the Effective Date of the Plan.

4.10   *Withholding and Reporting Requirements; Tax Treatment of Liquidating Trust.* In connection with all Distributions made pursuant to the Liquidating Trust and all activities of the Liquidating Trust, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions made pursuant to the Plan and the Liquidating Trust will be subject to any such withholding and reporting requirements. The holders of Allowed Class 3 Claims shall be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to 1.671-4(a) of the Income Tax Regulations promulgated pursuant to the United States Internal Revenue Code. The Liquidating Trustee may require any holder of an Allowed Class 3 Claim to furnish to the Liquidating Trustee its, his or her employer or taxpayer identification number ("TIN") as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any Distribution to any such holder upon receipt of such identification number. If a holder of an Allowed Class 3 Claim shall fail to provide the Liquidating Trustee with any requested TIN within 180 days after the request, such failure shall be deemed a waiver of all of such holder's interests in the Liquidating Trust and rights to Distribution under this Plan. Distributions that would have been made to such holder shall be distributed to the other holders of Allowed Class 3 Claims based on their pro rata interests in the Liquidating Trust.

4.11   *Final Decree.* After the Estate is fully administered pursuant to the terms of the Plan and this Agreement, the Liquidating Trustee shall file with the Court a motion requesting the entry of a Final Decree. The Liquidating Trustee shall provide the Post-Effective Date Committee with thirty (30) days notice prior to filing such motion.

4.12   *Liquidating Trustee's and the Estate Representative's Compensation.* It is not anticipated that the Liquidating Trustee or the Estate Representative will need to devote either of their full business time to their duties as such, but rather it is anticipated that the Liquidating Trustee and the Estate Representative can fulfill his or her duties on a part-time basis. The Liquidating Trustee's and the Estate Representative's compensation shall be based upon hourly rates typically charged in the conduct of the Liquidating Trustee's and the Estate Representative's business. If the Liquidating Trustee or the Estate Representative is an attorney, his compensation shall be based on his normal hourly rates in effect at the time services are rendered.

4.13   *Reimbursements.* The Liquidating Trustee, the members of the Post-Effective Date Committee, the Estate Representative and any agents or consultants employed pursuant to this Agreement shall be reimbursed as a priority from the Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

113867_2.DOC                          8

4.14   *Indemnification.*   Pursuant to this Agreement and the Plan, the Liquidating Trustee and the Estate Representative shall be indemnified by, held harmless and receive reimbursement from Trust Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred in compliance with the standard of care set forth in Section 4.7(a). Notwithstanding the above, the Liquidating Trustee and the Estate Representative shall not be entitled to indemnification in the event that a court of competent jurisdiction determines that such person has incurred losses or claims as a result of actions or omissions that breach that standard of care.

4.15   *Reimbursement of Liquidating Trustee's, Estate Representative's and Professionals' Fees and Expenses.*   Without the necessity of application to or approval of the Bankruptcy Court, the Liquidating Trustee, the Estate Representative and any Professionals retained pursuant to this Agreement shall be paid for their services and reimbursed for their expenses subject to the following terms:

(a)   *Statements.*   The Liquidating Trustee and the Estate Representative and each Professional will submit monthly statements describing with reasonable particularity the time expended and the nature, extent and value of the services provided during the period covered by such request to the Liquidating Trustee and the members of the Post-Effective Date Committee, each of whom shall have until the fifteenth (15th) calendar day after the submission of the statement to review it. If none of the recipients objects, as provided in subparagraph (b) below, the Liquidating Trustee shall promptly pay such fees and expenses as requested.

(b)   *Objections to Interim Statements.*   In the event that any of the persons designated in subparagraph (a) above determines that the compensation or reimbursement sought in a particular statement is inappropriate or unreasonable, or that any number or calculation is incorrect, that party shall, on or before the fifteenth (15th) calendar day after the submission of the statement, serve upon (i) the Professional whose statement is objected to, and (ii) the persons designated in subparagraph (a) above, a "Notice of Objection to Monthly Statement" setting forth the precise nature of the objection and the amount in issue. Thereafter, the objecting party and the Professional whose statement is objected to shall meet or confer to attempt to reach an agreement regarding the correct payment to be made, and if no agreement is reached with regard to such objection, then such fees shall be subject to resolution by the Bankruptcy Court. The Liquidating Trustee will promptly pay any portion of the fees and disbursements requested that are not the subject of a Notice of Objection, as well as any adjusted fees and disbursements that have been agreed to by the objecting party and the professional pursuant to the terms herein or upon order by the Bankruptcy Court.

## ARTICLE V

### Distributions.

5.1   *Distributions.*   The Liquidating Trustee shall make an initial distribution to holders of Allowed General Unsecured Claims after: (i) payment or provision for payment of Allowed Administrative Claims, Other Priority Claims and Priority Tax Claims; and (ii)

reservation of the Distribution Reserve and the Distribution Costs Reserve. The Liquidating Trustee shall use good faith efforts to make an initial distribution of substantially all cash on hand (after establishment of appropriate reserves) within thirty (30) days of the later to occur of : (a) the receipt of an initial distribution from the Chapter 11 estates of Divine and its affiliates; and (b) the final amendment of schedules or entry of a final order establishing the final amounts of a majority of claims assigned under the "Pre-paid Order Agreements" or to which parties have subrogated pursuant to the procedures established by the Bankruptcy Court. Furthermore, the Liquidating Trustee shall make subsequent Distributions under the Plan at such times and in such amounts as required thereby and shall make such additional distributions with the oversight of the Post-Effective Date Committee in accordance with the Plan.

5.2    *Legal Proceedings.*  If claims arising under Bankruptcy Code §§ 542, 544, 545, 547, 548, 549, 550, 551 and 553 are asserted, and if such claims or any other legal proceedings are initiated or prosecuted against any creditor pursuant to the Plan and this Agreement or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan, until such proceeding or contested matter is finally resolved and all payments to the Estate or Liquidating Trust required by such resolution have been made, such Creditor shall only receive Distributions under the Plan to the extent that the distributions to which such Creditor is otherwise entitled exceed the maximum liability of such creditor to the Estate asserted in such proceedings.

## ARTICLE VI

### *Appointment, Removal and Resignation of Liquidating Trustee.*

6.1    *Appointment of Liquidating Trustee; Acceptance of Appointment.* _____of _____ is hereby appointed to serve as the initial Liquidating Trustee hereunder and pursuant to the Plan.  _____ is willing to, and does hereby, accept the appointment to serve as the initial Liquidating Trustee, and to hold and administer the Trust Assets pursuant to the terms of the Plan and this Agreement.

6.2    *Removal of Liquidating Trustee.*  A Liquidating Trustee appointed pursuant to this Agreement may be removed (a) with cause by order of the Bankruptcy Court after notice and opportunity for a hearing or (b) without cause upon a two-thirds vote of the members of the Post-Effective Date Committee. For purposes of this Agreement, the term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform his duties under this Agreement; (b) the Liquidating Trustee's misappropriation or embezzlement of any Assets or the proceeds thereof; or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform his duties hereunder.  If a Liquidating Trustee is removed, or is unwilling or unable to serve (1) by virtue of his inability to perform his duties under this Agreement due to death, illness or other physical or mental disability, (2) following the liquidation of all or substantially all of the Assets, or (3) for any other reason whatsoever, such Liquidating Trustee shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

6.3    *Resignation of Liquidating Trustee.*  A Liquidating Trustee may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified

92

by the Court, contemporaneous with the appointment of a successor Liquidating Trustee. If a Liquidating Trustee resigns from his position hereunder, subject to a final accounting and the approval of the Bankruptcy Court, such Liquidating Trustee shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

6.4    *Successor Liquidating Trustee.*    In the event that a Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee shall be appointed by the Post-Effective Date Committee, subject to approval by the Bankruptcy Court.

## ARTICLE VII

### *Effect of Agreement on Third Parties.*

7.1    *Effect of Agreement on Third Parties.*    There is no obligation on the part of any purchaser or purchasers from the Estate, the Debtor or the Liquidating Trustee or any agent of the Liquidating Trustee, or on the part of any other person dealing with the Estate, the Debtor or the Liquidating Trustee or any agent of the Liquidating Trustee, to see to the application of the purchase money or other consideration paid or delivered to the Liquidating Trustee, or any agent of the Liquidating Trustee, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the same upon such terms as the Liquidating Trustee may deem advisable.

## ARTICLE VIII

### *Waiver.*

8.1    *Waiver.*    No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

## ARTICLE IX

### *Termination of the Agreement; Amendment of the Agreement.*

9.1    *Termination of the Agreement.*    This Agreement will terminate only upon authorization of the Bankruptcy Court.

9.2    *Amendment of Agreement.*    Except as otherwise set forth herein, any provisions of the Agreement may, consistent with the terms of the Plan, be amended, modified, terminated, revoked or altered only upon Bankruptcy Court approval.

## ARTICLE X

### *Miscellaneous.*

113867_2.DOC                                      11

93

10.1  *Severability.* If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected. In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable. The effective date of the added provision shall be the date upon which the prior provision was held to be invalid, illegal or unenforceable.

10.2  *Entire Agreement.* This Agreement, the Plan and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement and the Plan, the Plan shall govern. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

10.3  *Jurisdiction; Venue.* Each party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement may be brought in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division), and if for any reason such submission to jurisdiction is invalid, then such action, suit or proceeding may be brought in the courts of the Commonwealth of Massachusetts or of the United States District Court for the District of Massachusetts, and by execution and delivery of this Agreement, each party (i) irrevocably submits to each such jurisdiction and venue; (ii) waives, to the fullest extent permitted by law, any objection which it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum; and (iii) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

10.4  *Waiver of Jury Trial.* Each party to this Agreement hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this agreement or the transactions contemplated hereby.

**IN WITNESS WHEREOF,** the undersigned have caused this instrument to be executed as of the day and year first above written to evidence their consent and agreement with the terms and provisions of this Agreement.

OFFICIAL COMMITTEE OF                    LIQUIDATING TRUSTEE
UNSECURED CREDITORS


_____        _____
_____, Chairman

ESTATE REPRESENTATIVE

13

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>SABINE, INC. (f/k/a<br>    ROWECOM, INC. et al.),<br><br>    Debtors. | Chapter 11<br>Case No. 03-10668-JNF<br>(Substantively Consolidated) |
| In re:<br><br>ENIVID, INC.<br>    (f/k/a DIVINE, INC.) et al.,<br><br>    Debtors. | Chapter 11<br>Case Nos.:    03-11472-JNF and<br>    03-11474-JNF through<br>    03-11478-JNF and<br>    03-12681-JNF through<br>    03-12715-JNF<br>(Substantively Consolidated) |

### STIPULATION REGARDING SETTLEMENT OF ALL CLAIMS BY AND AMONG SABINE, INC. (f/k/a ROWECOM, INC.), THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SABINE, INC. AND SIMILARLY SITUATED SABINE, INC. CREDITORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ENIVID, INC.

This Stipulation and Agreement ("Agreement") is entered into as of this 24th day of August, 2004, by and between Sabine, Inc., f/k/a RoweCom, Inc. and each of its substantively consolidated affiliated Debtors), the Official Committee of Unsecured Creditors of Sabine, Inc. f/k/a RoweCom, Inc., the Official Committee of Unsecured Creditors of Enivid, Inc., f/k/a divine, inc., and the proposed lead plaintiffs in the RoweCom Creditor Class Claim (as defined below).

Capitalized terms not otherwise defined in the body of this Agreement shall have the meanings set forth in Exhibit A. Rules of Construction with respect to defined terms are as set forth in Exhibit A. Terms in **Bold** signify the first usage of a term defined in Exhibit A.

### RECITALS

A.    On January 27, 2003 (the "RoweCom Petition Date"), Sabine, Inc., f/k/a RoweCom, Inc., Dawson, Inc., The Faxon Company, Inc., Turner Subscription Agency, Inc., McGregor Subscription Agency, Inc., Dawson Information Quest, Inc. and Corporate Subscription Services, Inc. (collectively, "RoweCom") each filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court (the "RoweCom Cases"). Pursuant to an Order of the Bankruptcy Court, the RoweCom Cases have been substantively consolidated.

B.    On the RoweCom Petition Date, RoweCom commenced an adversary proceeding in the Bankruptcy Court against Divine, Inc., styled *RoweCom, Inc. v. divine, inc.*, and assigned number 03-1028, seeking, *inter alia*, the recovery of $73.7 million which RoweCom alleged that Divine, Inc. had wrongfully transferred from RoweCom to Divine, Inc. (the "RoweCom Adversary Proceeding").

C.    On February 11, 2003, the Office of the United States Trustee for the District of Massachusetts (the "U.S. Trustee") appointed an official committee of creditors holding unsecured claims for the RoweCom Cases (the "RoweCom Committee").

D.    On February 25, 2003, enivid, inc. f/k/a divine, inc., Open Market, Inc., Enivid Management Services, Inc. f/k/a Divine Management Services, Inc., DR Corporation f/k/a Data Return Corporation, Viant Corporation and eShare Communication, Inc. (the "Initial Divine Debtors") each filed a petition for relief under

Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. On April 2, 2003, Delano Technology Corp., divine technology ventures, iCentral, Inc., Inventions, Inc., divine/Emicom, Inc., SageMaker, Inc., Waypoint Software Corporation, Preceptual Robotics, Inc., divine Global Services, Inc., eprise Corporation, Denali, Inc., Melita Finance, Inc., SMI Holding Corp., Retrieval Technologies, Inc., divine international, Inc., divine software, inc., Opinionware.com, Inc., Melita Intellectual Property, Inc., smallwonders software!, inc., Open Market Securities Corporation, Futuretense Corporation, RWT Corporation, LOTN, Inc., Eprise Securities Corp., SageMaker (Europe), Inc., Global Recall, Inc., databites, inc., divine interVentures, Inc., divine Ireland, Inc., Folio Corporation, Venture Capital Unlimited Acquisition, divine Synchrony Communications, Inc., Softmetric, Inc., Air Divine, Inc., and SM2 Holding Corp. (the "Subsequent Divine Debtors," and with the Initial Divine Debtors, "Divine"), each filed petitions for relief under Chapter 11 with the Bankruptcy Court (the "Divine Cases"). As of the date of this Agreement, the jointly administered Divine Cases have not been substantively consolidated.

E.    On March 7, 2003, the U.S. Trustee appointed an official committee of unsecured creditors for the Divine Cases (the "Divine Committee").

F.    The Bankruptcy Court established May 15, 2003, as the initial deadline for filing certain proofs of claim in the RoweCom Cases against RoweCom and the RoweCom Estates.

G.    On May 15, 2003, Divine filed various proofs of claim against RoweCom and the RoweCom Cases, asserting Claims in excess of $5,581,185 and asserting other legal theories, including recoupment, off set and set off. All Claims, rights, counterclaims, objections, affirmative defenses, offsets, set offs, and all similar claims and/or defenses, that have been or could be asserted by Divine and the Divine Cases against RoweCom and the RoweCom Cases are collectively referred to herein as the "Divine Claims."

H.    The Bankruptcy Court established August 8, 2003, as the initial deadline for filing certain proofs of claim in the Divine Cases against Divine and the Divine Estates.

I.    In addition to the Claims asserted by RoweCom against Divine in the RoweCom Adversary Proceeding, on August 6, 2003, RoweCom filed with the Bankruptcy Court various proofs of claim against Divine in the Divine Cases in the amount of at least $221,344,051.29. All Claims, rights, counterclaims, objections, affirmative defenses, offsets, set offs, and all similar claims and/or defenses, that have been or could be asserted by RoweCom and the RoweCom Cases against Divine in the Divine Cases are collectively referred to herein as the "RoweCom Claims."

J.    On August 8, 2003, certain individual members of the RoweCom Committee (hereinafter, the "RoweCom Lead Plaintiff"), on behalf of all similarly situated creditors whose claims arose from the actions and events occurring between November 6, 2001, and February 25, 2003, as set forth in greater detail in the RoweCom Adversary Proceeding, filed, with the Bankruptcy Court, various proofs of claim against Divine and the Divine Cases asserting Claims in amounts of at least $221,344,051.29. All Claims, rights, counterclaims, objections, affirmative defenses, offsets, set offs, and all similar claims and/or defenses, that have been or could be asserted by the RoweCom Lead Plaintiff against Divine and the Divine Cases are collectively referred to herein as the "RoweCom Creditor Class Claims."

K.    The parties hereto, consisting of (i) RoweCom, (ii) the RoweCom Committee, (iii) the Divine Committee, and the (iv) the RoweCom Lead Plaintiff (collectively, the "Parties") have agreed to settle and compromise all of their respective Claims and disputes on terms set forth herein.

## TERMS AND CONDITIONS

In consideration of these premises and the undertakings of the Parties set forth herein, the adequacy of which is expressly acknowledged, the Parties agree as follows:

1.    Allowed Claim of the RoweCom Liquidating Trust Against the Divine Liquidation Trust. The RoweCom Liquidating Trust shall have an **Allowed Class 3 Claim** under the Divine Plan against the **Divine Liquidation Trust** in the amount of $50,808,071 (the "Base RoweCom Claim"), subject only to the **RoweCom Final Claim Adjustment**, (as adjusted, the "Allowed RoweCom Claim") The holder of the Allowed RoweCom Claim shall receive **Distributions** *pro rata* with holders of other Allowed Class 3 Claims (and shall be a

member of such class) pursuant to the terms and provisions of the **Divine Plan** and the Divine Liquidation Trust, except with respect to distribution of any **Net D&O Insurance Recoveries** actually recovered, received and paid to the Divine Liquidation Trust as provided in Paragraph 3(b) of this Agreement. The Allowed RoweCom Claim and the rights provided in this Agreement to the RoweCom Liquidating Trust shall be in full and final satisfaction of any and all **Settled RoweCom Claims**, including without limitation the RoweCom Claims, the RoweCom Creditor Class Claims, and any and all Claims held by any **Entity** against Divine arising from or based in any material way upon the facts and circumstances giving rise to any of the RoweCom Claims or RoweCom Creditor Class Claims. No Entity (other than the RoweCom Liquidating Trust, and its successors and assigns, solely with respect to the Allowed RoweCom Claim and to enforce the terms of this Agreement and for no other basis) shall have any Claim against the Divine Liquidation Trust, the Divine Cases or the Divine Estates or under the Divine Plan arising from or based in any material way directly or indirectly on any Settled RoweCom Claims; and any proof of claim filed against Divine or the Divine Estates in the Divine Cases by any Entity other than RoweCom shall be disallowed to the extent arising from or based in any material way directly or indirectly on any Settled RoweCom Claims. The terms and consideration provided for in this Agreement shall be in full and final satisfaction of any and all Settled RoweCom Claims and any and all Claims held by any Entity arising from or based in any material way upon the facts and circumstances giving rise to the Settled RoweCom Claims.

2.     Compromise of the Divine Claims. Divine and the Divine Liquidation Trust shall have no Claim against RoweCom or the RoweCom Cases, and the Divine Claims shall be disallowed. Further, Divine and the Divine Liquidation Trust shall have no Claim relating to or right, title or interest in or to the **Publisher Escrow Funds**, which shall be paid to the **RoweCom Liquidating Trust** upon the **Effective Date**. No Entity shall have any Claim against RoweCom or the RoweCom Cases arising from or based on the **Settled Divine Claims**, and any proof of claim filed in the RoweCom Cases shall be disallowed to the extent based on or arising from the Settled Divine Claims. The terms and consideration provided for in this Agreement shall be in full and final satisfaction of any and all Settled Divine Claims and any and all Claims held by any Entity against RoweCom arising from or based in any material way upon the facts and circumstances giving rise to the Settled Divine Claims.

3.     Effectuating Provisions:

(a)     Reserves and Holdbacks. Any interim Distribution pursuant to the Divine Plan on account of the Allowed RoweCom Claim and calculated on an interim basis on the Base RoweCom Claim shall be subject to the **Adjustment Holdback**, which amount shall be held back from any such interim Distribution and deposited in a segregated account by the **Divine Liquidation Trust Representative**. Further, the Divine Liquidation Trust Representative shall reserve in the same segregated account an amount equal to the **RoweCom Claim Adjustment Reserve** at the time of any interim Distribution under the Divine Plan. Immediately prior to the **Final Distribution Date**, the RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall agree on the calculation of the RoweCom Final Claim Adjustment, and Divine shall distribute the **Adjusted Final Distribution** to the holder of the Allowed RoweCom Claim for administration in accordance with the **RoweCom Plan**. If the RoweCom Plan Trustee and the Divine Liquidation Trust Representative are unable to agree on the calculation of the RoweCom Final Claim Adjustment or Adjusted Final Distribution, either of them may submit any such dispute for determination by the Bankruptcy Court. The RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall maintain and present to each other the data from which to determine the RoweCom Final Claim Adjustment in the form attached hereto as Exhibit B.

(b)     Proceeds from D&O Claims. On the Effective Dates of the Divine Plan and the RoweCom Plan, the RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall jointly establish and maintain the **D&O Recoveries Escrow**. All Net D&O Recoveries shall be accounted for by the RoweCom Plan Trustee and the Divine Liquidation Trust Representative and deposited in the D&O Recoveries Escrow. If the RoweCom Plan Trustee and the Divine Liquidation Trust Representative are unable to agree on the calculation of the amount of Net D&O Recoveries or any other matter with respect to payment of Net D&O Recoveries or the administration of the D&O Recoveries Escrow, either may submit any such dispute for determination by the Bankruptcy Court. At such times as they may jointly determine in their discretion, the RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall deliver all or a portion of the Net D&O Insurance Recoveries fifty percent (50%) to the RoweCom Liquidating Trust to be administered in accordance with the RoweCom Plan, and fifty percent (50%) to the Divine Liquidation Trust to be administered in accordance with the Divine Plan; provided, however that the holder of the Allowed RoweCom Claim shall receive no Distribution on account of such claim under the Divine Plan of Net D&O Insurance Recoveries delivered to the Divine

Liquidation Trust. At such times as they may jointly determine in their discretion, the RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall deliver all Net Excess Recoveries to the Divine Liquidation Trust to be administered in accordance with the Divine Plan (and the holder of the Allowed RoweCom Claim shall receive Distributions on account of such claim under the Divine Plan of Net Excess Recoveries delivered to the Divine Liquidation Trust *pro rata* with holders of other Allowed Class 3 Claims). The RoweCom Plan Trustee and the Divine Liquidation Trust Representative shall deliver all Net D&O Recoveries to the respective parties as provided herein prior to the Final Distribution Date.

(c)     RoweCom Participation on the Divine Committee. The RoweCom Plan Trustee or his or her designee shall be a full voting member of and have one seat on the post-Effective Date Divine Committee appointed under the Divine Plan, and the By-Laws of the Divine Committee shall be amended to so provide. The members of any post-Effective Date RoweCom Committee and their advisors shall be permitted to participate in (but not vote unless they have been designated to be a member of the Divine Committee) all meetings and communications of the post-Effective Date Divine Committee, except for meetings or portions thereof, that address issues as between Divine and RoweCom and disputes concerning Distributions pursuant to this Agreement.

(d)     Mutual Effective Dates of Plans. The Effective Date of the Divine Plan shall not be deemed to have occurred unless and until the Effective Date under the RoweCom Plan shall have occurred; and the Effective Date of the RoweCom Plan shall not be deemed to have occurred unless and until the Effective Date under the Divine Plan shall have occurred. Both the Divine Plan and the RoweCom Plan shall be modified, if necessary, to implement this provision.

4.     Conditions to Effectiveness. This Agreement shall be effective only upon satisfaction of the following conditions:

(a)     Entry of Orders of the Bankruptcy Court confirming both the RoweCom Plan and the Divine Plan in the form filed concurrently herewith or as may be amended in a manner acceptable to all Parties in conformity with this Agreement.

(b)     The Effective Date of both the Divine Plan and the RoweCom Plan shall have occurred.

(c)     The Bankruptcy Court shall have entered an Order or Orders (either as part of the Orders confirming the Divine Plan and the RoweCom Plan, or otherwise) approving this Agreement and giving effect to each of its terms, including without limitation the provisions barring the assertion of any Settled RoweCom Claims or Settled Divine Claims by any Entity.

5.     Miscellaneous:

(a)     Entire Agreement. This Agreement represents the entire understanding and agreement of the Parties with respect to the subject matter hereof and supersedes all other negotiations, understandings and representations (if any) made by and among such Parties.

(b)     Amendments. The provisions of this Agreement may not be amended, supplemented, waived or changed except by a writing signed by all of the Parties.

(c)     Binding Effect. This Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the Parties and their respective legal representatives, successors and assigns, including without limitation pursuant to the RoweCom Plan and the Divine Plan.

(d)     Counterparts. This Agreement may be executed in one or more counterparts and delivered as an original or by facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(e)     GOVERNING LAWS AND JURISDICTION.    THIS AGREEMENT AND ALL TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE UNITED STATES OF AMERICA AND, TO THE EXTENT APPLICABLE, THE COMMONWEALTH OF MASSACHUSETTS. The Parties agree that any suit or other action for the enforcement of this Agreement shall be brought in the Bankruptcy Court, if either the Divine Cases or the RoweCom Cases are then open, and in any State or Federal Court sitting in Massachusetts, if neither the Divine Cases nor the RoweCom Cases are open. The Parties hereto hereby waive any objection that

they may now or hereafter have to the venue of any such suit or any such Court or based on such suit having been brought in an inconvenient forum.

(f)    No Admission; Effect of Settlement etc.    This Agreement shall not constitute an admission of liability or fault on the part of either Divine or RoweCom and is entered into by the Divine Committee and the RoweCom Committee and the proposed lead plaintiffs in the RoweCom Creditor Class Claim for the purpose of compromising disputed Claims and avoiding the expenses and risks of litigation. Nothing in this Agreement nor in the recitation of the asserted facts and arguments concerning the underlying basis for this Agreement, is intended to, diminish, impair, constitute an election of remedy, waive or affect in any fashion whatsoever any Claims, any Causes of Action, any D&O Claims or any of the Examiner's Rights (each such term as defined in the Divine Plan), or any D&O Claims (as defined in the RoweCom Plan) arising out of the Divine Settled Claims and/or the RoweCom Settled Claims. Nothing contained in this Agreement shall be deemed to alter, amend, modify or impair the rights and obligations of any party existing under the D&O Policies (as defined in the Divine Plan). Without limiting the generality of the foregoing, the entry of a confirmation order shall not diminish or impair the enforceability of the D&O Policies.

To the extent that any third party later asserts, by way of affirmative defense or otherwise, that any amount sought or awarded as a judgment in any Claim or Cause of Action against such third party should be reduced as a result of this Agreement or the Order of the Bankruptcy Court approving this Agreement, such amount sought or awarded as a judgment against such third party may be reduced, if at all, only in an amount not to exceed the actual dividend paid to the RoweCom Liquidating Trust by the Divine Liquidation Trust in accordance with this Agreement and the Divine Plan on account of the Allowed RoweCom Claim. Nothing in this Agreement or in the Order of the Bankruptcy Court approving this Agreement shall impose any obligation upon RoweCom to receive payment of all or part of any distribution on account of the Allowed RoweCom Claim from the Divine Liquidation Trust before asserting any Claims or Causes of Actions against any third party or recovering any money in connection with any such Claims or Causes of Action against third party.

Nothing contained in this Agreement shall be construed to disallow or adversely affect any proof of claim (or any objection, defense, counterclaim, or right of setoff relating thereto possessed or that may be possessed by Divine, RoweCom, the Divine Committee, the RoweCom Committee, either Examiner (as defined in the RoweCom Plan and Divine Plan), the RoweCom Plan Trustee, the RoweCom Liquidating Trust, the Divine Liquidation Trust, and/or the Divine Liquidation Trust Representative) timely filed by any current or former director or officer of either RoweCom or Divine in any of the Divine Cases or the RoweCom Cases. For purposes of this paragraph the term "timely filed" shall include late filed proofs of claim deemed by Final Order of the Bankruptcy Court to be timely filed.

(g)    Recoveries From Avoidance Actions.    Notwithstanding anything to the contrary set forth in this Agreement, the Divine Estates and/or the Divine Liquidation Trust reserve the right to pursue any and all claims, actions and causes of action for transfers made by Divine between the period of November 27, 2002, and February 25, 2003 (the "Relevant Period"), including, arising under Sections 544, 545, 547, 548, 550, or 552 of the Bankruptcy Code ("Avoidance Actions") against the RoweCom Trade Vendors; provided, however, that the Divine Estates and/or the Divine Liquidation Trust hereby agree that, strictly as part of the settlement embodied in this Agreement and not to be used by the transferees of the transfers sought to be avoided by way of defense or otherwise, the Divine Liquidating Trust and the Divine Estates shall not commence any avoidance actions against any Rowecom Trade Vendors to recover any "transfers" by divine in payment of amounts owed by Rowecom to any such Rowecom Trade Vendors to the extent such transfer occurred prior to the relevant period and that any transferees of transfers occurring within the relevant period that are avoided and recovered shall have the right to file a proof of claim asserting a general unsecured claim in the Divine Cases in the amount and to the extent of the transfer(s) so avoided and returned to Divine or the Divine Liquidation Trust, as appropriate, within 30 days of the date such amounts are received by Divine or the Divine Liquidation Trust.


Dated:        , 2004


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ENVID, INC., et al. f/k/a
DIVINE, INC. et al.

By one of its Attorneys,


_____
Michael D. Warner  (TX Bar No. 00792304)
WARNER STEVENS, L.L.P.
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX  76102
Telephone:    (817) 810-5250
Facsimile:    (817) 810-5255


ROWECOM CREDITOR CLASS CLAIMANTS



By: _____
       A duly authorized proposed lead Plaintiff


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SABINE, INC., et al. f/k/a
ROWECOM, INC., et al.

By its Attorneys,


_____
Christopher J. Panos (BBO#555273)
CRAIG AND MACAULEY, PC
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Telephone:  (617) 367-9500
Facsimile:  (617) 742-1788


SABINE, INC., f/k/a ROWECOM, INC., and
All Substantively Consolidated Debtors

By one of their Attorneys,


_____
Stephen E. Garcia (BBO# 6196573 IL Bar)
KAYE SCHOLER LLC
Three First National Plaza, Suite 4100
Chicago, IL  60602
Telephone:  (312) 583-2340
Facsimile:  (312) 583-2360

**101**

# EXHIBIT "A"

## TO

## STIPULATION REGARDING
## DIVINE-ROWECOM SETTLEMENT AGREEMENT

## DEFINED TERMS

**"Adjusted Final Distribution"** shall mean (i) the amount required to be distributed to the holder of the Allowed RoweCom Claim from amounts segregated by Divine on account of the Adjustment Holdback and RoweCom Claim Adjustment Reserve to "true up" any interim Distributions made to the holder of the Allowed RoweCom Claim to the appropriate amount that should have been paid based on the Allowed RoweCom Claim after the RoweCom Final Claim Adjustment, plus (ii) the amount of the Final Distribution (as defined in the Divine Plan) under the Divine Plan due to the holder of the Allowed RoweCom Claim based on the Allowed RoweCom Claim, as adjusted by the RoweCom Final Claim Adjustment.

**"Adjustment Holdback"** shall mean an amount equal to the amount that any interim Distribution to the holder of the Allowed RoweCom Claim would be reduced if the amount of the Base RoweCom Claim was reduced by 20%.

**"Allowed Class 3 Claim"** shall have the meaning given to such term in the Divine Plan.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Massachusetts having jurisdiction over the RoweCom Cases and the Divine Cases or such other Court as may have jurisdiction over such cases at any time. In the event that both the Divine Cases and the RoweCom Cases have been closed, where the context permits, this term shall mean any state or federal court sitting in the Commonwealth of Massachusetts.

**"Claim"** shall have the meaning given in 11 U.S.C. § 101(5).

**"D&O Recoveries Escrow"** shall mean a joint account established by the RoweCom Plan Trustee and the Divine Liquidation Trust Representative requiring the signature of both of those parties, jointly, to pay, use, transfer or withdraw any funds deposited therein.

**"Distribution"** shall have the meaning given to such term in the Divine Plan.

**"Dividend Factor"** shall mean the result of dividing Net Cash Available for Distribution by Divine plus Net Cash Available for Distribution by RoweCom by Total Allowed Divine General Unsecured Claims plus Total Allowed RoweCom General Unsecured Claims [(DNCAD + RNCAD) ÷ (DAGUC + RAGUC)].

**"Divine Liquidation Trust"** shall mean the Liquidating Trust established pursuant to the Divine Plan.

**"Divine Liquidation Trust Representative"** shall have the meaning given to the term "Liquidating Trust Representative" in the Divine Plan.

**"Divine Plan"** shall mean the Plan of Liquidation for the Divine Cases, as such Plan is confirmed by the Bankruptcy Court and the terms thereof existing as of the Effective Date.

**"Effective Date"** shall have the meaning given to such terms in the Divine Plan and the RoweCom Plan, as applicable.

**"Entity"** shall have the meaning given in 11 U.S.C. § 101(15).

**"Estate"** shall mean the bankruptcy estates of RoweCom and/or Divine, as the context requires, created under 11 U.S.C. § 541(a) or, where the context requires, the post Effective Date interests of the creditors of RoweCom and Divine pursuant to the RoweCom Plan and the Divine Plan, respectively.

**"Expenses"** shall mean any and all reasonable and actually incurred and paid out of pocket expenses including, but not limited to professional fees and expenses, expert fees, court costs, transcript costs, witness expenses, and similar expenses.

**"Final Distribution Date"** shall have the meaning given to such term in the Divine Plan.

**"Final RoweCom Claim Calculation"** shall mean an amount equal to the Net Cash Available for Distribution by Divine divided by the Dividend Factor, less the amount of Total Allowed Divine General Unsecured Claims [(DNCAD ÷ DF) − DAGUC].

**"Net Cash Available for Distribution by Divine"** shall mean all cash distributed and available for final distribution to Allowed Class 3 Claims under the Divine Plan, exclusive of any amounts paid to Divine on account of Net D&O Recoveries, but including without limitation all cash on hand as of the Effective Date and cash received after the Effective Date from any source, less all amounts paid or to be paid to holders of

administrative, secured or priority claims and all expenses of administration after the Effective Date (exclusive of Expenses paid and deducted to determine Net D&O Insurance Recoveries and/or Net Excess Recoveries).

"**Net Cash Available for Distribution by RoweCom**" shall mean all cash distributed and available for final distribution to Allowed Class 3 (General Unsecured) Claims as defined in the RoweCom Plan, exclusive of any amounts paid to RoweCom or the RoweCom Plan Trustee on account of Net D&O Recoveries and exclusive of any amounts paid to RoweCom or the RoweCom Plan Trustee on account of the Allowed RoweCom Claim, but including without limitation all cash on hand as of the Effective Date and cash received after the Effective Date from any source, less all amounts paid or to be paid to holders of administrative, secured or priority claims and all expenses of administration after the Effective Date (exclusive of Expenses paid and deducted to determine Net D&O Insurance Recoveries and/or Net Excess Recoveries).

"**Net D&O Insurance Recoveries**" shall mean any and all recoveries from any director, officer or any other entity from proceeds of any and all policies of insurance procured by or for the benefit of RoweCom or Divine (and proceeds of Claims arising from the procurement of such policies) net of the Expenses incurred after the Effective Date by Divine, RoweCom, the RoweCom Committee, the Divine Committee, the Divine Examiner, the RoweCom Plan Trustee, and any post-Effective Date Litigation Trustee, Examiner or other Entity that may be compensated or reimbursed by either Estate in pursuing the Claims giving rise to such recoveries.

"**Net D&O Recoveries**" shall mean the aggregate of the Net D&O Insurance Recoveries and the Net Excess Recoveries.

"**Net Excess Recoveries**" shall mean any and all recoveries from any director or officer of RoweCom or Divine, that are not recoveries from nor proceeds of insurance, net of the Expenses incurred after the Effective Date by Divine, RoweCom, the RoweCom Committee, the Divine Committee, , the RoweCom Plan Trustee, the RoweCom Liquidating Trust, Divine Liquidation Trust Representative, Divine Liquidation Trust and any post-Effective Date Litigation Trustee, or other Entity that may be compensated or reimbursed by either Estate in pursuing the Claims giving rise to such recoveries.

"**Publisher Escrow Funds**" shall mean all funds delivered to LaSalle Bank National Association pursuant to Escrow Agreements by and among Divine, LaSalle and the University of Oklahoma, Smith College, Northeastern University, Beloit College, University of Wisconsin – Whitewater Anderson Library, and the Tufts University Library.

"**RoweCom Claim Adjustment Reserve**" shall mean an amount equal to the amount that any interim distribution to the holder of the Allowed RoweCom Claim would be increased if the amount of the Base RoweCom Claim was increased by 20%.

"**RoweCom Final Claim Adjustment**" shall mean the amount of the upward or downward adjustment of the Base RoweCom Claim, equal to the difference between the Base RoweCom Claim and the Final RoweCom Claim Calculation, which adjustment amount, either up or down, shall not to exceed $10,161,614[20% of the Base RoweCom Claim].

"**RoweCom Liquidating Trust**" shall mean the Liquidating Trust established pursuant to the RoweCom Plan.

"**RoweCom Plan**" shall mean the Plan of Liquidation for the RoweCom Cases, as such Plan is confirmed by the Bankruptcy Court and the terms thereof existing as of the Effective Date.

"**RoweCom Trade Vendors**" shall mean entities that provided goods and/or services (including content services) to RoweCom or its customers at the direction of RoweCom but does not include (1) financial institutions that provided loans or financial accommodations to RoweCom; or (2) "insiders" of RoweCom as such term is defined in Section 101 of the Bankruptcy Code; or (3) any present or former director or officer of either RoweCom or Divine.

"**RoweCom Plan Trustee**" shall mean the Trustee of the Liquidating Trust established pursuant to the RoweCom Plan.

"**Settled Divine Claims**" shall mean any and all Claims against RoweCom possessed by any Entity arising from or based in any material way upon the same facts and circumstances giving rise to the Divine Claims, including without limitation the Claim held by Divine pursuant to that certain Order of the Bankruptcy Court entered in

both the Divine Cases and the RoweCom Cases, dated June 3, 2003, and entitled Order Recharacterizing Intercompany Debt owed by RoweCom (Spain) to Divine, Inc., as Capital Contribution by Divine, Inc.

**"Settled RoweCom Claims"** shall mean any and all Claims possessed by any Entity against Divine arising from or based in any material way upon the same facts and circumstances giving rise to the RoweCom Claims and RoweCom Creditor Class Claims.

**"Total Allowed Divine General Unsecured Claims"** shall mean the final total amount of Allowed Class 3 Claims under the Divine Plan, exclusive of the Allowed RoweCom Claim.

**"Total Allowed RoweCom General Unsecured Claims"** shall mean the final total amount of Allowed Class 3 (General Unsecured) Claims as defined in the RoweCom Plan.

## RULES OF CONSTRUCTION OF CERTAIN TERMS

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Agreement as a whole and not to any particular section, subsection, or clause contained in the Agreement.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

Any reference in the Agreement to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or supplemented.

Captions and headings in the Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Agreement.

The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

When the term "Divine" is used herein, the same shall include, when the contents warrants or requires, its respective Estates, successors and assigns, the reorganized debtors as established and contemplated under the Divine Plan, and any Estate Representative, including the Divine Liquidation Trust and the Divine Liquidation Trust Representative.

When the term "RoweCom" is used herein, the same shall include, when the contents warrants or requires, its respective Estates, successors and assigns, the RoweCom Plan Trustee as established and contemplated under the RoweCom Plan, and any Estate Representative.

When the term "Divine Committee" is used herein, the same shall include, when the contents warrants or requires, the post-Effective Date Divine Committee, or its designees or assignees.

When the term "RoweCom Committee" is used herein, the same shall include, when the contents warrants or requires, the post-Effective Date RoweCom Committee.

**EXHIBIT "B"**

**TO**

**STIPULATION REGARDING
DIVINE-ROWECOM SETTLEMENT AGREEMENT**

# Exhibit B

|  | DIVINE | ROWECOM |
|---|---|---|
| Cash on hand as of 6/30/04 | | |
| Cash Receipts from 6/30/04 to 9/30/04 | | |
| Cash Receipts on or after 9/30/04 | | |
| Total Cash Proceeds | | |

**CLAIMS- 100% Payment Requirement:**

| | DIVINE | ROWECOM |
|---|---|---|
| - Secured Claims | | |
| - Prof. Fees & Exp. thru 9/30/04 | | |
| - Priority Claims to be Paid Under Plan (Taxes, Employees) | | |
| - KERP Payments | | |
| - Other Admin Claims to the 9/30/04 | | |
| - Admin Exp including Prof. Fees after 9/30/04 | | |
| -Total Required 100% payments: | | |

**NET AVAILABLE FOR DISTRIBUTION TO GENERAL UNSECURED CREDITORS:**

**General Unsecured Claims:**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS - BOSTON

```
===============================
```
IN THE MATTER OF:                       . Case #03-10668
                                        . Boston, Massachusetts
        SABINE, INC.                    . **November 23, 2004**
                                        .
                        Debtor          . 12:31:49 p.m. O'clock
```
===============================
```

### TRANSCRIPT OF HEARING ON:
### (#1502, #1571, #1573)
### DEBTOR'S MOTION FOR SUMMARY JUDGMENT REGARDING THE PROOF OF
### CLAIM OF RITA SUD; OBJECTION BY RITA SUD; REPLY BY DEBTOR
### BY THE HONORABLE JOAN N. FEENEY, J.U.S.B.C.

**APPEARANCES:**

For Rita Sud:                        MARTHA M. WISHART, ESQ.
                                     McKenzie & Associates
                                     44 School Street,  Suite 1100
                                     Boston, MA  02108


For the Debtor:                      MINDY COHN, ESQ.
                                     Kaye Scholer, LLC
                                     Three First National Plaza, Suite 4100
                                     70 W. Madison Street
                                     Chicago, IL  60602



Electronic Sound Recording Operator:    Kaida M. Patterson

Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Federally Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
### 210 Bayberry Avenue
### Egg Harbor Township, NJ  08234-5901
### 1-609-927-0299      FAX 1-609-927-6420      1-800-471-0299
### e-mail - irwingloria@comcast.net

1  (At Tape #2, Index #0020.  12:31:49 p.m.)

2          CLERK:  Court.

3          THE COURT:  Good afternoon.  Please be seated.

4          THE CLERK:  This the debtor's motion for summary

5  judgment regarding the proof of claim of Rita Sud.  We have an

6  objection by Rita Sud and a reply by the debtor. Please state

7  your name for the record.

8          MS. COHN:  Good afternoon, Your Honor.  Mindy Cohn on

9  behalf of the debtor.

10         MS. WISHART:  Martha Wishart on behalf of Rita Sud,

11 Your Honor.

12         THE COURT:  Good afternoon.  This is the debtor's

13 motion for summary judgment with respect to the proof of claim

14 filed by Rita Sud.

15         MS. COHN:  Correct, Your Honor.

16         THE COURT:  I've had an opportunity to review the

17 motion and the objection.  I'd be glad to hear from the parties

18 on any response to each other's pleadings or any additional

19 arguments you wish to make.

20         MS. COHN:  Okay.  All of my references to the sworn

21 depositions are in my brief.  Ms. Sud filed a proof of claim

22 against the debtor in the amount of $150,000, asserting that

23 the debtor terminated Ms. Sud in violation of Massachusetts

24 General Law, Chapter 151(b) on account of her race and gender.

25         Ms. Sud attached to her proof of claim a void

1  complaint that she had filed in State Court as support for her

2  allegations.    Ms. Sud is requesting that the debtor pay back

3  pay, front pay, compensatory damages, emotional distress

4  damages, and attorneys' fees.

5       The debtor filed a motion for summary judgment on

6  October 5th, asserting that there was no issue as to any

7  material fact, that Ms. Sud failed to produce any credible

8  evidence in support of her claim, and that Ms. Sud's claim

9  should be disallowed as a matter of law.

10      The debtor and Ms. Sud agree on the material facts.

11 They agree that Ms. Sud was hired in June 2000, received a

12 promotion and a raise on September 11th, 2000, and another

13 raise on April 23rd, 2001.  They also agree that Ms. Sud was

14 the only non-management level employee who performed treasury

15 functions at RoweCom.   They agree that Ms. Sud worked in

16 RoweCom's Finance Department and that RoweCom separated

17 approximately 85 per cent of the Finance Department during the

18 period from August 2001 through February of 2002.  They also

19 agree that as a result of RoweCom's merger with divine in fall

20 of 2001, RoweCom ceased to perform any treasury functions.

21      They agree that Ms. Sud did not get along with her

22 co-workers and that Mr. Smith, Ms. Sud's direct supervisor,

23 told Ms. Sud that she acted overly aggressive with her co-

24 workers and bank representatives.

25      The parties also agree that Mr. Smith gave Ms. Sud

1  very little work to do on the merger, and that Mr. Smith took

2  away one of Ms. Sud's projects and gave it to a Caucasian

3  employee.

4       Finally, the parties agree that Ms. Sud was

5  terminated on August 22nd, 2001, and that RoweCom told her that

6  the reason for her separation was consolidation and company

7  reorganization.

8       As a result, no material facts in this case are in

9  dispute.  The only issue is whether these facts are legally

10  sufficient to establish whether, to establish that Ms. Sud was

11  terminated on account of her race or gender.  The debtor

12  believes they are not.

13       Now it is Ms. Sud's burden to show, through materials

14  of evidentiary quality, that a factual dispute exists, and that

15  she can establish a claim for employment discrimination.

16       Because Ms. Sud has not offered direct proof of

17  discrimination in order to defeat the debtor's motion, Ms. Sud

18  must produce credible evidence that she was the victim of

19  intentional discrimination under the **McDonnell-Douglas**

20  framework, and that's **McDonnell-Douglas Corp. v. Green**.  The

21  **McDonnell-Douglas** framework includes three stages.

22       First, Ms. Sud has the burden of establishing a *prima*

23  *facie* case. If Ms. Sud is able to establish a *prima facie* case

24  of discrimination, then the burden shifts to the debtor to

25  assert that it had a legitimate non-discriminatory reason for

1  terminating her.  Once the debtor articulates a non-

2  discriminatory reason for Ms. Sud's termination, the burden

3  then shifts back to Ms. Sud to produce evidence that the

4  debtor's articulated reason for the termination was actually a

5  pretext for discrimination.

6      Under **McDonnell-Douglas,** Ms. Sud maintains the

7  ultimate burden of proving that an adverse employment decision

8  was made because of her national origin or her gender.

9      In order to establish a *prima facie* case, Ms. Sud

10  must produce credible evidence that first, she was a member of

11  a protected class, which the debtor does not dispute.  Second,

12  that she met the debtor's legitimate job performance

13  expectations.  The debtor does not dispute that.  And third,

14  that she was laid off.  The debtor agrees with that.  And

15  fourth, that RoweCom either did not treat race or sex neutrally

16  in making its decision to terminate her, or retained persons

17  not within the protected classes to replace Ms. Sud as

18  RoweCom's treasury manager.

19      Ms. Sud cannot establish her *prima facie* case because

20  she cannot produce evidence of the fourth element of the

21  standard, namely that she was treated any differently than her

22  similarly situated male or non-Indian coworkers, or that after

23  she was terminated, RoweCom hired a man or a non-Indian

24  employee to take her place as RoweCom's treasury manager.

25      First, Ms. Sud can't establish that she was treated

1 differently than similarly situated employees.  An employee who
2 was similarly situated to Ms. Sud would be another non-
3 management level employee who performed treasury functions.
4 Ms.  Sud can't meet this burden.  There is no dispute that she
5 was the only non-management level employee in the Finance
6 Department who performed treasury function.  In fact, this
7 difference explains why she was terminated in the early stage
8 of the reduction in force process.

9          By Ms. Sud's own admission at deposition, RoweCom
10 eliminated its treasury functions during the summer of 2001.
11 By August of 2001, RoweCom no longer performed its own treasury
12 functions and it determined that it no longer had a need for a
13 treasury manager.  As a result, Ms. Sud's position was
14 eliminated.  Therefore, Ms. Sud cannot establish that she was
15 similarly situated to any of her co-workers.

16          It is also undisputed that Ms. Sud was not replaced
17 by anyone in a non-protected class because there is
18 uncontroverted evidence that Ms. Sud was not replaced by
19 anyone.  Ms. Sud admitted at her deposition that as of February
20 2002, there was no employee left at RoweCom who performed
21 treasury function.

22          In an effort to prove her fourth prong of her *prima*
23 *facie* case, Ms. Sud alleges that three Caucasian employees
24 assumed her job responsibilities after she was terminated.
25 First, this allegation is not relevant in a reduction in force

1  case. Courts have acknowledged that in a reduction in force

2  situation, it is expected that an employer will consolidate

3  positions and shift responsibilities to other employees in an

4  effort to reorganizes its work force and reduce costs.  Even if

5  this contention were relevant, Ms. Sud has not produced any

6  evidence to support it.  At her deposition, she admitted that

7  she did not know who, if anyone, assumed her job

8  responsibilities after she left.

9         Because Ms. Sud cannot establish a *prima facie* case,

10 the debtor believes that the analysis is complete and that

11 judgment should be entered in factor of the debtor.  However,

12 if the Court decides that Ms. Sud has established a *prima facie*

13 case, it is necessary to go to the second stage of the

14 **McDonnell-Douglas** analysis.

15        Under **McDonnell-Douglas** framework, if Ms. Sud

16 establishes a *prima facie* case, the burden then shifts to the

17 debtor to articulate a non-discriminatory legitimate

18 justification for Ms. Sud's termination.  The debtor has met

19 this burden by producing uncontroverted evidence that Ms. Sud's

20 termination was part of a legitimate reduction in force.  It is

21 undisputed that RoweCom terminated 22 out of 27 employees or

22 approximately 85 per cent of its Finance Department between

23 August of 2001 and February of 2002.

24        Ms. Sud does not dispute the accuracy of these

25 numbers.  Instead, she disputes the legal conclusion that this

1 reduction constitutes a true reduction in force. She argues
2 that this reduction in force was not a true reduction in force
3 because she was the only Finance Department employee terminated
4 on August 22nd, 2001.

5         The debtor does not dispute the fact that Ms. Sud was
6 the only finance employee terminated on that date. However,
7 the debtor disputes Ms. Sud's legal conclusion that this fact
8 precludes a determination that the debtor legitimately reduced
9 its force. Therefore, there is no factual issue. This is
10 solely a legal issue and therefore, summary judgment is
11 appropriate.

12        Because the debtor has articulated a legitimate non-
13 discriminatory reason for Ms. Sud's termination, we move to the
14 third stage of the analysis. In the third stage of the
15 **McDonnell-Douglas** analysis, the burden shifts back to Ms. Sud
16 to produce credible evidence that RoweCom's articulated reason
17 for her termination is really a pretext for discrimination.
18 Again, the debtor and Ms. Sud agree on the material facts. The
19 issue is whether the facts are sufficient to establish that Ms.
20 Sud was terminated because of her race or her gender. The
21 debtor believes they are not.

22        First, Ms. Sud and the debtor agree that she did not
23 get along with her co-workers. However, Ms. Sud concludes that
24 the reason they did not get along was because her co-workers
25 and her boss, Mr. Smith, discriminated against her on account

1 of her Indian descent.  In support of her theory, Ms. Sud

2 testified at her deposition that Mr. Smith, while standing near

3 her office, said that he did not like Indian food.  In further

4 support of her position, Ms. Sud testified that a co-worker,

5 who had no decision-making authority whatsoever, said that

6 isn't it funny or ridiculous that Hindus worship cows.

7           To be honest, the debtor does not know whether or not

8 these statements were made.  But even if they were actually

9 made, they don't establish pretext.  First, Mr. Smith's

10 statement that he does not like Indian food is hardly

11 discriminatory.  It relates to food, not people.  With respect

12 to her co-worker's statement about Hinduism, the Supreme Court

13 has held that stray comments and hostility by non-decision

14 makers or co-workers do not establish discrimination.  Whether

15 these comments are sufficient to establish pretext is a legal

16 question that should be determined on summary judgment.

17           Ms. Sud also alleges that Mr. Smith discriminated

18 against her because of her gender.  In her deposition, and in

19 the opposition to the debtor's motion, Ms. Sud asserts that Mr.

20 Smith told her she was too aggressive or overly aggressive.

21 Again, the debtor does not dispute that Mr. Smith made this

22 comment.  Mr. Smith testified at his deposition that Ms. Sud

23 *was* overly aggressive and had difficulty working in a team

24 environment.  He further testified that he spoke to her about

25 it in an effort to help her get along better with her co-

1  workers. In addition, Ms. Sud has admitted at her deposition

2  that she has a history of being too aggressive with her

3  coworkers at previous jobs.

4          Therefore, there is no issue of fact.   The only

5  issue is whether Mr. Smith's statement is sufficient to

6  establish gender discrimination.   Therefore, summary judgment

7  is also appropriate on this issue.

8          Ms. Sud further alleges that the fact that Mr. Smith

9  did not assign her any work to do on the divine merger is proof

10  that Mr. Smith discriminated against her.   The debtor agrees

11  with Ms. Sud that Mr. Smith gave her very little, if any, work

12  to do on the merger.   However, the debtor again disagrees with

13  Ms. Sud's legal conclusion, that is that Mr. Smith, that Mr.

14  Smith's conduct is sufficient to establish pretext.

15          Ms. Sud's legal conclusion is belied by her own

16  deposition testimony.   She admitted in her deposition that

17  there was no specific treasury project that she believed she

18  should have been assigned to do with respect to the merger.

19  Furthermore, Mr. Smith testified that there was no treasury

20  related work to do with respect to the merger.   Therefore, the

21  issue is not whether Ms. Sud received work to do in the merger.

22  The issue is whether this fact is sufficient to establish

23  pretext.

24          Next, Ms. Sud alleges that Mr. Smith took one of her

25  projects away and gave it to a Caucasian employee.   Again, the

1  debtor does not dispute this.  Mr. Smith testified at this
2  deposition that Ms. Sud refused to do a project the way he had
3  asked her to do it, and that he gave her the option of doing it
4  the way he wanted her to do it or to not do it at all.  He
5  further testified that Ms. Sud refused to do the project and
6  Ms. Sud has never disputed that the incident occurred in this
7  way.  Therefore, this is again an undisputed fact, and the
8  issue is whether this fact is sufficient to establish that Ms.
9  Sud was terminated on account of either gender or race.

10       Finally, Ms. Sud asserts that Bill Carroll told her
11  that her position was not being eliminated.  This allegation is
12  inadmissible as hearsay and may not be used in evidence in
13  opposing a motion for summary judgment.  Even if it were
14  admissible, which it isn't, this allegation is not a material
15  fact.  Even if Bill Carroll told Ms. Sud her position was not
16  being eliminated, it does not establish that the true reason
17  for Ms. Sud's termination was a discriminatory one.

18       Most of Sud's contentions in the complaint she
19  attached to her proof of claim and set forth in her opposition
20  to the debtor's motion for summary judgment are belied by her
21  own testimony.  The debtor believes that it has established
22  that there are no issues of material fact and that it has
23  provided substantial credible evidence that Ms. Sud's
24  termination was part of a legitimate reduction in its work
25  force.

1       Ms. Sud on the other hand has not established a *prima*

2   *facie* case or any evidence of pretext. Therefore, the debtor

3   requests that the Court enter a judgment in favor of the debtor

4   and against Ms. Sud.

5       MS. WISHART:  Your Honor, we think there are plenty

6   of disputed facts of a material nature in order to survive

7   summary judgment in this case.   And one of the areas of

8   dispute that Ms. Cohn didn't address but it's addressed in

9   their brief is the dispute surrounding Ms. Sud's hire, her

10  subsequent promotion, and the raise she was given.   In the

11  debtor's brief, they cite these in support of their argument

12  that these particular facts go to show that Mr. Smith didn't

13  harbor any discriminatory animus against her.

14      There is a factual dispute as to who hired her.   Ms.

15  Sud testified that she was hired by Joan Cousins who was the

16  previous treasury manager.   And in support of that there is Ms.

17  Sud's testimony which as you know on the summary judgment level

18  has to be taken in the most favorable light, and certainly no

19  determination as to Ms. Sud's credibility versus Mr. Smith's

20  credibility is appropriate here.

21      Also, there's her hiring letter which is attached to

22  the debtor's motion as Exhibit 8 which makes no mention

23  whatsoever of Mr. Smith.   Mr. Smith testified in his deposition

24  that he hired Ms. Sud.   So that's an important issue of

25  material fact, that the defendant itself has used to support

1   its argument regarding lack of animus.

2          There's also a dispute of fact as to whether Mr.

3   Smith later promoted Ms. Sud only after she told him that she

4   was being considered for another job and that she would take it

5   if he did not promote her.  He, that's the manner in which Ms.

6   Sud testified.  And Mr. Smith testified that although Ms. Sud

7   had in fact told him that, it did not play into his decision to

8   promote her.

9          And thirdly, with regard to the raise that she

10  received later on during her employment, Mr. Smith testified

11  that those raises were given to everyone as an employee

12  retention hiring, employee retention program.  And, in fact, as

13  is cited in our brief, Ms. Sud received the smallest of those

14  raises.

15         So those are material facts which are in dispute

16  which the debtor had relied on in its brief but didn't argue

17  here.

18         In relation to the layoff, there's a material dispute

19  of fact as to whether in fact Ms. Sud was laid off.  If you

20  look at the chart that's attached to both our papers as Exhibit

21  3 and the defendant's papers I believe as their Exhibit J,

22  there's a trickle of people leaving around the time Ms. Sud is

23  leaving, and we know that one of those people left voluntarily.

24  There are two people who left before Ms. Sud and three people

25  who left after her, and the fact that those people left

1  individually and given the fact that Ms. Consimin (phonetic)
2  left voluntarily would suggest that that, those people left as
3  a result of attrition.  The waves of layoffs actually occurred
4  later in November and December.  And it's our contention that
5  as to the discrimination, Ms. Sud would have been employed at
6  least through that period, giving her three or four months of
7  additional salary.

8          In reference to, there's definitely a disputed fact
9  as to the characterization as to whether Ms. Sud didn't get
10 along with her co-workers or Ms. Sud's co-workers didn't get
11 along with her.  The debtors characterize that as Ms. Sud
12 didn't get along with her co-workers, which is what Mr. Smith's
13 testimony is, that there was mutual rudeness.  But Ms. Sud's
14 testimony is that her coworkers were hostile to her from day
15 one, and there's no testimony in Ms. Sud's deposition that she
16 was aware of other people complaining about her.  Mr. Smith in
17 fact testified that he counseled Ms. Sud on a number of
18 occasions that she was too cocky, too aggressive, you know, he
19 said to her, "This is a tough crowd, you might want to lighten
20 up some," and he said in his deposition that he just told these
21 other people, "Well, don't be rude to her."  So he -- his
22 testimony supports their contention that it was hostility that
23 was coming from Ms. Sud, but there's a dispute as to exactly
24 what the situation was surrounding that issue, and that's an
25 important dispute.

1          Also, in reference to not only Mr. Carroll's

2    statement that Ms. Sud's job was not going to be eliminated,

3    which we would suggest is admissible as an admission of a party

4    opponent since Mr. Carroll was employed by RoweCom at the time,

5    there are other statements by employees of divine and a

6    subsidiary that would indicate that the intention was to keep

7    Ms. Sud on, and those can come in under the state of mind

8    exception to the hearsay rule.  They may not be the truth of

9    the matter asserted, but certainly at the time those statements

10   were made, those are evidence as to what the state of mind of

11   the individuals making those statements and the entities that

12   they worked for was.  And so that would support the contention

13   that there was no intention that Ms. Sud be laid off.

14         There's also, there's really not a dispute as to the

15   fact that Ms. Sud wasn't given work, she was excluded from

16   meetings with people from divine, that one of her projects was

17   taken away, although there is a dispute as to why that project

18   was taken away.  Ms. Sud says in her deposition that it was

19   taken away and given to another employee, Gina Conselman,  and

20   the defendant says that Ms. Sud refused to do it in the manner

21   that she was asked to do it.

22         There's a legal issue as to similarly, as to this

23   argument that she hasn't made her *prima facie* case of

24   discrimination.  The debtor admits that she has met the first

25   three prongs and that issue of that she was treated differently

 1  than similarly situated employees is an issue that she cannot
 2  meet.  And they argue in support of that that she was the only
 3  one who was a non-management person doing treasury work.
 4  That's not what the law in similar situated is.  If that was
 5  the case, anybody who wanted to discriminate against somebody,
 6  would give them a job nobody had and then fire them.  She was,
 7  if you look at the org chart, she was similarly situated to
 8  three other people who were directly under Mr. Smith, and that
 9  was two males and a female who's Gina Conselman who left.  So
10  when the layoff took place, Ms. Sud was the only female and the
11  only person of Indian ethnicity and the two males were
12  retained.  So we would suggest to you that that shows that
13  gender and race were not treated neutrally in the lay-off.

14          So the lay-off argument is disputed.  The issues
15  surrounding Ms. Sud's hire and promotion are disputed.  The
16  hostility issue is disputed.  And we think that there are
17  plenty of issues of material fact that bear on the legal
18  conclusions so that we can survive summary judgment in this
19  case, both on the race and the gender argument, Your Honor.

20          THE COURT:  The proof of claims -- I'm ready to rule.
21  If you don't mind, I have a one o'clock hearing.

22          Ms. Sud's proof of claim seeks damages in the sum of
23  $150,000 for back pay, front pay, compensatory damages,
24  emotional distress, and attorney's fees resulting from alleged
25  race and discrimination, gender discrimination by the debtor in

1   violation of Mass General Laws Chapter 151(b) Section 4 which

2   prohibits discrimination based on race, color, creed, national

3   origin.

4         The debtor has filed an objection to the claim and

5   seeks summary judgment.  In the debtor's view, Ms. Sud was not

6   terminated because of any gender, racial, or national origin

7   animus but because of a force reduction resulting from the

8   merger of RoweCom and divine and the consequent elimination of

9   numerous positions in the Finance Department where Ms. Sud

10  worked.

11        In order to establish a claim under Mass General Laws

12  Chapter 151, Ms. Sud is required to show that genuine issues of

13  material fact exist with respect to four elements.  That's she

14  in a protected class of race and gender, or gender.  That she

15  performed her job at an acceptable level.  That she was

16  terminated or subject to an adverse action, and that she was

17  treated differently from similarly situated employees.

18        The Court finds that Ms. Sud has failed to produce

19  evidence that would warrant a trial with respect to her claim,

20  and I will briefly state my findings of fact with respect to

21  the motion for summary judgment.

22        Ms. Sud is a female of Indian national origin who has

23  a college degree and an MBA and she's intelligent and well

24  educated. She responded to an e-mail for an advertisement for a

25  treasury analyst position at RoweCom in May of 2000, and

1 interviewed with various RoweCom employees including Ms.

2 Cousins, Mr. Smith, and Ms. Titas Gardner (phonetic) from Human

3 Resources.  RoweCom, through Ms. Titas Gardner, made an offer

4 to employ her for $48,000 a year and designated that she report

5 to a Mr. Cousins.  Mr. Cousins reported to Mr. Smith who was

6 responsible for hiring decisions, and he had authorized making

7 the offer to Ms. Sud.

8          Although Ms. Sud maintains that there is a materially

9 disputed fact as to who hired her, the Court disagrees.  Ms.

10 Sud did not refute the statements made by Mr. Carroll in his

11 affidavit as to Smith's position and the responsibilities for

12 hiring in the Financing Department.  Ms. Sud accepted the offer

13 in June, and she was given and signed a RoweCom sexual

14 harassment policy which gave information to employees about

15 their rights to obtain redress for violations by filing a

16 complaint with the company orally or in writing with Human

17 Resources or their immediate supervisor.

18          Mr. Carroll was the Comptroller for RoweCom for the

19 North American Division from November of 1999 to March of 2003.

20 During the time that Ms. Sud worked for the debtor, Mr. Carroll

21 was the Comptroller in charge and reported to Mr. Smith.   In

22 2000 approximately 27 employees worked in the Finance

23 Department.  By the time Ms. Sud had worked for RoweCom for

24 about seven months, the Finance Department had a staff of 16

25 women and 11 men. Of the 27 employees, two were Asian American

1 and one was African American.

2      From the beginning of her employment Ms. Sud had some
3 difficulties with peers.  She testified at her deposition that
4 it seems like there was general hostility at her place of
5 employment toward her.  She indicated that her peers didn't
6 speak to her, sometimes yelled at her, and intimated that she
7 was incompetent.  Ms. Sud concluded that the hostility was due
8 to her increased responsibilities and rise in the corporation,
9 and she complained to Smith on several occasions about
10 Conselman and others who worked for RoweCom.  She stated that
11 after a meeting Mr. Smith told her that she was too aggressive,
12 and from that insult she concluded that the company engaged in
13 gender bias.

14      According to Mr. Carroll, Ms. Sud did not get along
15 with many of her co-workers.  Smith counseled both Ms. Sud and
16 other workers that they should work together as a team, and
17 although Ms. Sud complained and stated to Mr. Smith that the
18 comments were too critical, she didn't complain to the Human
19 Resources Department.  At her deposition she pointed to what
20 she perceived to be two examples of ethnic or racial hostility:
21 a comment by a co-worker about the Hindu religion ,and a
22 comment by her boss which was not specifically directed to her
23 that he did not like Indian food.   Smith testified that he
24 received complaints from Sud about the rudeness of her co-
25 workers and complaints from them about her rudeness.

1          Ms. Cousins was terminated in 2000 along with about a

2    hundred other RoweCom employees.  Ms. Sud indicates that

3    Cousins was terminated because of her inability to follow

4    through on projects, and consequently Ms. Sud did assume many

5    of Cousins's administrative responsibilities and provided

6    further support to Mr. Smith.  She and Mr. Smith were the only

7    people who performed treasury functions in the Finance

8    Department, Ms. Sud being the only non-management level

9    employee there.

10          In September of 2000, after being employed for less

11   than four full months, Ms. Sud requested a promotion, and Mr.

12   Smith promoted her to treasury manager with a salary increase

13   of $10,000 to 58,000.

14          In April of 2000, Mr. Smith implemented a department-

15   wide employee retention program and Ms. Sud received another

16   raise to 63,000.

17          During Ms. Sud's tenure at RoweCom, it experienced

18   financial problems and she was aware of these problems in her

19   capacity as treasury manager.  In April of 2001, divine

20   approached RoweCom with respect to an acquisition and in June

21   RoweCom announced that it was merging with divine.

22          Mr. Smith testified at his deposition about the

23   effect of the merger, and he stated that the cash and accounts

24   of RoweCom were consolidated with those of divine, thus

25   eliminating RoweCom's cash management activities.  He also

1    testified that by August of 2001, divine controlled RoweCom's

2    cash, accounts, investments, and all banking relationship, and

3    as a result RoweCom eliminated most of its treasury functions

4    and began to eliminate positions in the Finance Department.

5          In August of 2001, Mr. Smith concluded that Ms. Sud's

6    responsibilities had been extinguished or transferred to divine

7    employees in Chicago, and she was terminated on August 22nd of

8    2001.  The separation form indicated that she was quote "laid

9    off due to consolidation and company reorganization."

10          Ms. Sud in her opposition to summary judgment states

11    that her responsibilities were divided up among Smith, Carroll.

12    and Conselman, all Caucasians.  Mr. Smith in his deposition

13    states that Sud's duties were either eliminated or now

14    performed by divine staff.

15          Ms. Sud states correctly that she was the only

16    employee terminated on agreement 22nd, 2001.  Ms. Conselman

17    voluntarily left the company one month later, and prior to the

18    divine merger, 11 of the 27 employees in the Finance Department

19    were terminated due to a gradual reduction in force.  Thus, by

20    the end of the year of 2001, 18 of 27 employees including Ms.

21    Sud's supervisor Mr. Smith had been terminated.

22          Mr. Carroll testified that as of February of the next

23    year, 2002, only five employees remained in the Finance

24    Department, including Mr. Carroll and four females.  He stated

25    that the job responsibilities that were left related to

1  collections and accounts receivable.   Two of the women were

2  Asian-American, one was African-American and one was Caucasian.

3  As of 2002, divine's Treasury Department consisted of two

4  Caucasian women and one Asian American woman.

5         Ms. Sud at her deposition indicated that she had

6  sought counseling and had a history of difficulties at places

7  where she was formerly employed prior to RoweCom.  She had some

8  issues with self-esteem that had previously led to conflicts

9  with employees and supervisors.  She admitted that Mr. Smith

10 had told her to call him about a reference which she never did,

11 and that he never gave her any reason other than the

12 reorganization and consolidation with divine, the merger, for

13 her termination.

14         In order to prevail on her proof of claim, Ms. Sud

15 was required to establish that her coworkers whom she alleges

16 were treated better than she was treated, were similarly

17 situated to her in all respects including job responsibilities,

18 performance, and qualifications.  As to this issue, the debtor

19 maintains that Ms. Sud failed to establish a genuine issue of

20 material fact, and I agree.  Ms. Sud was not similarly situated

21 to anyone else in the Finance Department.  Mr. Smith and Ms.

22 Sud were the only two people in the department performing

23 treasury functions, and Ms. Smith was, Mr. Smith was Ms. Sud's

24 superior.  As Mr. Carroll testified in his deposition, Ms. Sud

25 was the only non-management level employee who performed

1  treasury functions.

2          I find that Ms. Sud's position was eliminated because

3  of the merger between RoweCom and divine.

4          After Ms. Sud's termination, RoweCom no longer

5  performed treasury functions as they were transferred to divine

6  or eliminated.  Ms. Sud failed to submit any evidence that the

7  treasury functions she performed were transferred to an

8  employee who was similarly situated but not of her ethnicity or

9  gender.

10          I also find that the debtor had a legitimate and non-

11  discriminatory reason for terminating Ms. Sud.  Although she

12  may have been the first to be terminated at the announcement of

13  the merger, it is undisputed that the Finance Department was

14  substantially reduced over a period of several months after her

15  termination.  Indeed Mr. Smith was terminated in December of

16  2001.

17          Ms. Sud has failed to rebut the inference that where

18  an employee is hired, promoted, and then discharged by the same

19  individual, in this case Mr. Smith, the reason for the

20  termination is non-discriminatory.  She failed to submit any

21  evidence other than her perception of a hostile work

22  environment that there was a discriminatory reason for her

23  termination.  In view of Mr. Carroll's statement in his

24  affidavit as to the composition of the work force in the

25  Finance Department, I find that her claim for damages for

1   either gender or ethnic discrimination is without merit and

2   accordingly grant the debtor's motion for summary judgment and

3   disallow her claim.

4           The hearing is adjourned. Thank you.

5           MS. WISHART:  Thank you, Your Honor.

6           MS. COHN:  Thank you.

7                    * * * * * * * * *

8           THE COURT:  Are the parties ready for the

9   confirmation hearing in Sabine, formerly RoweCom?

10          UNIDENTIFIED SPEAKER:  Your Honor, Mr. Garcia has

11  informed me that they are asking for 15 more minutes. They're

12  out in the hall discussing a few --

13          THE COURT:  Does that go for Divine as well?

14          UNIDENTIFIED SPEAKER:  Yes.

15          THE COURT:  Okay. I'll take a 15-minute recess.

16      (Off the record at Tape #2, Index #2422.  1:06 p.m.)

17                   * * * * * * * * * *

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a true and accurate

2   transcript from the electronically sound recorded record of the

3   proceedings.

_____          _____
SANDRA CARBONARO, for                              Date
GCI TRANSCRIPTION SERVICES
Certified Transcriber NJ AOC200
     Federal CERT #122
210 Bayberry Avenue
Egg Harbor Township, NJ  08234-5901
609-927-0299  1-800-471-0299
    FAX  609-927-6420
e-mail  irwingloria@comcast.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 11** |
| SABINE, INC, | ) | **Case No. 03-10668JNF** |
| f/k/a ROWECOM, INC. | ) | |
| | ) | |
| Debtor. | ) | |

### RITA SUD'S NOTICE OF APPEAL

    Rita Sud hereby appeals from the judgment of the bankruptcy court issued from the bench on November 23, 2004,[1] allowing the Debtor's Motion for Summary Judgment on relation to Ms. Sud's claim.

<div style="margin-left:40%">

Respectfully submitted,
Rita Sud,
By her attorney,

</div>

Dated: December 10, 2004

<div style="margin-left:40%">

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

</div>

---

[1] No notice of the entry of decision or written copy of the decision has been received by counsel.

133

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 11** |
| ROWECOM, INC, | ) | **Case No. 03-10668JNF** |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

I, Martha M. Wishart, hereby certify that on the 10th day of December, 2004 I caused true and correct copies of the following document to be served via Express Mail on those parties listed on Service List attached hereto.

a)    Rita Sud's Notice of Appeal.

Respectfully submitted,
Rita Sud,
By her attorney,

Dated: December 10, 2004

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

**134**

## SERVICE LIST

Jeffrey D. Sternklar, Esq.
Jennifer L. Hertz, Esq.
Duanne Morris, LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210

Mindy Cohen, Esq.
Kaye Scholer LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL  60602

**135**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

### BAP NO. MB 04-063

### Bankruptcy No. 03-10668-JNF

### SABINE, INC.,
### Debtor.

### RITA SUD,
### Appellant,

### v.

### SABINE, INC.,
### Appellee.

**Lamoutte, Haines, and Vaughn,  U.S. Bankruptcy Appellate Panel Judges.**

### JUDGMENT

Rita Sud seeks to appeal from the November 23, 2004, order of the United States

Bankruptcy Court for the District of Massachusetts granting the Debtor's Motion for Summary

Judgment regarding the proof of claim filed by Rita Sud.  The order was entered on the docket on

November 24, 2004, and Rita Sud filed a Notice of Appeal on December 13, 2004.  For the

following reasons, the appeal is hereby **DISMISSED**.

### TIMELINESS

Rule 8001(a) of the Federal Rules of Bankruptcy Procedure provides that "[a]n appeal

from a judgment, order or decree of a bankruptcy judge to a district court or bankruptcy appellate

panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall be taken by filing a notice of appeal

**DOCKETED**

**136**

with the clerk within the time allowed by Rule 8002." Fed. R. Bankr. P. 8001(a). Bankruptcy

Rule 8002(a) instructs that "the notice of appeal shall be filed with the clerk within ten (10) days

of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P.

8002(a); see also Williams v. EMC (In re Williams), 216 F.3d 1295, 1297 (11th Cir. 2000) (the

ten-day period for appeal is not enlarged by three days pursuant to Fed. R. Bankr. P. 9006(f)

because the ten-day appeal period begins to run upon entry of the bankruptcy court's order, not its

service). If an appeal is not taken or otherwise preserved within the ten-day period, an appeal

from a final order of a bankruptcy court will fail. See Yamaha Motor Corp. v. Perry Hollow

Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.), 297 F.3d 34, 38 (1st Cir. 2002). Timely

filing a notice of appeal is mandatory and jurisdictional. See Johnson v. Teamsters Local 559,

102 F.3d 21, 28 (1st Cir. 1996) (citing Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 387 (1st

Cir. 1994), cert. denied, 513 U.S. 1015 (1994)). Therefore, if a notice of appeal is not timely

filed, the bankruptcy appellate panel does not have jurisdiction over the appeal. See Colomba v.

Solomon (In re Colomba), 257 B.R. 368, 369 (B.A.P. 1st Cir. 2001).

As stated above, Rita Sud seeks to appeal from an order entered on the docket on

November 24, 2004. Ten days therefrom was Saturday, December 4, 2004, so the deadline for

filing the Notice of Appeal was Monday, December 6, 2004. See Fed. R. Bankr. P. 9006(a).

The Notice of Appeal was not filed until Monday, December 13, 2004, and, therefore, was

untimely.

Pursuant to Fed. R. Bankr. P. 8002(c)(2), if an appellant makes a showing of "excusable

neglect," the bankruptcy judge may enlarge the time for appeal so long as the request for

<div align="center">2</div>

**137**

enlargement is made not later than twenty (20) days after the ten (10) day appeal period has expired.  No such motion was made by Rita Sud.

Accordingly, because the Notice of Appeal was filed more than ten (10) days after entry of the November 23, 2004 order, and because no motion was filed under Fed. R. Bankr. P. 8002(c)(2), the Notice of Appeal was filed untimely and the appeal is hereby **DISMISSED**.


FOR THE PANEL:

Richard Cushing Donovan
CLERK

Dated: December 20, 2004

cc:    Martha M. Wishart, Esq.
       Jeffrey D. Sternklar, Esq.
       Jennifer L. Hertz, Esq.
       Mindy Cohen, Esq.

3

**138**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

IN RE:      )
         )   **Chapter 11**
 SABINE, INC,   )   **Case No. 03-10668JNF**
  f/k/a ROWECOM, INC. )
         )
  Debtor.     )

## RITA SUD'S MOTION TO EXTEND TIME
## FOR FILING AN APPEAL PURSUANT TO BANK. R. 8003(C)(2)

Now comes Rita Sud ("Ms. Sud"), an unsecured creditor in the above-captioned action, and moves that the Court extend the time for filing an appeal from the grant of the Debtor's Motion for summary Judgment, entered on November 24, 2004, for the reasons set forth in the accompanying memorandum. Ms. Sud requests that the Court allow the extension of time, and accept the Notice of Appeal filed herewith.

           Respectfully submitted,
           Rita Sud,
           By her attorney,

Dated: December 23, 2004

           Martha M. Wishart (BBO #556694)
           McKenzie & Associates, P.C.
           44 School Street, Suite 1100
           Boston, MA  02108
           617.723.0400

**139**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

IN RE:              )
                    )       **Chapter 11**
   **SABINE, INC,**        )       **Case No. 03-10668JNF**
      **f/k/a ROWECOM, INC.**  )
                    )
        **Debtor.**       )

## RITA SUD'S MEMORANDUM IN SUPPORT OF HER MOTION TO EXTEND TIME FOR FILING AN APPEAL PURSUANT TO BANK. R. 8003(C)(2)

Now comes Rita Sud ("Ms. Sud"), an unsecured creditor in the above-captioned action, and moves that the Court extend the time for filing an appeal from the grant of the Debtor's Motion for summary Judgment, entered on November 24, 2004, for the reasons set forth below.

As is shown in the Affidavit of Martha M. Wishart, Ms. Sud's counsel, attached hereto as Exhibit A, the reasons for Ms. Sud's late filing are attributable to excusable neglect, and the late filing of an appeal should be allowed.    Under the standard enunciated in  Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993), the Supreme Court found that courts may accept late filings "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Pioneer, 507 U.S. at 388; see also Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001) (acknowledging Pioneer's shift to a standard of excusable neglect that "encompasses not just unavoidable omissions, but also negligent ones"). Equitable considerations should inform whether a lapse constitutes excusable neglect. Among the factors a court should consider are "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

**140**

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Graphic Communications, 270 F.3d at 5 (quoting Pioneer, 507 U.S. at 395).

Here, any prejudice to the non-moving party is outweighed by the fact that the delay was a matter of seven days; there is no potential impact on judicial proceedings, and the fact that the delay was not caused by good faith.

Respectfully submitted,
Rita Sud,
By her attorney,


Dated: December 23, 2004

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

**141**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Chapter 11** |
| **SABINE, INC.,** | ) | |
| **f/k/a/ ROWECOM, INC,** | ) | **Case No. 03-10668JNF** |
| | ) | |
| **Debtor.** | ) | |

## AFFIDAVIT OF MARTHA M. WISHART

I, Martha M. Wishart, do hereby state:

1.      I am counsel for Rita Sud.

2.      The Debtor's Motion for Summary Judgment was heard on November 23, 2004. The Debtor's motion was allowed after extensive findings of fact were dictated from the bench.

3.      I was unable to contact me client before the Thanksgiving holiday, but informed her via e-mail of the decision, and asked her to call me.

4.      I called the clerk's office on or about November 24, 2004, and left a message inquiring as to whether I would receive a written copy of the findings dictated from the bench.

5.      No one from the clerk's office ever returned my call. I never received anything in writing regarding the Ruling prior to the expiration of the 10 day deadline.

6.      I do not practice in Bankruptcy Court as a general rule, and in fact, have been involved in such proceedings only a few times in my career. I have never had occasion, prior to this to appeal a ruling from the Bankruptcy Court.

7.      I am aware that the Rules of Procedure in Bankruptcy Court are generally analogous to the Federal Rules. It did not occur to me that the time for filing an appeal would be different from the 30 days allotted in Federal Court.

8.      Four of the ten days allotted for the time to file a notice of appeal were consumed by the Thanksgiving holiday.

9.      Immediately upon my return from the Thanksgiving holiday, I had to prepare for a trial scheduled to start on Thursday, December 2, 2004. The trial took two days.

10.    After the trial was concluded, I again asked my client to contact me regarding the ruling.  We did not have an opportunity to speak with one another until Friday, December 10, 2004, at which time my client directed me to file an appeal.  I did so by mailing out the Notice of Appeal to the Court that afternoon.

11.    It was only after I filed the Notice of Appeal that I became aware that the deadline for filing such a notice was ten days.

Sworn under the pains and penalties of perjury this 23rd day of December, 2004.


_____
Martha M. Wishart

**143**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Chapter 11** |
| ROWECOM, INC, | ) | **Case No. 03-10668JNF** |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

I, Martha M. Wishart, Esq., hereby certify that on this day I served copies of the **RITA SUD'S MOTION TO EXTEND TIME FOR FILING AN APPEAL PURSUANT TO BANK. R. 8003(C)(2), AND MEMORANDUM IN SUPPORT THEREOF** on those persons listed below, by mailing copies of the same via first class mail, postage pre-paid.

Respectfully submitted,
Rita Sud,
By her attorney,

Dated: December 23, 2004

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA 02108
617.723.0400

## SERVICE LIST

Jeffrey D. Sternklar, Esq.
Jennifer L. Hertz, Esq.
Duanne Morris, LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Mindy Cohen, Esq.
Kaye Scholer LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL 60602

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 11** |
| SABINE, INC, | ) | **Case No. 03-10668JNF** |
| f/k/a ROWECOM, INC. | ) | |
| | ) | |
| Debtor. | ) | |

## RITA SUD'S NOTICE OF APPEAL

Now comes Rita Sud ("Ms. Sud"), an unsecured creditor in the above-captioned action,

and appeals from the judgment entered against her on November 24, 2004, allowing the Debtor's

Motion for Summary Judgment on her claims.

Further, Ms. Sud elects to have her appeal heard by the United States District Court for

the District of Massachusetts.

Respectfully submitted,
Rita Sud,
By her attorney,

Dated: December 23, 2004

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

**145**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:                              )
                                    )
    ROWECOM, INC,              )          **Chapter 11**
        Debtor.              )          **Case No. 03-10668JNF**
                                    )


## CERTIFICATE OF SERVICE

I, Martha M. Wishart, Esq., hereby certify that on this day I served copies of the **RITA SUD'S NOTICE OF APPEAL** on those persons listed below, by mailing copies of the same via first class mail, postage pre-paid.

Respectfully submitted,
Rita Sud,
By her attorney,

Dated: December 23, 2004

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400


## SERVICE LIST

Jeffrey D. Sternklar, Esq.
Jennifer L. Hertz, Esq.
Duanne Morris, LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210

Mindy Cohen, Esq.
Kaye Scholer LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL  60602

**146**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>SABINE, INC. (*f/k/a*<br>   ROWECOM, INC. *et al.*),<br><br>       Debtors. | Chapter 11<br>Case No. 03-10668-JNF<br>(Substantively Consolidated) |

## OPPOSITION TO RITA SUD'S MOTION TO
## EXTEND TIME FOR FILING AN APPEAL

Christopher J. Panos (the "Liquidating Trustee") established under the

Third Amended Joint Plan of Liquidation Proposed by the Debtors and

Creditors' Committee dated November 23, 2004 (the "Plan"), the duly-appointed

trustee of the Liquidating Trust (as defined in the Plan, the "Liquidating Trust"),

files this opposition to *Rita Sud's Motion to Extend Time for Filing an Appeal*

*Pursuant to Bankr. R. 8003(c)(2)* [sic] (the "Motion"). In support hereof, the

Liquidating Trustee states as follows:

### BACKGROUND

1.  Christopher J. Panos is the duly-appointed Liquidating Trustee

established under the Plan.

2.  On December 7, 2004, the Bankruptcy Court entered an order (the

"Confirmation Order") confirming the Plan. On December 20, 2004, the Plan

became effective pursuant to Section 15.02 of the Plan. Under the Plan, all Trust

**147**

Assets (as defined in the Plan) including, without limitation, all property of

Sabine, Inc.'s (f/k/a RoweCom, Inc., the "Debtor") Estate (as defined in the Plan)

was vested in the Liquidating Trust.

3.   Pursuant to section 9.05 of the Plan, the Liquidating Trustee has

standing and is authorized to "object to Claims" and "prosecute or settle such

objections and defend claims asserted in connection therewith."

4.   On September 12, 2003, Rita Sud ("Sud") filed a proof of claim (Claim

No. 1444, the "Claim") alleging, among other things, employment

discrimination.  On April 26, 2004, the Debtor filed its third omnibus claim

objection (the "Objection") pursuant to which it objected to the Claim on the

grounds that the Debtor is not liable.

5.   On October 25, 2004, the Debtor filed its Motion for Summary

Judgment Pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56 (the

"Summary Judgment Motion") seeking disallowance of the Claim.

6.   On November 23, 2004, the United States Bankruptcy Court for the

District of Massachusetts (Eastern Division) (the "Bankruptcy Court") granted

the Debtor's Motion (the "Order").

7.   On December 13, 2004, Sud filed a Notice of Appeal of the Order.

8.   On December 20, 2004, the United Stated Bankruptcy Appellate Panel

for the First Circuit entered judgment dismissing Sud's appeal of the Order for

lack of jurisdiction because the Notice of Appeal was filed late.

**148**

## APPLICABLE STANDARD

9.  Fed. R. Bankr. P. 8002(c)(2) provides, in relevant part, that:

[a] request to extend the time for filing a notice of appeal must be
made by written motion filed before the time for filing a notice of
appeal has expired, except that such a motion filed not later than 20
days after the expiration of the time for filing a notice of appeal
may be granted upon a showing of excusable neglect.

10.  Whether a party's failure to file a notice of appeal within the ten day

period established by Fed. R. Bankr. P. 8002(a) constitutes excusable neglect is an

equitable determination, "taking account of all relevant circumstances

surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*

*Partnership*, 507 U.S. 380, 395 (1993).

11.  Courts have considered such circumstances as "the danger of

prejudice to the debtor, the length of the delay and its potential impact on

judicial proceedings, the reasons for the delay, including whether it was within

the reasonable control of the of the movant, and whether the movant acted in

good faith." *Id.*  In determining whether excusable neglect exists under Fed. R.

Bankr. P. 8002(c)(2), most courts attribute significant weight to the last two

factors identified in *Pioneer*. *Balzotti v. RAD Inv., LLC (In re Shepards Hill Dev. Co.)*,

316 B.R. 406, 415 (1st Cir. B.A.P. 2004) (observing most courts focus on reason for

delay and good faith for the purposes of Fed. R. Bankr. P. 8002(c)(2)); *see also*

*Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d

1, 5 (1st Cir. 2001) (observing that *Pioneer* factors do not carry equal weight).

3

**149**

## ARGUMENT

12. Sud asserts two arguments in support of her Motion. First, Sud asserts that the reasons, as identified in the Affidavit of Martha M. Wishart (the "Affidavit"), for her filing the Motion establish excusable neglect under Fed. R. Bankr. P. 8002(c)(2). Second, Sud asserts that the Liquidating Trust (as successor-in-interest to the Debtor) is not prejudiced by the requested relief. Subsumed in Sud's second argument are self-serving assertions that the relief requested in the Motion does not impact the proceedings before the Court and that Sud has acted in good faith. As set forth below, each of Sud's assertions is unsupportable.

A.    Sud Has Not Met Her Burden For Establishing Excusable Neglect

13. Sud has not met her burden for establishing that her failure to file a notice of appeal within the time allotted under Fed. R. Bankr. P. 8002 was attributable to excusable neglect.

14. Although the Motion does recite the factors identified in *Pioneer*, the Motion is wholly devoid of any argument applying the *Pioneer* factors to the facts before the Court. Rather, Sud relies on self-serving assertions that *Pioneer* factors have been met. *Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores)*, 214 B.R. 197, 200 (8th Cir. B.A.P. 1997) (holding movant had not met burden where *Pioneer* factors not argued).

15. Moreover, the facts alleged in the Affidavit do not support any potential argument that Sud's failure to file a timely notice of appeal constituted

4

**150**

excusable neglect. Apparently Sud's sole argument in support of her Motion is that her failure to file a timely notice of appeal was attributable to actions and omissions of her counsel. While such actions and omissions may constitute neglect, Sud has not established that they are excusable.

B.    Sud's Reasons For Failing To Comply With Fed. R. Bankr. P. 8002(a) Warrant Denial Of The Motion

16. In the Affidavit, Sud's counsel asserts four reasons for her failure to file a notice of appeal in a timely manner, none of which establish excusable neglect. First, Sud's counsel asserts that she was unable to obtain a written copy of the findings of fact and rulings of law which the Court dictated on the record. Second, Sud's counsel asserts that she was unable to speak with her client prior to the expiration of the ten day deadline established by Fed. R. Bankr. P. 8002(a). Third, Sud's counsel was distracted by another trial. Fourth, Sud's counsel was unaware of the ten day deadline established by Fed. R. Bankr. P. 8002(a).

17. Counsel's inability to obtain a written copy of the Court's findings of fact and rulings of law is not relevant in determining whether Sud's failure to file a timely notice of appeal constitutes excusable neglect. Sud's counsel was present for the Court's decision at the conclusion of the hearing on the Summary Judgment Motion on November 23, 2004. Moreover, if Sud's counsel was intent on obtaining a written copy of the Court's findings of fact and rulings of law she could have requested, on an expedited basis, an official transcript of the hearing.

18. Counsel's inability to reach her client prior to the expiration of the ten

5

151

day period is unavailing. *Belfance v. Black River Petroleum, Inc. (In re Hess)*, 209

B.R. 79, 83 (6th Cir. B.A.P. 1997) (inability to reach client does not establish

excusable neglect). Similarly, the fact that Sud's counsel had a two-day trial

during the interim period of the ten day appeal period is not valid excuse for

noncompliance with Fed. R. Bankr. P. 8002(a). *Id.* (*citing Marsh v. Richardson*, 873

F.2d 129, 131 (6th Cir. 1989) (interference with deadline compliance by lawyer's

practice is not valid excuse)). In light of such scheduling conflicts, counsel could

have requested a twenty day extension of the deadline without a showing of

excusable neglect provided, however, such request was made prior to the ten

day appeal period.

19. The foregoing reasons for Sud's failure to file a timely notice of appeal

are further discredited by the fact that her counsel was simply unaware of the

applicable ten day appeal period created by Fed. R. Bankr. P. 8002(a). Affidavit

at ¶¶ 6, 7 & 11. As observed by the Supreme Court in *Pioneer*, "ignorance of the

rules . . . does not usually constitute 'excusable' neglect." 507 U.S. at 392. Sud

cannot identify nor point to any extraordinary circumstance which excuses her

counsel's failure to read and understand Fed. R. Bankr. P. 8002(a). *Graphic

Communications*, 270 F.3d at 6.

C.    Sud's Previous Violation Of The Rules Establishes Her Lack Of Good Faith

20. Excusing counsel's ignorance of the rules is unwarranted given Sud's

previous violation of the automatic stay. The underlying claim that was

6

**152**

disallowed by this Court was originally brought by Sud in state court after the

commencement of the Debtor's chapter 11 case.  *See* Doc. No. 411.  Given

counsel's admitted lack of familiarity with practice before this Court, Sud could

have retained special bankruptcy counsel or require that current counsel

sufficiently inform herself about bankruptcy practice and procedure.  Apparently

neither course of action was pursued.  As such, Sud cannot argue in good faith

that her counsel's ignorance of the rules constitutes excusable neglect.

D.    Sud's Request Causes Prejudice To The Liquidating Trustee And The
      Holders Of Allowed Claims

21.  If Sud's Motion is granted, the Liquidating Trust and the holders of

Allowed Claims (as defined in the Plan) would be further prejudiced as the

Liquidating Trust is required to maintain a reserve in an amount equal to one

hundred percent (100%) of all disputed claims.  If Sud is allowed to proceed with

an appeal of the Order disallowing her Claim, the Liquidating Trust would be

required to reserve for the Claim while it is subject to an appeal.  As such, Sud's

appeal, if allowed to proceed, is likely to have a disruptive effect on the

administration of the Liquidating Trust by potentially delaying and decreasing

interim distributions to holders of Allowed Claims.  Additionally, the

Liquidating Trustee will incur significant fees and expenses in responding to

Sud's appeal.

## CONCLUSION

22.  In light of the foregoing, Sud has not met her burden in establishing

excusable neglect.

WHEREFORE, the Plaintiff prays that this Court enter a judgment for the

Plaintiff and against Defendant:

(i)    Denying the Motion; and

(ii)   Granting such other and further relief as is Court may deem

necessary and proper in the circumstances.

December 30, 2004                    Respectfully submitted,

                                     CHRISTOPHER J. PANOS TRUSTEE OF
                                     THE SABINE, INC. F/K/A ROWECOM, INC.
                                     LIQUIDATING TRUST

                                     By its Attorneys,
                                     CRAIG AND MACAULEY
                                          PROFESSIONAL CORPORATION


                                     /s/ Brendan C. Recupero
                                     Christopher J. Panos  (BBO #555273)
                                     Brendan C. Recupero (BBO #645032)
                                     Craig and Macauley
                                       Professional Corporation
                                     Federal Reserve Plaza
                                     600 Atlantic Avenue
                                     Boston, MA 02210
                                     (617) 367-9500

8

**154**

<u>CERTIFICATE OF SERVICE</u>

I, Brendan C. Recupero, hereby certify that on December 30, 2004, I caused

a true and accurate copy of the *Opposition to Rita Sud's Motion to Extend Time for*

*Filing an Appeal* to be served on the parties identified below by first class mail,

postage pre-paid.


December 30, 2004                    /s/ Brendan C. Recupero


Martha M. Wishart
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA 02108

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

IN RE:                )

                      )        Chapter 11

   SABINE, INC,         )        Case No. 03-10668JNF

      f/k/a ROWECOM, INC.  )

                      )          DEC 23'04 PM 2:33 US8

      Debtor.         )

### RITA SUD'S MOTION TO EXTEND TIME
### FOR FILING AN APPEAL PURSUANT TO BANK. R. 8003(C)(2)

Now comes Rita Sud ("Ms. Sud"), an unsecured creditor in the above-captioned action, and moves that the Court extend the time for filing an appeal from the grant of the Debtor's Motion for summary Judgment, entered on November 24, 2004, for the reasons set forth in the accompanying memorandum. Ms. Sud requests that the Court allow the extension of time, and accept the Notice of Appeal filed herewith.

                          Respectfully submitted,
                          Rita Sud,
                          By her attorney,

Dated: December 23, 2004

                          Martha M. Wishart (BBO #556694)
                          McKenzie & Associates, P.C.
                          44 School Street, Suite 1100
                          Boston, MA 02108
                          617.723.0400

*01/03/2005 Motion denied. See Fed. R. Bankr. P. 8002(c)(2).*

**156**

039136

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 11** |
| SABINE, INC, | ) | **Case No. 03-10668JNF** |
| f/k/a ROWECOM, INC. | ) | |
| | ) | |
| Debtor. | ) | |

## RITA SUD'S NOTICE OF APPEAL

Now comes Rita Sud ("Ms. Sud"), an unsecured creditor in the above-captioned action,

and appeals from the denial of her Motion to Extend Time for Filing an Appeal Pursuant to

Bank. R. 8003(c)(2), entered by the Court on January 3, 2005.


Respectfully submitted,
Rita Sud,
By her attorney,

Dated: January 13, 2005

Martha M. Wishart (BBO #556694)
McKenzie & Associates, P.C.
44 School Street, Suite 1100
Boston, MA  02108
617.723.0400

**157**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:                                )
                                      )
    ROWECOM, INC,              )         **Chapter 11**
        Debtor.         )         **Case No. 03-10668JNF**
                                      )

## CERTIFICATE OF SERVICE

    I, Martha M. Wishart, Esq., hereby certify that on this day I served copies of the **RITA SUD'S NOTICE OF APPEAL** on those persons listed below, by mailing copies of the same via first class mail, postage pre-paid.

                        Respectfully submitted,
                        Rita Sud,
                        By her attorney,

Dated: January 13, 2005

                        Martha M. Wishart (BBO #556694)
                        McKenzie & Associates, P.C.
                        44 School Street, Suite 1100
                        Boston, MA  02108
                        617.723.0400

## SERVICE LIST

Brendan C. Recupero, Esq.
Craig & Macauley, P.C.
600 Atlantic Avenue
Boston, MA  02210

Mindy Cohen, Esq.
Kaye Scholer LLC
Three First National Plaza
70 West Madison Street, Suite 4100
Chicago, IL  60602

158

## CERTIFICATE OF SERVICE

I, Martha M. Wishart, hereby certify that I served a copy of the Appendix upon counsel of record, Brendan Recupero, for Christopher J. Panos, Trustee of the Sabine, Inc., Liquidating Trust, by delivering same via hand delivery on March 25, 2005.

Martha M. Wishart, BBO#556694
McKenzie & Associates, P.C.
44 School Street
Boston, MA 02108
(617) 723-0400